UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X   Civil Action No. _____

BRIAN DONNELLY AKA KAWS and
KAWS INC.,

Plaintiffs,

**COMPLAINT**
**(Jury Trial Demanded on All**
**Non-Equitable Claims)**

-against-

JONATHAN ANAND, both individually and doing
business as HOMELESS PENTHOUSE,
PENTHOUSE THEORY, HIDEOUT.NYC,
INCOGNITO and YOUNG NEON, DAVID KANG,
DYLAN JOVAN LEONG YI ZHI,
THE PENTHOUSE THEORY,
THE PENTHOUSE COLLECTIVE and
OSELL DINODIRECT CHINA LIMITED,

Defendants.

------------------------------------------------------------------X

      Plaintiffs BRIAN DONNELLY AKA KAWS ("KAWS") and KAWS INC. (collectively,

"Plaintiffs"), by their attorney, AARON RICHARD GOLUB, ESQUIRE, P.C., as and for their

Complaint against Defendants JONATHAN ANAND ("Anand"), both individually and doing

business as HOMELESS PENTHOUSE, PENTHOUSE THEORY, HIDEOUT.NYC,

INCOGNITO and YOUNG NEON (collectively, "Homeless Penthouse Entities"), DAVID

KANG ("Kang"), DYLAN JOVAN LEONG YI ZHI ("Leong"), THE PENTHOUSE THEORY,

THE PENTHOUSE COLLECTIVE (together with The Penthouse Theory, "The Penthouse

Theory Entities") and OSELL DINODIRECT CHINA LIMITED ("OSell") (collectively,

"Defendants"), allege as follows:

### THE PARTIES

      1.    At all relevant times, Plaintiff KAWS resides and has resided in Brooklyn,

New York.  KAWS is an internationally celebrated artist and designer, renowned for his

sculptures, paintings and vinyl collectible figurines (or "toys"). KAWS' artworks have been exhibited in museums and galleries worldwide, including, inter alia, Mori Arts Center Gallery, Tokyo, The Brooklyn Museum, The National Gallery of Victoria, Melbourne, Australia, The High Museum of Art in Atlanta, The Modern Art Museum of Fort Worth, Museum of Contemporary Art Detroit, Fire Station, Qatar Museums, Doha, Qatar, Centro de Contemporaneo, Malaga, Spain, Yorkshire Sculpture Park in Wakefield, England and Yuz Museum, Shanghai. KAWS has collaborated with world-renowned brands, such as Nike, Uniqlo, A Bathing Ape, Dior, Comme des Garcons, MTV Video Music Awards, sacai and Supreme. KAWS' artwork is in very high demand with his painting "The KAWS Album" selling in a Sotheby's Hong Kong auction on April 2019 for $14.8 million. KAWS also endeavors to create items that are more readily attainable by wider audiences, such as those featured in his collaboration with Uniqlo, including t-shirts, sweatshirts, hoodies, tote bags and toys all priced under $50.00.

2.      At all relevant times, Plaintiff Kaws Inc. was and is a domestic corporation duly organized under the laws of the State of New York, with an office in Brooklyn, New York.

3.      Upon information and belief, at all relevant times, Defendant Anand resides and has resided in New York, New Jersey and/or Virginia. Defendant Anand is the founder, owner, operator and/or controlling force of Homeless Penthouse, an unregistered entity established by Anand in 2018 that claims to have its "main office" either in Brooklyn or New York City, and which operates a network of websites, Instagram accounts, Facebook pages, Pinterest pages, a YouTube account and a smartphone app that advertises, promotes, displays,

distributes, offers for sale and sells counterfeit and infringing goods, including counterfeit goods that illegally copy and infringe on Plaintiffs' registered copyrights and trademarks.

4. Upon information and belief, at all relevant times, Defendant Anand is the founder, CEO, owner, operator and/or controlling force of Penthouse Theory, an unregistered entity established by Anand in 2020 that claims to have its headquarters in Manhattan, and which operates a network of websites, Instagram accounts, Facebook pages, Pinterest pages, a YouTube account and a smartphone app that advertises, promotes, displays, distributes, offers for sale and sells counterfeit and infringing goods, including counterfeit goods that illegally copy and infringe on Plaintiffs' registered copyrights and trademarks.

5. Upon information and belief, at all relevant times, Defendant Anand is the founder, CEO, owner, operator and/or controlling force of Hideout.NYC, an unregistered entity established by Anand in or about 2020, which operates a website and Instagram account that advertises, promotes, displays, distributes, offers for sale and sells counterfeit and infringing goods, including counterfeit goods that illegally copy and infringe on Plaintiffs' registered copyrights and trademarks.

6. Upon information and belief, at all relevant times, Defendant Anand is the founder, CEO, owner, operator and/or controlling force of Incognito, an unregistered entity established by Anand in or about 2020 or 2021, which operates a website that advertises, promotes, displays, distributes, offers for sale and sells counterfeit and infringing goods, including counterfeit goods that illegally copy and infringe on Plaintiffs' registered copyrights and trademarks.

7.     Upon information and belief, at all relevant times, Defendant Anand is the founder, CEO, owner, operator and/or controlling force of Young Neon, an unregistered entity that Anand uses to collect payment for items sold by the Homeless Penthouse Entities.

8.     Upon information and belief, at all relevant times, Defendant Anand has conducted and continues to conduct business illegally in the State of New York under the assumed names of Homeless Penthouse, Penthouse Theory, Hideout.NYC, Incognito and/or Young Neon without filing the requisite certificates in the office of the clerk of each county in which such business has been and continues to be conducted, including, inter alia, New York County and Kings County.

9.     Upon information and belief, at all relevant times, Defendant Kang resides and has resided in New York, New Jersey and/or Virginia. Defendant Kang has aided and abetted Anand and the Homeless Penthouse Entities in advertising, promoting, displaying, distributing, offering for sale and selling counterfeit and infringing goods, including counterfeit goods that illegally copy and infringe on Plaintiffs' registered copyrights and trademarks.

10.     Upon information and belief, at all relevant times, Defendant Leong resides and has resided in Singapore at 15 Shangri-La Close, Shangri La Park, Singapore 568259. Defendant Leong is the founder, owner, operator and/or controlling force of Defendant The Penthouse Theory, a foreign company duly organized under the laws of Singapore with its headquarters at 22 Sin Ming Ln, #06-76 Midview City, Singapore 573969 and principal place of business at 183 Jalan Pelikat, #01-46 The Promenade@Pelikat, Singapore 537643, which operates a network of Instagram accounts, Facebook pages, Pinterest pages, a website and a YouTube account that advertises, promotes, displays, distributes, offers for sale and sells

counterfeit and infringing goods, including counterfeit goods that illegally copy and infringe on Plaintiffs' registered copyrights and trademarks.

11.     Upon information and belief, at all relevant times, Defendant Leong is the founder, owner, operator and/or controlling force of The Penthouse Collective, a foreign company duly organized under the laws of Singapore, which operates a network of an Instagram account, a Facebook page and a website that advertises, promotes, displays, distributes, offers for sale and sells counterfeit and infringing goods, including counterfeit goods that illegally copy and infringe on Plaintiffs' registered copyrights and trademarks.

12.     Upon information and belief, Defendants Anand and Leong are the registrants, owners, operators and/or controlling forces behind https://shophomeless.com/ and https://homelesspenthouse.com/ ("Homeless Penthouse Websites"), https://penthousetheory.com, https://www.thehideout.nyc/, https://shopincognito.net/, https://www.thepenthousetheory.com/ and www.thepenthousecollective.com.

13.     Upon information and belief, Defendant OSell is a foreign company duly organized under the laws of China and/or Hong Kong that is engaged in the business of exporting goods, including counterfeit goods that illegally copy and infringe on Plaintiffs' registered copyrights and trademarks, to New York and other jurisdictions worldwide.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over the federal copyright and trademark claims asserted in this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

15.     Personal jurisdiction is proper over all Defendants and Defendants are subject to this Court's jurisdiction because Defendants have committed the acts complained of

herein in this District and transacted and conducted business in this District. Upon information and belief, Defendants have solicited customers in this District, entered into agreements with customers in this District, offered to sell counterfeit, infringing goods in this District, sold counterfeit, infringing goods in this District and/or exported counterfeit, infringing goods to this District.

16.     On September 10, 2021, Plaintiffs' counsel placed an order from Defendant Anand and Homeless Penthouse for a "KAWS:HOLIDAY PLUSHIE[]" to be shipped and delivered to its office in Manhattan, New York. On September 24, 2021, the counterfeit, infringing item—falsely described as a "*KAWS Companion* stuffed doll[]" and bearing Plaintiffs' registered copyrights and trademarks—arrived at Plaintiffs' counsel's office. Though the description on the Homeless Penthouse Websites stated that the item would be delivered in a "COMPANION KAWS box" bearing Plaintiffs' registered copyrights and trademarks, no such box was delivered. The package label lists the exporter of the counterfeit, infringing item as Defendant OSell.

17.     On September 10, 2021, Plaintiffs' counsel placed an order from Defendants Leong and The Penthouse Theory for an "ORIGINALFAKE X GALLERY 1950 CERAMIC ASHTRAY" to be shipped and delivered to its office in Manhattan, New York. On October 18, 2021, the counterfeit, infringing item—falsely described as "KAWS CERAMIC ASHTRAY" and bearing Plaintiffs' registered copyrights and trademarks—arrived at Plaintiffs' counsel's office.

18.     Defendants are subject to this Court's jurisdiction pursuant to Rule 4 of the Federal Rules of Civil Procedure.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to these claims occurred in this District.

## BACKGROUND

**A.     Plaintiffs' Famous Copyrights and Trademarks**

20.     KAWS' artworks and items for sale are instantly recognizable in New York and around the world, especially those featuring the copyrighted "Companion" and/or "BFF." The "Companion" and "BFF" are copyrightable works of authorship duly registered with the U.S. Copyright Office under registration numbers VA 2-180-272 (Exhibit 1) and VA-2-182-652 (Exhibit 2), respectively, with effective dates of registration of December 2, 2019 and December 12, 2019, respectively (collectively, "Plaintiffs' Registered Copyrights").

21.     The "Companion" is a recurring figure in KAWS' most famous works, variations of which appear in countless forms and mediums, including, inter alia, as toys, large wood or bronze sculptures, massive inflatable sculptures or even as a Macy's Thanksgiving Day Parade float. KAWS often depicts the Companion with a skull and crossbones for a head and "XX" eyes wearing pants or taking the reappropriated form of a cartoon character or pop culture icon.

22.     KAWS' signature "XX" has been a critical element of his artworks and items for sale for decades, featuring in nearly all of KAWS' major works. The skull head is a motif recurring throughout KAWS' work, dating back to KAWS' early street art, which included the painting of this head onto figures in advertisements on bus shelters and in subway stations.

23.     In 2016, KAWS debuted "BFF," a Muppet-like figure with KAWS' trademarked "XX's" for eyes, gloved hands, oversized ears and furry exterior. Plaintiffs sell, throughout the United States and globally, Companion and BFF toys in a variety of sizes, colors

and poses, as well as other items featuring the Companion, BFF and/or Plaintiffs' distinctive trademarks and copyrights, including, inter alia, t-shirts, tote bags and prints.

24.    Plaintiffs' federal trademark registrations in the United States Patent and Trademark Office include, inter alia, marks for the name "KAWS" and a mark consisting of two "X's" with the lines of each "X" tapered at the top and rounded with semi-circles at the ends. Correct and true copies of Plaintiffs' federal trademark registrations (collectively, "Plaintiffs' Registered Trademarks") are annexed hereto as Exhibit 3.

25.    Plaintiffs consistently have used and continue to use Plaintiffs' Registered Copyrights and Trademarks in interstate and international commerce to identify and distinguish Plaintiffs' toys and other items for sale and in connection with artworks created and exhibited by Plaintiffs on a global scale.

26.    Plaintiffs have not assigned or licensed Plaintiffs' Registered Copyrights or Trademarks to any Defendant in this matter.

27.    Plaintiffs' Registered Copyrights and Trademarks are valid, subsisting in full force and effect, and constitute prima facie evidence of the validity of the copyrights and marks.

28.    Plaintiffs' Registered Copyrights and Trademarks are symbols of Plaintiffs' quality, reputation and goodwill.

29.    Plaintiffs have expended substantial time, money and resources developing, advertising and promoting Plaintiffs' Registered Trademarks, which qualify as famous marks pursuant to 15 U.S.C. § 1125(c)(1).

30.    Defendants committed their unlawful, infringing activities after Plaintiffs' Registered Copyrights and Trademarks became famous as a result of the global popularity and

acclaim of Plaintiffs' artworks, toys and other items for sale, as well as their extensive international sales and publicity. As a result of Plaintiffs' efforts, the public readily identifies items bearing Plaintiffs' Registered Copyrights and Trademarks as high quality items created and/or approved by Plaintiffs. As Plaintiffs' Registered Copyrights and Trademarks have acquired secondary meaning, any product or advertisement bearing such copyrights and/or marks is immediately associated by the public, the trade and consumers as being a product of and/or affiliated with Plaintiffs.

31.     Plaintiffs have strived to protect the KAWS name and to enforce Plaintiffs' Registered Copyrights and Trademarks and have carefully monitored and policed the use of Plaintiffs' Registered Copyrights and Trademarks, repeatedly successfully obtaining the removal of counterfeit and infringing items from websites and social media accounts, including, without limitation, toys, sculptures, canvases and home goods, after filing Digital Millennium Copyright Act ("DMCA") takedown notices, including against Defendants.

**B.     Defendants' Counterfeiting and Infringing Activities**

32.     In flagrant violation of Plaintiffs' federal registration of Plaintiffs' Registered Copyrights and Trademarks and Plaintiffs' use of Plaintiffs' Registered Copyrights and Trademarks on toys and other items for sale by Plaintiffs, Defendants have been selling, offering for sale, distributing, promoting and/or advertising in interstate and international commerce, through the Internet and e-mail, counterfeit goods infringing on Plaintiffs' Registered Copyrights and Trademarks.

33.     On information and belief, Defendants have conducted and are conducting their counterfeiting and infringing activities within this Judicial District and elsewhere

throughout the United States and are defrauding Plaintiffs and the consuming public for Defendants' own benefit and unjust enrichment.

34.     Defendants are not and never have been associated with, affiliated with, connected with, endorsed by or sanctioned by Plaintiffs and Plaintiffs never authorized or consented to Defendants' use of Plaintiffs' Registered Copyrights and Trademarks or ones substantially indistinguishable therefrom or confusingly similar thereto.  Plaintiffs have no control over the nature and quality of Defendants' counterfeit goods infringing on Plaintiffs' Registered Copyrights and Trademarks.

35.     Despite being notified by Plaintiffs of their illegal activities and/or knowing that they were unlawfully counterfeiting and infringing Plaintiffs' Registered Copyrights and Trademarks, Defendants intentionally, maliciously, willfully and/or recklessly continue to reproduce, copy and prepare derivative works of Plaintiffs' Registered Copyrights and Trademarks and advertise, promote, display, manufacture, distribute, offer for sale and sell counterfeit goods infringing on Plaintiffs' Registered Copyrights and Trademarks.  Defendants' unlawful misconduct constitutes an exceptional case under 15 U.S.C. § 1117(a).

36.     Defendants' unlawful acts were and are calculated to confuse and deceive the public and to underhandedly trade on Plaintiffs' goodwill and reputation and were conducted with full knowledge of Plaintiffs' rights.  Defendants' use of Plaintiffs' Registered Copyrights and Trademarks or ones substantially indistinguishable therefrom and/or confusingly similar thereto in connection with Defendants' goods is likely to cause and has caused the public, the trade and consumers to believe erroneously that the products offered for sale and/or distributed by Defendants were created, authorized and/or approved by Plaintiffs.  This confusion has

caused and continues to cause irreparable harm to Plaintiffs and weakens, dilutes, tarnishes and blurs the distinctive quality of Plaintiffs' Registered Copyrights and Trademarks.

37.     Defendants have disparaged Plaintiffs, Plaintiffs' Registered Copyrights and Trademarks and Plaintiffs' toys and other items for sale by creating a false association with Defendants' shoddy, inferior, counterfeit goods and the false impression that Plaintiffs are the source of origin thereof. Defendants' unlawful activities will hamper continuing efforts by Plaintiffs to protect their outstanding reputation for high quality, original and distinctive works and will tarnish the goodwill and demand for genuine toys and other items for sale by Plaintiffs.

38.     Defendants have been unjustly enriched by illegally using and misappropriating Plaintiffs' intellectual property for their own financial gain and have unfairly benefited and profited from Plaintiffs' outstanding reputation, Plaintiffs' Registered Copyrights and Trademarks and Plaintiffs' significant promotion of their genuine toys and other items for sale.

39.     Plaintiffs have no adequate remedy at law as Defendants' unlawful counterfeiting and infringing activities will persist unless enjoined by this Court.

**C.     Anand's and Homeless Penthouse's Counterfeiting and Infringing Activities**

40.     Upon information and belief, Defendant Anand founded Homeless Penthouse in late 2018 after his jewelry business—called J Group NY—began failing. Anand has claimed that a high school friend—identified only as "an NYC Real Estate Heiress"— offered to partially finance Homeless Penthouse as a vehicle for selling purported KAWS, Supreme and Takashi Murakami items, as well as wall art and custom designs. From the very start, Anand and Homeless Penthouse advertised widely on social media.

41.     Upon information and belief, Anand tasked an "NYC team" with handling customer support while Anand traveled throughout China and Hong Kong, focusing on marketing, sourcing new items, factories and markets and eventually overseeing operations and shipping.

42.     On https://www.homelesspenthouse.com/, Homeless Penthouse describes itself as an "NYC BASED CREATIVE COMPANY WORKING WITH FASHION & LIFESTYLE BRANDS TO CURATE THE PRODUCTS YOU WANT." That homepage contains links to Penthouse Theory, Hideout.NYC and Incognito, all of which advertise, promote, display, distribute, offer for sale and sell counterfeit and infringing goods, including counterfeit goods that illegally copy and infringe on Plaintiffs' Registered Copyrights and Trademarks.

43.     The Homeless Penthouse Websites' "About Us" page states that it has offices in New York, Berlin and Hong Kong, including a "main office in New York City." Upon information and belief, though Anand repeatedly has claimed, including, inter alia, on the Homeless Penthouse Websites and in YouTube videos, that Homeless Penthouse's main office and actual place of business is located either in New York City or in Brooklyn, Homeless Penthouse's main office and actual place of business instead is located in Newport News, Virginia.

44.     The Homeless Penthouse Websites' "Shipping & Delivery" page states that the company "process[es] and ship[s] orders from [its] New York & Shenzhen warehouse[s]" and that purchased items may be returned to 1410 Broadway, New York, New York 10002. Upon information and belief, Homeless Penthouse does not actually maintain an office or have any physical presence at 1410 Broadway in New York City.

45.     The "Shop" link in the menu on https://www.homelesspenthouse.com/ leads to https://shophomeless.com/, which includes the Homeless Penthouse brand name at the top of that page.

46.     As of October 13, 2021, the Homeless Penthouse Websites offered for sale 90 counterfeit items that illegally copy and infringe on Plaintiffs' Registered Copyrights and Trademarks, ranging in price from $49.00 to $9,999.00. Images of the counterfeit, infringing items offered for sale on the Homeless Penthouse Websites that misappropriate Plaintiffs' Registered Copyrights and Trademarks are set forth in Exhibit 4. Upon information and belief, all of the items in Exhibit 4 are counterfeit and unlawfully use Plaintiffs' Registered Copyrights and Trademarks.

47.     Upon information and belief, Defendants Anand and Homeless Penthouse advertised and offered for sale, and continue to advertise and offer for sale, their counterfeit, infringing goods on the Homeless Penthouse Websites, as well as on Homeless Penthouse's Facebook pages, Pinterest page, Instagram accounts, YouTube channel, Homeless Penthouse Magazine (including articles that appear to have been plagiarized from actual media outlets with the original authors' names replaced) and a Homeless Penthouse smartphone app that is available in the Apple App Store.

48.     Defendants Anand and Homeless Penthouse willfully and maliciously continue to engage in such counterfeiting and infringing activities despite Plaintiffs successfully obtaining the removal of certain counterfeit and infringing items from the Homeless Penthouse Websites and social media accounts, including, without limitation, toys, sculptures, canvases and home goods, after Plaintiffs filed DMCA takedown notices.

49.     The willfulness of Defendants Anand and Homeless Penthouse is undeniable.  The Homeless Penthouse Websites formerly contained scrolling text in all caps reading "EVERYTHING IS A COPY OF EVERYTHING."  As of September 10, 2021, the following exchange was found on the Homeless Penthouse Websites' FAQ page:

> "Are the products real?
> The products are really nice.  We try our best to ship them our quickest to you."

These obfuscating, tongue-in-cheek statements are feeble attempts to escape the obvious:  the purported KAWS items for sale on the Homeless Penthouse Websites are deliberate fakes.

50.     On or about October 29, 2021, Anand posted a video on his Instagram account, *inter alia*, claiming that Homeless Penthouse earned $130,983.32 for the week of September 15-22, 2021 and displaying the image of an infringing, counterfeit item titled "4FT Las Vegas Sculpture" offered for sale for $3,999.00.  Anand further stated:

> "Ppl scam all you can.  Scam the game.  Scam your dad.  Scam your barber.  Scam Facebook.  Scam shopify.  Scam visa, scam Amex, scam ethereum.  But if you scam @shophomeless you scammed yourself.  I don't call cops or shoot glocks.  I def have some fun tho."

**D.      Anand's and Penthouse Theory's Counterfeiting and Infringing Activities**

51.     Upon information and belief, Defendant Anand founded Penthouse Theory in 2020 as "a global shopping space" in an effort to create the leading interior design app and to build off the existing Homeless Penthouse Websites and social media accounts.

52.     On Penthouse Theory's "Privacy Policy" page, Penthouse Theory's address is listed as 1410 Broadway, New York, New York 10010.  Upon information and belief, Penthouse Theory does not actually maintain an office or have any physical presence at 1410 Broadway in New York City.

53.     As of October 13, 2021, Penthouse Theory offered for sale 25 counterfeit items that illegally copy and infringe on Plaintiffs' Registered Copyrights and Trademarks, ranging in price from $36.00 to $3,999.00.  Images of the counterfeit, infringing items offered for sale by Penthouse Theory that misappropriate Plaintiffs' Registered Copyrights and Trademarks are set forth in Exhibit 5.  Upon information and belief, all of the items in Exhibit 5 are counterfeit and unlawfully use Plaintiffs' Registered Copyrights and Trademarks.

54.     Upon information and belief, Defendants Anand and Penthouse Theory advertised and offered for sale, and continue to advertise and offer for sale, their counterfeit, infringing goods on Penthouse Theory's website (including in a "KAWS STORE"), as well as on Penthouse Theory's Facebook page, Pinterest page, Instagram accounts, YouTube channel and a Penthouse Theory smartphone app that is available in the Apple App Store.

55.     Defendants Anand and Penthouse Theory willfully and maliciously continue to engage in such counterfeiting and infringing activities despite KAWS successfully obtaining the removal of certain counterfeit and infringing items from the Homeless Penthouse Websites and social media accounts, including, without limitation, toys, sculptures, canvases and home goods, after Plaintiffs filed DMCA takedown notices.

56.     Anand has tagged KAWS in Anand's Instagram stories, goading and taunting KAWS by, inter alia, displaying a knock-off chain/pendant purportedly created by Anand meant to mimic the chain/pendant that KAWS produced for the rapper Kid Cudi to wear to the 2021 Met Gala and lashing out at KAWS for the latter's public disapproval of Penthouse Theory's counterfeit, infringing goods.  Anand described himself as "a hustler" who sells knock-off merchandise "to push [his] own agenda and pump out shit people want to buy."

**E.** **Anand's and Incognito's Counterfeiting and Infringing Activities**

57.     Upon information and belief, Defendant Anand founded Incognito in 2020 or 2021.

58.     As of October 13, 2021, Incognito offered for sale 40 counterfeit items that illegally copy and infringe on Plaintiffs' Registered Copyrights and Trademarks, ranging in price from $59.00 to $7,500.00. Images of the counterfeit, infringing items offered for sale on Incognito's website that misappropriate Plaintiffs' Registered Copyrights and Trademarks are set forth in Exhibit 6.[1] Upon information and belief, all of the items in Exhibit 6 are counterfeit and unlawfully use Plaintiffs' Registered Copyrights and Trademarks.

59.     Upon information and belief, Defendants Anand and Incognito advertised and offered for sale, and continue to advertise and offer for sale, their counterfeit, infringing goods on Incognito's website.

60.     Defendants Anand and Incognito willfully and maliciously continue to engage in such counterfeiting and infringing activities despite KAWS successfully obtaining the removal of certain counterfeit and infringing items from the Homeless Penthouse Websites and social media accounts, including, without limitation, toys, sculptures, canvases and home goods, after Plaintiffs filed DMCA takedown notices.

**F.** **Anand's and Hideout.NYC's Counterfeiting and Infringing Activities**

61.     Upon information and belief, Defendant Anand founded Hideout.NYC in 2020 or 2021.

---

[1] The counterfeit, infringing KAWS items are highlighted in yellow in Exhibit 6 as Incognito's website does not contain links to individual pages for each item for sale.

62. Hideout.NYC's home page lists the company's address as 55 Meadow Street, Brooklyn, New York 11206. Hideout.NYC's "Return Policy" page states that items may be returned to Hideout.NYC in "Brooklyn,NY [sic] 11211," but omits an address.

63. As of October 20, 2021, Hideout.NYC offered for sale six counterfeit items that illegally copy and infringe on Plaintiffs' Registered Copyrights and Trademarks, ranging in price from $49.00 to $299.00. Images of the counterfeit, infringing items offered for sale on Hideout.NYC's website that misappropriate Plaintiffs' Registered Copyrights and Trademarks are set forth in Exhibit 7. Upon information and belief, all of the items in Exhibit 7 are counterfeit and unlawfully use Plaintiffs' Registered Copyrights and Trademarks.

64. Upon information and belief, Defendants Anand and Hideout.NYC advertised and offered for sale, and continue to advertise and offer for sale, their counterfeit, infringing goods on Hideout.NYC's website and Instagram account.

65. Defendants Anand and Hideout.NYC willfully and maliciously continue to engage in such counterfeiting and infringing activities despite KAWS successfully obtaining the removal of certain counterfeit and infringing items from the Homeless Penthouse Websites and social media accounts, including, without limitation, toys, sculptures, canvases and home goods, after Plaintiffs filed DMCA takedown notices.

**G.** **Leong's and The Penthouse Theory's Counterfeiting and Infringing Activities**

66. Upon information and belief, in or about 2020 or 2021, Defendant Leong, formerly an intern for Anand and Penthouse Theory, established The Penthouse Theory as their competitor. The Penthouse Theory, based out of Singapore, likewise internationally traffics in, inter alia, counterfeit and infringing KAWS items sold and shipped to purchasers in New York and other jurisdictions worldwide.

67. As of October 20, 2021, The Penthouse Theory offered for sale 45 counterfeit items that illegally copy and infringe on Plaintiffs' Registered Copyrights and Trademarks, ranging in price from $59.00 to $3,299.00. Images of the counterfeit, infringing items offered for sale on The Penthouse Theory's website that misappropriate Plaintiffs' Registered Copyrights and Trademarks are set forth in Exhibit 8. Upon information and belief, all of the items in Exhibit 8 are counterfeit and unlawfully use Plaintiffs' Registered Copyrights and Trademarks.

68. Seven of these counterfeit, infringing items appear on a page titled "4FT KAWS COLLECTION," ranging in price from $1,899.00 to $3,299.00.

69. Upon information and belief, Defendants Leong and The Penthouse Theory advertised and offered for sale, and continue to advertise and offer for sale, their counterfeit, infringing goods on The Penthouse Theory's website, as well as on The Penthouse Theory's Facebook pages, Pinterest page, Instagram accounts and YouTube channel.

70. Defendants Leong and The Penthouse Theory willfully and maliciously continue to engage in such counterfeiting and infringing activities despite full knowledge of Plaintiffs' rights. The following exchange is found on The Penthouse Theory's FAQ page (https://www.thepenthousetheory.com/pages/frequently-asked-questions):

"ARE YOUR ITEMS REWORKED?

Our items are custom hand-reworked reproductions due to the low prices we are able to provide."

It is crystal clear that the business model of Leong and The Penthouse Theory is to sell knock-off goods in flagrant violation of the law and with no respect whatsoever for the rights of the artist.

**H.**     **Leong's and The Penthouse Collective's Counterfeiting and Infringing Activities**

71.     On or about September 28, 2021, The Penthouse Theory posted an Instagram story that it labeled an "URGENT ANNOUNCEMENT SCAM FRAUD ALERT."

72.     The Penthouse Theory stated that Penthouse Theory is a "scam syndicate" and "scam website" that has "scammed many clients without shipping out their orders."

73.     The Penthouse Theory included screenshots of very negative customer reviews heavily criticizing Penthouse Theory.

74.     The Penthouse Theory announced that it "made the hard decision to rebrand to stay away from these scammers," claiming that it no longer would use the name "The Penthouse Theory" or its website at https://thepenthousetheory.com and instead would use the name "The Penthouse Collective" and a website at www.thepenthousecollective.com.

75.     To date, https://thepenthousetheory.com remains operational and www.thepenthousecollective.com–offering for sale the same infringing, counterfeit goods on a nearly identical site—also is operational.

<div align="center">

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Trademark Counterfeiting, 15 U.S.C. §§ 1114, 1116 and 1117)**
**(Against Anand, The Homeless Penthouse Entities, Leong and The Penthouse Theory**
**Entities)**

</div>

76.     Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

77.     Plaintiffs are the exclusive owners of Plaintiffs' Registered Trademarks, which are in full force and effect.

78.     Defendants have used spurious designations that are identical with Plaintiffs' Registered Trademarks or substantially indistinguishable therefrom or confusingly similar thereto.

79. Defendants have intentionally used these spurious designations with the full knowledge that they are counterfeit in connection with the advertisement, promotion, display, distribution, offering for sale and sale of goods.

80. Plaintiffs never consented to Defendants' use of Plaintiffs' Registered Trademarks to advertise, promote, display, distribute, offer for sale and sell Defendants' counterfeit products.

81. Defendants used Plaintiffs' Registered Trademarks in commerce as a result of Defendants' unauthorized use of Plaintiffs' Registered Trademarks in connection with Defendants' reproduction, copying and preparation of derivative works of Plaintiffs' Registered Trademarks and advertisement, promotion, display, distribution, offering for sale and sale of Defendants' products through e-mail and the Internet.

82. Defendants' unauthorized use of Plaintiffs' Registered Trademarks: (a) Causes confusion, mistake and deception; (b) Causes the public to believe that Defendants' items for sale are the same as Plaintiffs' items for sale and/or that Defendants' items for sale are authorized by, sponsored by, approved by, affiliated with or associated with Plaintiffs; and (c) Results in Defendants unfairly benefiting from Plaintiffs' reputation and Plaintiffs' promotion of their items for sale to the substantial and irreparable injury of Plaintiffs, Plaintiffs' Registered Trademarks and the public.

83. Defendants' acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. §§ 1114(1), 1116(d) and 117(b)-(c).

84. By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) Statutory damages in the amount of up to $2,000,000.00 for each mark counterfeited pursuant to 15 U.S.C. § 1117(c) of the Lanham Act or, at Plaintiffs' election, an amount representing three

times Plaintiffs' damages and/or Defendants' illicit profits; and (b) Reasonable attorneys' fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117(b).

85.    Plaintiffs have no adequate remedy at law and will continue to be irreparably, directly and proximately damaged by Defendants' persistent unlawful conduct unless Defendants are enjoined by this Court.

86.    Plaintiffs are further entitled to punitive damages in a sum not less than $10,000,000.00 as Defendants' willful, wanton conduct evidenced a high degree of moral culpability and was directed at the public.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Contributory and Vicarious Trademark Counterfeiting)
### (Against Kang)

87.    Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

88.    Upon information and belief, Kang has actual knowledge of and/or reason to know of the trademark counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities by, inter alia, assisting Anand and the Homeless Penthouse Entities with their illegal, counterfeit activities and providing Anand and the Homeless Penthouse Entities with a safe haven—a base of operations to serve as Homeless Penthouse's actual place of business, including, inter alia, in Newport News, Virginia.

89.    Upon information and belief, Kang materially encouraged, enabled and contributed to the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities by knowingly providing services to Anand and the Homeless Penthouse Entities, including, inter alia, providing Anand and the Homeless Penthouse Entities with a safe haven—a base of operations to serve as Homeless Penthouse's actual place of business, including, inter

*alia*, in Newport News, Virginia—with full knowledge and/or reason to know that Anand and the Homeless Penthouse Entities were selling counterfeit items with false designations that were identical with, substantially indistinguishable from or confusingly similar to Plaintiffs' Registered Trademarks.

90. Upon information and belief, with the full knowledge of Kang and/or reason to know, Anand and the Homeless Penthouse Entities intentionally used spurious designations that are identical with Plaintiffs' Registered Trademarks or substantially indistinguishable therefrom or confusingly similar thereto in connection with the advertisement, promotion, display, distribution, offering for sale and sale of goods.

91. Upon information and belief, with the full knowledge of Kang and/or reason to know, Anand and the Homeless Penthouse Entities used Plaintiffs' Registered Trademarks in commerce as a result of Anand's and the Homeless Penthouse Entities' unauthorized use of Plaintiffs' Registered Trademarks in connection with Anand's and the Homeless Penthouse Entities' reproduction, copying and preparation of derivative works of Plaintiffs' Registered Trademarks and advertisement, promotion, display, distribution, offering for sale and sale of Defendants' products through e-mail and the Internet.

92. Upon information and belief, with the full knowledge of Kang and/or reason to know, Anand's and the Homeless Penthouse Entities' unauthorized use of Plaintiffs' Registered Trademarks: (a) Causes confusion, mistake and deception; (b) Causes the public to believe that Anand's and the Homeless Penthouse Entities' items for sale are the same as Plaintiffs' items for sale and/or that Anand's and the Homeless Penthouse Entities' items for sale are authorized by, sponsored by, approved by, affiliated with or associated with Plaintiffs; and (c) Results in Anand and the Homeless Penthouse Entities unfairly benefiting from Plaintiffs'

reputation and Plaintiffs' promotion of their items for sale to the substantial and irreparable injury of Plaintiffs, Plaintiffs' Registered Trademarks and the public.

93.     Upon information and belief, with the full knowledge of and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, Kang materially contributed to the counterfeiting, infringing conduct of Anand and the Homeless Penthouse Entities by, inter alia, providing Anand and the Homeless Penthouse Entities with a safe haven—a base of operations to serve as Homeless Penthouse's actual place of business, including, inter alia, in Newport News, Virginia.

94.     Upon information and belief, with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, Kang continues to supply its services to Anand and the Homeless Penthouse Entities.

95.     Upon information and belief, with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, Kang has taken no remedial steps to prevent Anand's and the Homeless Penthouse Entities' illegal, counterfeiting activities.

96.     Upon information and belief, Kang's willful inducement of and/or aiding and abetting in Anand's and the Homeless Penthouse Entities' illegal, counterfeiting activities— with full knowledge and/or reason to know of their illegality—render Kang contributorily liable for willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

97.     Upon information and belief, Kang's substantial control over Anand's and the Homeless Penthouse Entities' counterfeiting and illegal activities by, inter alia, providing Anand and the Homeless Penthouse Entities with a safe haven—a base of operations to serve as

Homeless Penthouse's actual place of business, including, <u>inter alia</u>, in Newport News, Virginia—and Kang knowingly deriving a financial benefit from the sale of counterfeit, infringing items by Anand and the Homeless Penthouse Entities, render Kang vicariously liable for willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

98.     By reason of the foregoing, Kang is liable to Plaintiffs for:  (a) Statutory damages in the amount of up to $2,000,000.00 for each mark counterfeited pursuant to 15 U.S.C. § 1117(c) of the Lanham Act or, at Plaintiffs' election, an amount representing three times Plaintiffs' damages and/or Kang's illicit profits; and (b) Reasonable attorneys' fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117(b).

99.     Plaintiffs have no adequate remedy at law and will continue to be irreparably, directly and proximately damaged by Kang's persistent unlawful conduct unless Kang is enjoined by this Court.

100.     Plaintiffs are further entitled to punitive damages in a sum not less than $10,000,000.00 as Kang's willful, wanton conduct evidenced a high degree of moral culpability and was directed at the public.

### AS AND FOR A THIRD CAUSE OF ACTION
#### (Contributory and Vicarious Trademark Counterfeiting)
#### (Against OSell)

101.     Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

102.     Upon information and belief, OSell has actual knowledge of and/or reason to know of the trademark counterfeiting and illegal activities of Anand and the Homeless

Penthouse Entities by, inter alia, assisting Anand and the Homeless Penthouse Entities with the export of counterfeit, infringing items to New York and other jurisdictions worldwide.

103.    Upon information and belief, OSell materially encouraged, enabled and contributed to the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities by knowingly providing services to Anand and the Homeless Penthouse Entities, including, inter alia, exporting counterfeit, infringing items to New York and other jurisdictions worldwide, with full knowledge and/or reason to know that Anand and the Homeless Penthouse Entities were selling counterfeit items with false designations that were identical with, substantially indistinguishable from or confusingly similar to Plaintiffs' Registered Trademarks.

104.    Upon information and belief, with the full knowledge of OSell and/or reason to know, Anand and the Homeless Penthouse Entities intentionally used spurious designations that are identical with Plaintiffs' Registered Trademarks or substantially indistinguishable therefrom or confusingly similar thereto in connection with the advertisement, promotion, display, distribution, offering for sale and sale of goods.

105.    Upon information and belief, with the full knowledge of OSell and/or reason to know, Anand and the Homeless Penthouse Entities used Plaintiffs' Registered Trademarks in commerce as a result of Anand's and the Homeless Penthouse Entities' unauthorized use of Plaintiffs' Registered Trademarks in connection with Anand's and the Homeless Penthouse Entities' reproduction, copying and preparation of derivative works of Plaintiffs' Registered Trademarks and advertisement, promotion, display, distribution, offering for sale and sale of Defendants' products through e-mail and the Internet.

106.    Upon information and belief, with the full knowledge of OSell and/or reason to know, Anand's and the Homeless Penthouse Entities' unauthorized use of Plaintiffs'

Registered Trademarks: (a) Causes confusion, mistake and deception; (b) Causes the public to believe that Anand's and the Homeless Penthouse Entities' items for sale are the same as Plaintiffs' items for sale and/or that Anand's and the Homeless Penthouse Entities' items for sale are authorized by, sponsored by, approved by, affiliated with or associated with Plaintiffs; and (c) Results in Anand and the Homeless Penthouse Entities unfairly benefiting from Plaintiffs' reputation and Plaintiffs' promotion of their items for sale to the substantial and irreparable injury of Plaintiffs, Plaintiffs' Registered Trademarks and the public.

107. Upon information and belief, with the full knowledge of and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, OSell materially contributed to the counterfeiting, infringing conduct of Anand and the Homeless Penthouse Entities by, inter alia, providing Anand and the Homeless Penthouse Entities with a safe haven and means of exporting the counterfeiting, infringing items to New York and other jurisdictions worldwide with impunity.

108. Upon information and belief, with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, OSell continues to supply its services to Anand and the Homeless Penthouse Entities.

109. Upon information and belief, with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, OSell has taken no remedial steps to prevent the illegal exporting of the counterfeiting, infringing items to New York and other jurisdictions worldwide.

110. On October 29, 2021, Plaintiffs' counsel demanded that OSell cease its aiding and abetting of Anand's and the Homeless Penthouse Entities' counterfeiting, illegal activities. OSell failed to respond to Plaintiffs' counsel.

111.     Upon information and belief, OSell's willful inducement of and/or aiding and abetting in the export of counterfeiting, infringing items to New York and other jurisdictions worldwide—with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities—render OSell contributorily liable for willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

112.     Upon information and belief, OSell's substantial control over the counterfeit, infringing items sold by Anand and the Homeless Penthouse Entities by, inter alia, arranging for the export of such items to New York and other jurisdictions worldwide, and OSell knowingly deriving a financial benefit from the sale of counterfeit, infringing items by Anand and the Homeless Penthouse Entities, render OSell vicariously liable for willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

113.     By reason of the foregoing, OSell is liable to Plaintiffs for:  (a) Statutory damages in the amount of up to $2,000,000.00 for each mark counterfeited pursuant to 15 U.S.C. § 1117(c) of the Lanham Act or, at Plaintiffs' election, an amount representing three times Plaintiffs' damages and/or OSell's illicit profits; and (b) Reasonable attorneys' fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117(b).

114.     Plaintiffs have no adequate remedy at law and will continue to be irreparably, directly and proximately damaged by OSell's persistent unlawful conduct unless OSell is enjoined by this Court.

115.     Plaintiffs are further entitled to punitive damages in a sum not less than $10,000,000.00 as OSell's willful, wanton conduct evidenced a high degree of moral culpability and was directed at the public.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Trademark Infringement, 15 U.S.C. § 1114)
### (Against Anand, The Homeless Penthouse Entities, Leong and The Penthouse Theory Entities)

116.    Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

117.    Plaintiffs are the exclusive owners of Plaintiffs' Registered Trademarks, which are in full force and effect.

118.    Based on Plaintiffs' extensive promotion of Plaintiffs' Registered Trademarks, Plaintiffs' significant sales and the wide popularity of Plaintiffs' toys and other items for sale, Plaintiffs' Registered Trademarks have acquired a secondary meaning so that any item and promotion bearing such trademarks is immediately associated by purchasers and the public as being a product of and/or affiliated with Plaintiffs.

119.    Defendants have used Plaintiffs' Registered Trademarks in commerce as a result of Defendants' unauthorized use of Plaintiffs' Registered Trademarks in connection with Defendants' reproduction, copying and preparation of derivative works of Plaintiffs' Registered Trademarks and advertisement, promotion, display, distribution, offering for sale and sale of Defendants' products through e-mail and the Internet.

120.    Defendants have used Plaintiffs' Registered Trademarks with the full knowledge that they are Plaintiffs' exclusive property in connection with Defendants' advertisement, promotion, display, distribution, offering for sale and sale of Defendants' goods bearing infringements and/or counterfeits of Plaintiffs' Registered Trademarks.

121.    Defendants' activities create the false and misleading impression that Defendants are sanctioned, assigned or authorized by Plaintiffs to use Plaintiffs' Registered

Trademarks to advertise, promote, display, distribute, offer for sale or sell products bearing Plaintiffs' Registered Trademarks.

122.    Defendants have engaged and continue to engage in the foregoing activity with the intent to confuse and deceive the public into believing that Defendants and Defendants' infringing and/or counterfeit products are authorized by, approved by or associated with Plaintiffs.

123.    Plaintiffs have not consented to Defendants' use of Plaintiffs' Registered Trademarks, which causes confusion in the minds of the public and falsely creates the impression that the goods advertised, promoted, displayed, distributed, offered for sale and sold by Defendants are authorized by, approved by or associated with Plaintiffs.

124.    Defendants' unauthorized use of Plaintiffs' Registered Trademarks results in Defendants unfairly benefiting from Plaintiffs' reputation and Plaintiffs' promotion of their items for sale to the substantial and irreparable injury of Plaintiffs, Plaintiffs' Registered Trademarks and the public.

125.    Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

126.    By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) An amount representing three times Plaintiffs' damages and/or Defendants' illicit profits; and (b) Reasonable attorneys' fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117.

127.    Plaintiffs have no adequate remedy at law and will continue to be irreparably, directly and proximately damaged by Defendants' persistent unlawful conduct unless Defendants are enjoined by this Court.

128.    Plaintiffs are further entitled to punitive damages in a sum not less than $10,000,000.00 as Defendants' willful, wanton conduct evidenced a high degree of moral culpability and was directed at the public.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Contributory and Vicarious Trademark Infringement)
### (Against Kang)

129.    Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

130.    Upon information and belief, Kang has actual knowledge and/or reason to know that Anand and the Homeless Penthouse Entities used Plaintiffs' Registered Trademarks in commerce as a result of Anand's and the Homeless Penthouse Entities' unauthorized use of Plaintiffs' Registered Trademarks in connection with Anand's and the Homeless Penthouse Entities' reproduction, copying and preparation of derivative works of Plaintiffs' Registered Trademarks and advertisement, promotion, display, distribution, offering for sale and sale of Defendants' products through e-mail and the Internet.

131.    Upon information and belief, with the full knowledge of Kang and/or reason to know, Anand and the Homeless Penthouse Entities used Plaintiffs' Registered Trademarks with full knowledge that they are Plaintiffs' exclusive property in connection with Anand's and the Homeless Penthouse Entities' advertisement, promotion, distribution, offering for sale and sale of Defendants' goods bearing infringements and/or counterfeits of Plaintiffs' Registered Trademarks.

132.    Upon information and belief, with full knowledge of Kang and/or reason to know, Anand's and the Homeless Penthouse Entities' activities create the false and misleading impression that Anand and the Homeless Penthouse Entities are sanctioned, assigned or

authorized by Plaintiffs to use Plaintiffs' Registered Trademarks to advertise, promote, distribute, offer for sale or sell products bearing Plaintiffs' Registered Trademarks.

133. Upon information and belief, with full knowledge of Kang and/or reason to know, Anand and the Homeless Penthouse Entities have engaged and continue to engage in the foregoing activity with the intent to confuse and deceive the public into believing that Anand's and the Homeless Penthouse Entities' infringing and/or counterfeit products are authorized by, approved by or associated with Plaintiffs.

134. Upon information and belief, with full knowledge of Kang and/or reason to know, Plaintiffs have not consented to Anand's and the Homeless Penthouse Entities' use of Plaintiffs' Registered Trademarks, which causes confusion in the minds of the public and falsely creates the impression that the goods advertised, promoted, distributed, offered for sale and sold by Anand and the Homeless Penthouse Entities are authorized by, approved by or associated with Plaintiffs.

135. Upon information and belief, with full knowledge of Kang and/or reason to know, Anand's and the Homeless Penthouse Entities' unauthorized use of Plaintiffs' Registered Trademarks results in Anand and the Homeless Penthouse Entities unfairly benefiting from Plaintiffs' reputation and Plaintiffs' promotion of their items for sale to the substantial and irreparable injury of Plaintiffs, Plaintiffs' Registered Trademarks and the public.

136. Upon information and belief, with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, Kang has materially contributed to such counterfeiting and illegal activities by, inter alia, providing Anand and the Homeless Penthouse Entities with a safe haven—a base of operations to serve as Homeless Penthouse's actual place of business, including, inter alia, in Newport News, Virginia.

137.     Upon information and belief, with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, Kang continues to supply its services to Anand and the Homeless Penthouse Entities.

138.     Upon information and belief, with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, Kang has taken no remedial steps to prevent Anand's and the Homeless Penthouse Entities' illegal, counterfeiting activities.

139.     Upon information and belief, Kang's willful inducement of and/or aiding and abetting in Anand's and the Homeless Penthouse Entities' illegal, counterfeiting activities—with full knowledge and/or reason to know of their illegality—render Kang contributorily liable for willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

140.     Upon information and belief, Kang's substantial control over Anand's and the Homeless Penthouse Entities' counterfeiting and illegal activities by, inter alia, providing Anand and the Homeless Penthouse Entities with a safe haven—a base of operations to serve as Homeless Penthouse's actual place of business, including, inter alia, in Newport News, Virginia—and Kang knowingly deriving a financial benefit from the sale of counterfeit, infringing items by Anand and the Homeless Penthouse Entities, render Kang vicariously liable for willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

141.     By reason of the foregoing, Kang is liable to Plaintiffs for:  (a) An amount representing three times Plaintiffs' damages and/or Kang's illicit profits; and (b) Reasonable attorneys' fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117.

142.    Plaintiffs have no adequate remedy at law and will continue to be irreparably, directly and proximately damaged by Kang's persistent unlawful conduct unless Kang is enjoined by this Court.

143.    Plaintiffs are further entitled to punitive damages in a sum not less than $10,000,000.00 as Kang's willful, wanton conduct evidenced a high degree of moral culpability and was directed at the public.

### AS AND FOR A SIXTH CAUSE OF ACTION
#### (Contributory and Vicarious Trademark Infringement)
#### (Against OSell)

144.    Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

145.    Upon information and belief, OSell has actual knowledge and/or reason to know that Anand and the Homeless Penthouse Entities used Plaintiffs' Registered Trademarks in commerce as a result of Anand's and the Homeless Penthouse Entities' unauthorized use of Plaintiffs' Registered Trademarks in connection with Anand's and the Homeless Penthouse Entities' reproduction, copying and preparation of derivative works of Plaintiffs' Registered Trademarks and advertisement, promotion, display, distribution, offering for sale and sale of Defendants' products through e-mail and the Internet.

146.    Upon information and belief, with the full knowledge of OSell and/or reason to know, Anand and the Homeless Penthouse Entities used Plaintiffs' Registered Trademarks with full knowledge that they are Plaintiffs' exclusive property in connection with Anand's and the Homeless Penthouse Entities' advertisement, promotion, distribution, offering for sale and sale of Defendants' goods bearing infringements and/or counterfeits of Plaintiffs' Registered Trademarks.

147. Upon information and belief, with full knowledge of OSell and/or reason to know, Anand's and the Homeless Penthouse Entities' activities create the false and misleading impression that Anand and the Homeless Penthouse Entities are sanctioned, assigned or authorized by Plaintiffs to use Plaintiffs' Registered Trademarks to advertise, promote, distribute, offer for sale or sell products bearing Plaintiffs' Registered Trademarks.

148. Upon information and belief, with full knowledge of OSell and/or reason to know, Anand and the Homeless Penthouse Entities have engaged and continue to engage in the foregoing activity with the intent to confuse and deceive the public into believing that Anand's and the Homeless Penthouse Entities' infringing and/or counterfeit products are authorized by, approved by or associated with Plaintiffs.

149. Upon information and belief, with full knowledge of OSell and/or reason to know, Plaintiffs have not consented to Anand's and the Homeless Penthouse Entities' use of Plaintiffs' Registered Trademarks, which causes confusion in the minds of the public and falsely creates the impression that the goods advertised, promoted, distributed, offered for sale and sold by Anand and the Homeless Penthouse Entities are authorized by, approved by or associated with Plaintiffs.

150. Upon information and belief, with full knowledge of OSell and/or reason to know, Anand's and the Homeless Penthouse Entities' unauthorized use of Plaintiffs' Registered Trademarks results in Anand and the Homeless Penthouse Entities unfairly benefiting from Plaintiffs' reputation and Plaintiffs' promotion of their items for sale to the substantial and irreparable injury of Plaintiffs, Plaintiffs' Registered Trademarks and the public.

151. Upon information and belief, with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, OSell

has materially contributed to such counterfeiting and illegal activities by, inter alia, providing Anand and the Homeless Penthouse Entities with a safe haven and means of exporting the counterfeiting, infringing items to New York and other jurisdictions worldwide with impunity.

152.     Upon information and belief, with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, OSell continues to supply its services to Anand and the Homeless Penthouse Entities.

153.     Upon information and belief, with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, OSell has taken no remedial steps to prevent the illegal exporting of the counterfeiting, infringing items to New York and other jurisdictions worldwide.

154.     On October 29, 2021, Plaintiffs' counsel demanded that OSell cease its aiding and abetting of Anand's and the Homeless Penthouse Entities' counterfeiting, illegal activities.  OSell failed to respond to Plaintiffs' counsel.

155.     Upon information and belief, OSell's willful inducement of and/or aiding and abetting in the export of counterfeiting, infringing items to New York and other jurisdictions worldwide—with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities—render OSell contributorily liable for willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

156.     Upon information and belief, OSell's substantial control over the counterfeit, infringing items sold by Anand and the Homeless Penthouse Entities by, inter alia, arranging for the export of such items to New York and other jurisdictions worldwide, and OSell knowingly deriving a financial benefit from the sale of counterfeit, infringing items by Anand

and the Homeless Penthouse Entities, render OSell vicariously liable for willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

157.    By reason of the foregoing, OSell is liable to Plaintiffs for: (a) An amount representing three times Plaintiffs' damages and/or OSell's illicit profits; and (b) Reasonable attorneys' fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117.

158.    Plaintiffs have no adequate remedy at law and will continue to be irreparably, directly and proximately damaged by OSell's persistent unlawful conduct unless OSell is enjoined by this Court.

159.    Plaintiffs are further entitled to punitive damages in a sum not less than $10,000,000.00 as OSell's willful, wanton conduct evidenced a high degree of moral culpability and was directed at the public.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(Unfair Competition, False Designation of Origin and False Description,**
**15 U.S.C. § 1125(a))**
**(Against Anand, The Homeless Penthouse Entities, Leong and The Penthouse Theory**
**Entities)**

160.    Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

161.    Plaintiffs are the exclusive owners of Plaintiffs' Registered Trademarks, which are in full force and effect, as well as of any unregistered trademarks that have become famous and indelibly linked or associated with Plaintiffs by virtue of Plaintiffs' extensive promotion of artwork and/or goods containing such famous unregistered trademarks, Plaintiffs' significant sales of artwork and/or goods containing such famous unregistered trademarks and/or the global popularity of Plaintiffs' toys and other items for sale containing such famous unregistered trademarks.

162.     In connection with Defendants' unlawful reproduction, copying and preparation of derivative works of Plaintiffs' Registered Trademarks and advertisement, promotion, display, distribution, offering for sale and sale of Defendants' infringing, counterfeit products through e-mail and the Internet, Defendants have used Plaintiffs' Registered Trademarks in commerce.

163.     In connection with Defendants' advertisement, promotion, distribution, offers of sale and sale of their counterfeit and infringing goods, Defendants have affixed, applied and/or used false designations of origin and false and misleading descriptions and representations, including Plaintiffs' Registered Trademarks, which falsely describe the origin of the goods sold by Defendants and their purported authorization by, approval by or association with Plaintiffs.

164.     Defendants have used Plaintiffs' Registered Trademarks with full knowledge of the falsity of such designations of origin, descriptions and representations, all to the detriment of Plaintiffs.

165.     Defendants' use of Plaintiffs' Registered Trademarks on their websites, on their social media and on their goods bearing counterfeits and/or infringements of Plaintiffs' Registered Trademarks constitutes false descriptions, representations and claims that Defendants' products are authorized by, approved by or associated with Plaintiffs.

166.     Defendants have engaged in unfair competition under federal law by using Plaintiffs' Registered Trademarks on Defendants' websites, on their social media and on their goods with the express intent to cause confusion and mistake, to deceive and mislead the public, to trade upon Plaintiffs' reputation and goodwill and to improperly appropriate to Defendants the

valuable trademark rights of Plaintiffs, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

167.    Plaintiffs have no adequate remedy at law and will continue to be irreparably, directly and proximately damaged by Defendants' persistent unlawful conduct unless Defendants are enjoined by this Court.

168.    Plaintiffs are further entitled to punitive damages in a sum not less than $10,000,000.00 as Defendants' willful, wanton conduct evidenced a high degree of moral culpability and was directed at the public.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
**(Trademark Dilution, 15 U.S.C. § 1125(c))**
**(Against Anand, The Homeless Penthouse Entities, Leong and The Penthouse Theory Entities)**

169.    Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

170.    Plaintiffs are the exclusive owners of Plaintiffs' Registered Trademarks, which are in full force and effect.

171.    Plaintiffs' Registered Trademarks are globally recognized and distinctive.

172.    Defendants' use of Plaintiffs' Registered Trademarks or marks substantially indistinguishable therefrom or confusingly similar thereto in order to sell Defendants' products constitutes Defendants' use in commerce of Plaintiffs' Registered Trademarks.

173.    Defendants have intentionally and willfully appropriated Plaintiffs' Registered Trademarks and traded on Plaintiffs' reputation.

174.    Defendants' use of Plaintiffs' Registered Trademarks in connection with Defendants' reproduction, copying and preparation of derivative works of Plaintiffs' Registered

Trademarks and advertisement, promotion, display, distribution, offering for sale and sale of

Defendants' counterfeit, infringing goods has tarnished and continues to tarnish Plaintiffs'

Registered Trademarks.

175. Defendants' willful acts are diluting the distinctive quality of Plaintiffs'

Registered Trademarks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

176. Plaintiffs have no adequate remedy at law and will continue to be

irreparably, directly and proximately damaged by Defendants' persistent unlawful conduct

unless Defendants are enjoined by this Court.

177. Plaintiffs are further entitled to punitive damages in a sum not less than

$10,000,000.00 as Defendants' willful, wanton conduct evidenced a high degree of moral

culpability and was directed at the public.

### AS AND FOR A NINTH CAUSE OF ACTION
### (Copyright Infringement, 17 U.S.C. § 501)
### (Against Anand, The Homeless Penthouse Entities, Leong and The Penthouse Theory Entities)

178. Plaintiffs repeat and reallege all of the foregoing allegations as if fully set

forth herein.

179. Plaintiffs are the exclusive owners of Plaintiffs' Registered Copyrights,

which are in full force and effect.

180. Defendants have used Plaintiffs' Registered Copyrights in commerce as a

result of Defendants' unauthorized use of Plaintiffs' Registered Copyrights in connection with

Defendants' reproduction, copying and preparation of derivative works of Plaintiffs' Registered

Copyrights and advertisement, promotion, display, distribution, offering for sale and sale of

Defendants' products through e-mail and the Internet.

181. Defendants have used Plaintiffs' Registered Copyrights with full knowledge that they are Plaintiffs' exclusive property in connection with Defendants' advertisement, promotion, distribution, offering for sale and sale of Defendants' goods bearing infringements and/or counterfeits of Plaintiffs' Registered Copyrights.

182. Without seeking or obtaining Plaintiffs' authorization, Defendants reproduced, copied and prepared derivative works of Plaintiffs' Registered Copyrights and advertised, promoted, displayed, distributed, offered for sale and sold, through e-mail and the Internet, goods bearing infringements and/or counterfeits of Plaintiffs' Registered Copyrights.

183. Defendants' activities create the false and misleading impression that Defendants are sanctioned, assigned or authorized by Plaintiffs to use Plaintiffs' Registered Copyrights to advertise, promote, distribute, offer for sale or sell products bearing Plaintiffs' Registered Copyrights.

184. Defendants have engaged and continue to engage in the foregoing activity with the intent to confuse and deceive the public into believing that Defendants and Defendants' infringing and/or counterfeit products are authorized by, approved by or associated with Plaintiffs.

185. Plaintiffs have not consented to Defendants' use of Plaintiffs' Registered Copyrights, which causes confusion in the minds of the public and falsely creates the impression that the goods advertised, promoted, distributed, offered for sale and sold by Defendants are authorized by, approved by or associated with Plaintiffs.

186. Defendants' unauthorized use of Plaintiffs' Registered Copyrights results in Defendants unfairly benefiting from Plaintiffs' reputation and Plaintiffs' promotion of their

items for sale to the substantial and irreparable injury of Plaintiffs, Plaintiffs' Registered Copyrights and the public.

187.    Defendants' acts constitute willful copyright infringement in violation of 17 U.S.C. § 501(a).

188.    Plaintiffs have no adequate remedy at law and will continue to be irreparably, directly and proximately damaged by Defendants' persistent unlawful conduct unless Defendants are enjoined by this Court.

189.    By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) Statutory damages in the amount of up to $150,000.00 for each copyright infringed pursuant to 17 U.S.C. § 504(c)(1)-(2) or, at Plaintiffs' election, an amount representing Plaintiffs' actual damages and any additional profits made by Defendants pursuant to 17 U.S.C. § 504(a)-(b); and (b) Costs and attorneys' fees pursuant to 17 U.S.C. § 505.

190.    Plaintiffs are further entitled to punitive damages in a sum not less than $10,000,000.00 as Defendants' willful, wanton conduct evidenced a high degree of moral culpability and was directed at the public.

### AS AND FOR A TENTH CAUSE OF ACTION
#### (Contributory and Vicarious Copyright Infringement)
#### (Against Kang)

191.    Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

192.    Upon information and belief, Kang has actual knowledge and/or reason to know that Anand and the Homeless Penthouse Entities used Plaintiffs' Registered Copyrights in commerce as a result of Anand's and the Homeless Penthouse Entities' unauthorized use of Plaintiffs' Registered Copyrights in connection with Anand's and the Homeless Penthouse

Entities' reproduction, copying and preparation of derivative works of Plaintiffs' Registered Copyrights and advertisement, promotion, display, distribution, offering for sale and sale of Defendants' products through e-mail and the Internet.

193. Upon information and belief, with full knowledge of Kang and/or reason to know, Anand and the Homeless Penthouse Entities used Plaintiffs' Registered Copyrights with full knowledge that they are Plaintiffs' exclusive property in connection with Anand's and the Homeless Penthouse Entities' reproduction, copying and preparation of derivative works of Plaintiffs' Registered Copyrights and advertisement, promotion, display, distribution, offering for sale and sale of Defendants' goods bearing infringements and/or counterfeits of Plaintiffs' Registered Copyrights.

194. Upon information and belief, with full knowledge of Kang and/or reason to know, Anand's and the Homeless Penthouse Entities' activities create the false and misleading impression that Anand and the Homeless Penthouse Entities are sanctioned, assigned or authorized by Plaintiffs to use Plaintiffs' Registered Copyrights to advertise, promote, distribute, offer for sale or sell products bearing Plaintiffs' Registered Copyrights.

195. Upon information and belief, with full knowledge of Kang and/or reason to know, Anand and the Homeless Penthouse Entities have engaged and continue to engage in the foregoing activity with the intent to confuse and deceive the public into believing that Anand's and the Homeless Penthouse Entities' infringing and/or counterfeit products are authorized by, approved by or associated with Plaintiffs.

196. Upon information and belief, with full knowledge of Kang and/or reason to know, Plaintiffs have not consented to Anand's and the Homeless Penthouse Entities' use of Plaintiffs' Registered Copyrights, which causes confusion in the minds of the public and falsely

creates the impression that the goods advertised, promoted, distributed, offered for sale and sold by Anand and the Homeless Penthouse Entities are authorized by, approved by or associated with Plaintiffs.

197. Upon information and belief, with full knowledge of Kang and/or reason to know, Anand's and the Homeless Penthouse Entities' unauthorized use of Plaintiffs' Registered Copyrights results in Anand and the Homeless Penthouse Entities unfairly benefiting from Plaintiffs' reputation and Plaintiffs' promotion of their items for sale to the substantial and irreparable injury of Plaintiffs, Plaintiffs' Registered Copyrights and the public.

198. Upon information and belief, with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, Kang has materially contributed to such counterfeiting and illegal activities by, inter alia, providing Anand and the Homeless Penthouse Entities with a safe haven—a base of operations to serve as Homeless Penthouse's actual place of business, including, inter alia, in Newport News, Virginia.

199. Upon information and belief, with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, Kang continues to supply its services to Anand and the Homeless Penthouse Entities.

200. Upon information and belief, with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, Kang has taken no remedial steps to prevent Anand's and the Homeless Penthouse Entities' illegal, counterfeiting activities.

201. Upon information and belief. Kang's willful inducement of and/or aiding and abetting in Anand's and the Homeless Penthouse Entities' illegal, counterfeiting activities—

with full knowledge and/or reason to know of their illegality—render Kang contributorily liable for willful copyright infringement.

202.     Upon information and belief, Kang's substantial control over Anand's and the Homeless Penthouse Entities' counterfeiting and illegal activities by, inter alia, providing Anand and the Homeless Penthouse Entities with a safe haven—a base of operations to serve as Homeless Penthouse's actual place of business, including, inter alia, in Newport News, Virginia—and Kang knowingly deriving a financial benefit from the sale of counterfeit, infringing items by Anand and the Homeless Penthouse Entities, render Kang vicariously liable for willful copyright infringement.

203.     Plaintiffs have no adequate remedy at law and will continue to be irreparably, directly and proximately damaged by Kang's persistent unlawful conduct unless Kang is enjoined by this Court.

204.     By reason of the foregoing, Kang is liable to Plaintiffs for:  (a) Statutory damages in the amount of up to $150,000.00 for each copyright infringed pursuant to 17 U.S.C. § 504(c)(1)-(2) or, at Plaintiffs' election, an amount representing Plaintiffs' actual damages and any additional profits made by Kang pursuant to 17 U.S.C. § 504(a)-(b); and (b) Costs and attorneys' fees pursuant to 17 U.S.C. § 505.

205.     Plaintiffs are further entitled to punitive damages in a sum not less than $10,000,000.00 as Kang's willful, wanton conduct evidenced a high degree of moral culpability and was directed at the public.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### (Contributory and Vicarious Copyright Infringement)
### (Against OSell)

206.    Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

207.    Upon information and belief, OSell has actual knowledge and/or reason to know that Anand and the Homeless Penthouse Entities used Plaintiffs' Registered Copyrights in commerce as a result of Anand's and the Homeless Penthouse Entities' unauthorized use of Plaintiffs' Registered Copyrights in connection with Anand's and the Homeless Penthouse Entities' reproduction, copying and preparation of derivative works of Plaintiffs' Registered Copyrights and advertisement, promotion, display, distribution, offering for sale and sale of Defendants' products through e-mail and the Internet.

208.    Upon information and belief, with full knowledge of OSell and/or reason to know, Anand and the Homeless Penthouse Entities used Plaintiffs' Registered Copyrights with full knowledge that they are Plaintiffs' exclusive property in connection with Anand's and the Homeless Penthouse Entities' reproduction, copying and preparation of derivative works of Plaintiffs' Registered Copyrights and advertisement, promotion, display, distribution, offering for sale and sale of Defendants' goods bearing infringements and/or counterfeits of Plaintiffs' Registered Copyrights.

209.    Upon information and belief, with full knowledge of OSell and/or reason to know, Anand's and the Homeless Penthouse Entities' activities create the false and misleading impression that Anand and the Homeless Penthouse Entities are sanctioned, assigned or authorized by Plaintiffs to use Plaintiffs' Registered Copyrights to advertise, promote, distribute, offer for sale or sell products bearing Plaintiffs' Registered Copyrights.

210. Upon information and belief, with full knowledge of OSell and/or reason to know, Anand and the Homeless Penthouse Entities have engaged and continue to engage in the foregoing activity with the intent to confuse and deceive the public into believing that Anand's and the Homeless Penthouse Entities' infringing and/or counterfeit products are authorized by, approved by or associated with Plaintiffs.

211. Upon information and belief, with full knowledge of OSell and/or reason to know, Plaintiffs have not consented to Anand's and the Homeless Penthouse Entities' use of Plaintiffs' Registered Copyrights, which causes confusion in the minds of the public and falsely creates the impression that the goods advertised, promoted, distributed, offered for sale and sold by Anand and the Homeless Penthouse Entities are authorized by, approved by or associated with Plaintiffs.

212. Upon information and belief, with full knowledge of OSell and/or reason to know, Anand's and the Homeless Penthouse Entities' unauthorized use of Plaintiffs' Registered Copyrights results in Anand and the Homeless Penthouse Entities unfairly benefiting from Plaintiffs' reputation and Plaintiffs' promotion of their items for sale to the substantial and irreparable injury of Plaintiffs, Plaintiffs' Registered Copyrights and the public.

213. Upon information and belief, with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, OSell has materially contributed to such counterfeiting and illegal activities by, inter alia, providing Anand and the Homeless Penthouse Entities with a safe haven and means of exporting the counterfeiting, infringing items to New York and other jurisdictions worldwide with impunity.

214. Upon information and belief, with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, OSell continues to supply its services to Anand and the Homeless Penthouse Entities.

215. Upon information and belief, with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities, OSell has taken no remedial steps to prevent the illegal exporting of the counterfeiting, infringing items to New York and other jurisdictions worldwide.

216. On October 29, 2021, Plaintiffs' counsel demanded that OSell cease its aiding and abetting of Anand's and the Homeless Penthouse Entities' counterfeiting, illegal activities. OSell failed to respond to Plaintiffs' counsel.

217. Upon information and belief, OSell's willful inducement of and/or aiding and abetting in the export of counterfeiting, infringing items to New York and other jurisdictions worldwide—with full knowledge and/or reason to know of the counterfeiting and illegal activities of Anand and the Homeless Penthouse Entities—render OSell contributorily liable for willful copyright infringement.

218. Upon information and belief, OSell's substantial control over the counterfeit, infringing items sold by Anand and the Homeless Penthouse Entities by, inter alia, arranging for the export of such items to New York and other jurisdictions worldwide, and OSell knowingly deriving a financial benefit from the sale of counterfeit, infringing items by Anand and the Homeless Penthouse Entities, render OSell vicariously liable for willful copyright infringement.

219. Plaintiffs have no adequate remedy at law and will continue to be irreparably, directly and proximately damaged by OSell's persistent unlawful conduct unless OSell is enjoined by this Court.

220. By reason of the foregoing, OSell is liable to Plaintiffs for: (a) Statutory damages in the amount of up to $150,000.00 for each copyright infringed pursuant to 17 U.S.C. § 504(c)(1)-(2) or, at Plaintiffs' election, an amount representing Plaintiffs' actual damages and any additional profits made by OSell pursuant to 17 U.S.C. § 504(a)-(b); and (b) Costs and attorneys' fees pursuant to 17 U.S.C. § 505.

221. Plaintiffs are further entitled to punitive damages in a sum not less than $10,000,000.00 as OSell's willful, wanton conduct evidenced a high degree of moral culpability and was directed at the public.

## RESERVATION OF RIGHTS

This Complaint is without any prejudice whatsoever and Plaintiffs reserve all of their rights to amend this Complaint as discovery in this action progresses.

## JURY DEMAND

Plaintiffs demand a jury for all non-equitable claims stated herein.

**WHEREFORE**, Plaintiffs respectfully request that the Court order the following relief:

I. That the Court enter an injunction ordering that Defendants, their agents, servants, employees and all other persons in privity or acting in concert with Defendants be enjoined and restrained from:

    a. Using any reproduction, counterfeit, copy or colorable imitation of Plaintiffs' Registered Copyrights and/or Trademarks to identify any goods not expressly authorized by Plaintiffs;

    b. Engaging in any course of conduct likely to cause confusion, deception or mistake, to injure Plaintiffs' business reputation or to weaken the distinctive

quality of Plaintiffs' Registered Copyrights and/or Trademarks or Plaintiffs' name, reputation or goodwill;

c. Using a false description or representation, including words or other symbols, tending to falsely describe or represent Defendants' unauthorized goods as being those of Plaintiffs or sponsored by or associated with Plaintiffs and from offering such goods in commerce;

d. Further infringing or diluting Plaintiffs' Registered Copyrights and/or Trademarks by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise disposing of any products not authorized by Plaintiffs that bear any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiffs' Registered Copyrights and/or Trademarks;

e. Using any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiffs' Registered Copyrights and/or Trademarks in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Plaintiffs, or to any items sold, manufactured, sponsored or approved by, or connected with, Plaintiffs;

f. Performing any act or making any statement or representation whatsoever, or using any false designation of origin or false description, that can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, sold or offered for sale by Defendants are in any way associated or connected with Plaintiffs, or are provided, sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs;

g. Engaging in any conduct constituting an infringement of any of Plaintiffs' Registered Copyrights and/or Trademarks, of Plaintiffs' rights in, or to use or to exploit, said copyrights and trademarks, or constituting any weakening of Plaintiffs' name, reputation and goodwill;

h. Using or continuing to use Plaintiffs' Registered Copyrights and/or Trademarks and/or trade names in any variation thereof on the Internet (either in the text of a website, as a domain name or as a keyword, search word, metatag or any part of the description of the site in any submission for

registration of any Internet site with a search engine or index) in connection with any goods not directly authorized by Plaintiffs;

i. Operating or engaging in the business of selling any website or other enterprise that offers for sale any counterfeit and/or infringing products falsely bearing Plaintiffs' Registered Copyrights and/or Trademarks;

j. Acquiring, registering, maintaining or controlling any domain names that include Plaintiffs' Registered Copyrights and/or Trademarks or any marks substantially indistinguishable therefrom or confusingly similar thereto, activating any website under said domain names or selling, transferring, conveying or assigning any such domain names;

k. Using social media or any e-mail addresses to offer for sale any non-genuine products bearing counterfeits of Plaintiffs' Registered Copyrights and/or Trademarks;

l. Having any connection whatsoever with any websites that offer for sale any merchandise bearing counterfeits of Plaintiffs' Registered Copyrights and/or Trademarks;

m. Secreting, destroying, altering, removing or otherwise dealing with the unauthorized products or any books or records containing any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting or displaying of unauthorized products counterfeiting and/or infringing on Plaintiffs' Registered Copyrights and/or Trademarks; and

n. Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (m);

II. That Defendants, within ten days of judgment, take all necessary steps to remove from all websites owned, operated and/or controlled by Defendants all text or other media advertising and/or offering for sale any merchandise bearing Plaintiffs' Registered Copyrights and/or Trademarks, or ones substantially indistinguishable therefrom or confusingly similar thereto;

III.     That Defendants, within thirty days of judgment, file and serve Plaintiffs with a sworn statement, pursuant to 15 U.S.C. § 1116(a), setting forth in detail the manner and form in which they have complied with this injunction;

IV.     That Defendants be required to deliver to Plaintiffs for destruction all unauthorized, counterfeit and/or infringing materials bearing Plaintiffs' Registered Copyrights and/or Trademarks, or ones substantially indistinguishable therefrom or confusingly similar thereto, pursuant to 15 U.S.C. § 1118;

V.     That Plaintiffs be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $2,000,000.00 for each trademark that Defendants willfully counterfeited and infringed; alternatively, ordering Defendants to pay to Plaintiffs such damages that Plaintiffs have sustained as a consequence of Defendants' counterfeiting and infringement of Plaintiffs' Registered Trademarks and to account for all gains, profits and advantages derived by Defendants from the sale of Defendants' infringing goods bearing Plaintiffs' Registered Trademarks, and that the award to Plaintiffs be trebled pursuant to 15 U.S.C. § 1117;

VI.     That Plaintiffs be awarded statutory damages in the amount of up to $150,000.00 for each copyright willfully infringed pursuant to 17 U.S.C. § 504(c)(1)-(2) or, at Plaintiffs' election, an amount representing Plaintiffs' actual damages and any additional profits made by Defendants pursuant to 17 U.S.C. § 504(a)-(b);

VII.     That Plaintiffs recover the costs of this action, together with reasonable attorneys' fees and pre-judgment interest, pursuant to 15 U.S.C. § 1117 and 17 U.S.C. § 505;

VIII.     That Plaintiffs be awarded punitive damages in a sum no less than $10,000,000.00, the precise amount to be determined at trial;

IX.     That this Court retain jurisdiction of this action for the purpose of enabling

Plaintiffs to apply to this Court at any time for such further orders and interpretation or execution

of any Order entered in this action, for the modification of any such Order, for the enforcement

or compliance therewith and/or for the punishment of any violations thereof; and

X.     Awarding to Plaintiffs such other and further relief as this Court may deem just

and proper, together with the costs and disbursements that Plaintiffs have incurred in connection

with this action.

Dated: New York, New York
        November 18, 2021

<div style="margin-left: 3em;">

AARON RICHARD GOLUB, ESQUIRE, P.C.
Attorney for Plaintiff


*Aaron Richard Golub* (ARG)
_____
Aaron Richard Golub (ARG 6056)
35 East 64th Street- Suite 4A
New York, New York 10065
Ph: (212) 838-4811

</div>