```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
BRIAN DONNELLY, a/k/a KAWS, and KAWS,
INC.,

                        Plaintiffs,                21-cv-9562 (PKC)

        -against-                                  OPINION
                                                   AND ORDER

JONATHAN ANAND, d/b/a Homeless
Penthouse, Penthouse Theory, Hideout.NYC,
Incognito and Young Neon, DAVID KANG,
DYLAN JOVAN LEONG YI ZHI, THE
PENTHOUSE THEORY, THE PENTHOUSE
COLLECTIVE and OSELL DINODIRECT
CHINA LIMITED,

                        Defendants.
-----------------------------------------------------------x
```

CASTEL, U.S.D.J.

Plaintiff Brian Donnelly is a well-known artist and designer who works under the professional name KAWS. Donnelly and plaintiff KAWS, Inc. assert that defendants have sold counterfeit versions of original KAWS works. Plaintiffs bring claims of counterfeiting, trademark infringement and trademark dilution under the Lanham Act, 15 U.S.C. § 1114, et seq., and infringement claims under the Copyright Act, 17 U.S.C. § 501. (Docket # 1.)

Defendants Dylan Jovan Leong Yi Zhi ("Leong"), The Penthouse Theory and The Penthouse Collective (the "Singapore Defendants") move to dismiss the Complaint, citing defective service of process, the absence of personal jurisdiction and forum non conveniens. Rules 12(b)(2), 12(b)(3) and 12(b)(5), Fed. R. Civ. P. The Singapore Defendants principally urge that they are Singapore citizens not subject to personal jurisdiction under New York's long-

arm statute, CPLR 302(a), and that the exercise of personal jurisdiction over them would not be consistent with the due process guaranteed by the Constitution. (Docket # 41.)

For the reasons that will be explained, the motions of the Singapore Defendants will be denied.

BACKGROUND.

Plaintiff Donnelly is an artist and designer who creates sculptures, paintings and collectible vinyl figurines. (Compl't ¶ 1.) His works have been displayed in major museums and he has produced commercial designs for brands that include Nike, Supreme and Uniqlo. (Id.) The Complaint asserts that Donnelly's work is widely recognized, specifically including a recurring "Companion" figure, which is described as having "a skull and crossbones for a head and 'XX' eyes wearing pants or taking the reappropriated form of a cartoon character or pop culture icon." (Id. ¶ 21.) Donnelly also has created a popular "BFF" figure, described as "a Muppet-like figure with KAWS' trademarked 'XX's' for eyes, gloved hands, oversized ears and furry exterior." (Id. ¶ 23.) The Complaint annexes copyright and trademark registrations issued to plaintiffs. (Id. Exs. 1-3.)

Some background on defendant Jonathan Anand is useful for understanding the activities of the Singapore Defendants. Anand is alleged to have a "main office" in New York, has filed an Answer, and does not join in the Singapore Defendants' motions. (Compl't ¶ 3; Docket # 84.) The Complaint asserts that Anand does business through "assumed names" and "unregistered entit[ies]," including Young Neon, Homeless Penthouse, Penthouse Theory, Hideout.NYC and Incognito. (Compl't ¶¶ 3-8.) At the time the Complaint was filed, the websites for these entities allegedly offered for sale numerous counterfeit items that infringe

plaintiffs' trademarks and copyrights, including 90 infringing items on the Homeless Penthouse website and 25 infringing items on the Penthouse Theory website. (Compl't ¶¶ 46, 53.)

According to the Complaint, Leong is a former intern of Anand and Penthouse Theory who created a separate counterfeiting operation run out of Singapore as a "competitor" to Anand. (Compl't ¶ 66.) There is no dispute that Leong is a citizen of Singapore, that The Penthouse Theory and The Penthouse Collective are both organized under the laws of Singapore, and that no Singapore Defendant maintains a physical presence in the United States. (Compl't ¶¶ 10-11, 66; Leong Dec. ¶¶ 1-2.)

On or about September 28, 2021, The Penthouse Theory posted an Instagram story stating that the Anand-operated Penthouse Theory is a "scam syndicate" and "scam website" that "scammed many clients without shipping their orders." (Compl't ¶¶ 71-72.) The Penthouse Theory stated that it "made the hard decision to rebrand to stay away from these scammers" and would thereafter be known as "The Penthouse Collective," operating from the website www.thepenthousecollective.com. (Compl't ¶ 74.) As of the Complaint's filing, websites for The Penthouse Theory and The Penthouse Collective were both in operation. (Compl't ¶ 75.) Leong's Declaration states that The Penthouse Collective website was operational only between October 21, 2021 and October 28, 2021. (Leong Dec. ¶ 13.)

As of October 20, 2021, The Penthouse Theory allegedly offered for sale 45 items that infringed plaintiffs' copyrights and trademarks, including items appearing on a page titled "4FT KAWS COLLECTION. (Compl't ¶¶ 67-68 & Ex. 8.) The Complaint alleges that on September 10, 2021, plaintiffs' counsel ordered an item from The Penthouse Theory website called "ORIGINALFAKE X GALLERY 1950 CERAMIC ASHTRAY," which arrived at counsel's Manhattan office on October 18, 2021. (Compl't ¶ 17.) According to the Complaint,

the item was falsely described as "KAWS CERAMIC ASHTRAY" and bore plaintiffs' registered copyrights and trademarks. (Compl't ¶ 17.) A Frequently Asked Questions page on The Penthouse Theory website included the following assertion:

> ARE YOUR ITEMS REWORKED?
>
> Our items are custom hand-reworked reproductions due to the low prices we are able to provide.

(Compl't ¶ 70.) In his declaration, Leong states that he has earned $1,830.95 in "Sales Profit" from sales made to New York customers. (Leong ¶ 21.)

The Singapore Defendants urge that the claims against them should be dismissed pursuant to Rule 12(b)(5), arguing that service of process was defective based on a date discrepancy in an affidavit of the Singapore notary public. In the event that service was properly effectuated, they urge that they are not subject to personal jurisdiction in New York, and that the Complaint should be dismissed pursuant to Rule 12(b)(2). Lastly, they urge that the Court should exercise its discretion to dismiss the claims against them on forum non conveniens grounds.

THE SINGAPORE DEFENDANTS' MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS WILL BE DENIED.

A defendant may move to dismiss a complaint under Rule 12(b)(5) for insufficient service of process. "When a defendant challenges service of process, the burden of proof is on the plaintiff to show the adequacy of service." Kelly Toys Holdings, LLC. v. Top Dep't Store, 2022 WL 3701216, at *5 (S.D.N.Y. Aug. 26, 2022) (Engelmayer, J.) (quotation marks omitted). A court reviewing a Rule 12(b)(5) motion "must look" to matters outside of the complaint and should scrutinize whether the plaintiff has satisfied the service-of-process requirements of Rule 4, Fed. R. Civ. P. Kelly Toys, 2022 WL 3701216, at *5. "'Plaintiff must

meet this burden by making a prima facie case of proper service 'through specific factual allegations and any supporting materials.'" Id. (quoting Sikhs for Justice v. Nath, 850 F. Supp. 2d 435, 440 (S.D.N.Y. 2012) (Sweet, J.)). "Technical errors in a summons generally do not render service invalid. However, where the error actually results in prejudice to the defendant or demonstrates a flagrant disregard of Rule 4, service will be considered invalid and amendment need not be allowed." DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 65 (S.D.N.Y. 2010) (Leisure, J.) (citations omitted); accord Jiaxing Leadown Fashion Co. v. Lynn Brands LLC, 2021 WL 5180969, at *2 (S.D.N.Y. Nov. 8, 2021) (Marrero, J.).

Rule 4(f)(2)(C)(i) provides that, "unless prohibited by the foreign country's law," service in a foreign country can be effectuated by "delivering a copy of the summons and of the complaint to the individual personally . . . ." In a declaration, Leong states that service for all three Singapore Defendants was made upon him personally at his residential address. (Leong Dec. ¶ 26.) The affidavit of service, which was executed by process server Brian Jeremiah Sta Maria, states that service was personally made upon Leong at his home address in Shangri La Park, Singapore at 4:05 p.m. on December 16, 2021. (Docket # 26 ¶ 10.) Sta Maria states that on the same date, service also was made upon The Penthouse Theory and The Penthouse Collective at their corporate addresses. (Id. ¶ 13.)

In support of the motion, the Singapore Defendants point to a discrepancy in the date in which the affidavit of service was affirmed before a notary public. The affidavit of service states that it was affirmed before a Singapore notary public, Lim Hin Chye, on January 12, 2022. (Id. at p. 6.) Chye's signature appears in blue ink and the date appears to be written in the same blue ink. (Id.) An attached "Notarial Certificate" from Chye, which is typed and written in English, states that Chye "was present on the 12th day of December 2021 . . . ." (Id. at

p. 7; emphasis added.) This certificate is also signed by Chye, apparently in the same blue ink used in the affidavit of service. (Id.) The Notarial Certificate attaches an Apostille and QR Code attesting to Chye's identity and credentials, which is dated January 13, 2022 and signed by a deputy director of the Singapore Academy of Law. (Id. at 8.)

The Singapore Defendants urge that the discrepancy between the January 12, 2022 date in the affidavit of service and the December 12, 2021 date in the Notarial Certificate amounts to "an obvious defect based on an anomaly of the dates . . . ." (Def. Mem. at 4.) They therefore urge that all claims against them should be dismissed for insufficient service.

In response, plaintiffs assert that the December 12 date is an "obvious" and "inconsequential" "typographical error." (Opp. Mem. at 23-24.) Plaintiffs have submitted supplemental affidavits from Sta Maria and Chye. (Zwerin Dec. Exs. 4, 5.) Sta Maria states that the reference to December 12 was "a clerical error" and that he affirmed the contents of the affidavit of service before Chye on January 12, 2022. (Sta Maria Supp. Aff. ¶¶ 3-4.) Chye similarly states: "I wish to state for the record that I was present and had witnessed Brian deposing to the Affidavit of Service on the 12th day of January 2022 at my office . . . ." (Chye Aff. ¶ 3.) Chye states that the December 12 date in the Notarial Certificate "is a typographical error . . . ." (Id. ¶ 5.)

The Singapore Defendants do not urge that the date discrepancy was a product of fraud or deceit. They do not assert that they were prejudiced by the manner of service or that the method of service failed to satisfy Rule 4(f)(2)(C)(i).[1] In this circumstance, the date discrepancy

---

[1] In their Reply memorandum, the Singapore Defendants assert for the first time that service also was deficient as to The Penthouse Theory and The Penthouse Collective because they were served only through Leong at his home address and not at their corporate addresses. (Reply at 9-10, citing Singapore Rules of Court Order 7, rule 3(a)(ii) (service may be effected "by leaving the document at or posting it to – in the case of an entity, its registered or principal office . . . .").) But Sta Maria's affidavit of service states that in addition to serving process at Leong's

is the type of technical error that does not render service invalid. See DeLuca, 695 F. Supp. 2d at 65. In addition, the declarations of Sta Maria and Chye comfortably make out a prima facie case that Sta Maria affirmed the affidavit of service before Chye on January 12, 2022, and that the reference to December 12, 2021 in the Notarial Certificate was a clerical error. These declarations are consistent with January 13, 2022 signature date reflected on the Apostille and the January 12, 2022 signature date in the affidavit of service.

The Singapore Defendants' motion to dismiss pursuant to Rule 12(b)(5) will therefore be denied.

THE RECORD MAKES OUT A PRIMA FACIE CASE FOR EXERCISING PERSONAL JURISDICTION OVER THE SINGAPORE DEFENDANTS UNDER CPLR 302(a)(1).

    A.  Rule 12(b)(2) Standard.

The Singapore Defendants urge that they are not subject to personal jurisdiction under New York's long-arm statute, CPLR 302(a), and that the exercise of personal jurisdiction would be contrary to the Constitution's guarantee of due process. Because the Complaint and Leong's submissions make out a prima face case for exercising personal jurisdiction under CPLR 302(a)(1) consistent with due process, the Singapore Defendants' motion will be denied.

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." Penguin Grp. (USA) Inc. v. American. Buddha, 609 F.3d 30, 34 (2d Cir. 2011). "'In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists.'" Id. (quoting

---

home address, he "proceeded on the same day to also leave copies of the Process documents at the following addresses" of the two corporate defendants, and lists two Singapore addresses, including 183 Jalan Pelikat #01-46. (Aff't of Service ¶ 13.) The Singapore Defendants' Reply urges that service should have been made on the corporate defendants at that same 183 Jalan Pelikat address, apparently unaware of the representation contained in the affidavit of service. (Reply at 10.) The affidavit of service makes out a prima facie case that the two corporate defendants were separately served at their corporate address.

Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006)).  This showing includes factual allegations that, if credited, establish jurisdiction over the defendant.  Id.  The showing also can be made through a plaintiff's "own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."  S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010) (quotation marks omitted).  However, the Court should "not draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation."  In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (quotation marks omitted).  A Court has "considerable procedural leeway" on a Rule 12(b)(2) motion and may decide it on the basis of affidavits alone, permit discovery in aid of the motion, or conduct an evidentiary hearing.  Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013).

If the Court concludes that there is a basis to exercise personal jurisdiction, then, as a second essential step, it must further decide whether that exercise of jurisdiction is consistent with due process of law.  Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010).

> B. Plaintiffs Have Made Out a Prima Facie Case to Exercise Personal Jurisdiction over The Penthouse Theory and Leong under CPLR 302(a)(1).

There is no dispute that Leong is a citizen of Singapore and that The Penthouse Theory and The Penthouse Collective were incorporated in Singapore.  (Leong Dec. ¶¶ 1-2; Compl't ¶¶ 10-11.)  In support of their motion, the Singapore Defendants principally emphasize their physical presence in Singapore and the assertion that The Penthouse Theory's sales in New York made up only 4% of its total sales profit.  Leong asserts that he has "never generated substantial revenue in New York," that his businesses' "target audience is predominantly aimed

at the Asian market," and that "only occasional visitors from outside Asia have ventured into my two websites." (Leong Dec. ¶¶ 10, 15-16.)

CPLR 302(a)(1) provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state . . . ." "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 168 (2d Cir. 2015) (quotation marks omitted). CPLR 302(a)(1) "is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988). "Section 302(a) also confers jurisdiction over individual corporate officers who supervise and control an infringing activity." Chloé, 616 F.3d at 164 (collecting cases).

The facts set forth in the Complaint and Leong's declaration describe contacts similar to those in Chloé. There, the Second Circuit concluded at the summary judgment stage that an individual defendant's "single act of shipping an item into New York combined with the substantial business activity of [his LLC employer] . . . involving New York" provided for the exercise of long-arm jurisdiction under CPLR 302(a)(1). Id. at 161-62, 165-67. In Chloé, defendant Queen Bee allegedly shipped counterfeit goods from California and Alabama to New York. Id. at 162. Queen Bee maintained a website that offered to ship goods anywhere in the continental United States and accepted payments online. Id. Through defendants' website, an assistant to plaintiff's counsel successfully ordered the shipment of a counterfeit handbag to the

Bronx.  Id.  Plaintiff brought claims under the Lanham Act, New York's unfair competition statute and New York common law.  Id. at 161.

The Second Circuit concluded that an employee's personal participation in the shipment to New York of a single counterfeit handbag was sufficient to subject him to New York jurisdiction under CPLR 302(a)(1) in light of the employer's broader activities in New York.  Id. at 165.  Queen Bee operated a website that offered to sell handbags to New York consumers, permitted New York consumers to purchase those bags, and facilitated the shipment of those bags into New York from California.  Id. at 166.  Discovery reflected that Queen Bee had made 52 separate transactions with New York consumers.  Id.

The Second Circuit characterized these activities as "extensive business contacts with New York customers."  Id. at 167.  It concluded that even if Queen Bee's sales to New York included non-infringing good and brands other than plaintiff Chloé's, those sales still supported a nexus between Queen Bee's New York contacts and the plaintiff's infringement claims, because the sale of infringing products was part of Queen Bee's "larger business plan purposefully directed at New York consumers."  Id.

Here, the Complaint and the Leong Declaration make out a prima facie case that The Penthouse Theory has transacted business in New York.  As noted, plaintiffs' counsel directly ordered from The Penthouse Theory an allegedly counterfeit, infringing item, which was delivered to its Manhattan office on October 18, 2021.  (Compl't ¶ 17.)  Even a single transaction may be sufficient to invoke jurisdiction.  Kreutter, 71 N.Y.2d at 467.  "That is so even when the sale is made to a representative of the plaintiff's law firm."  Spin Master Ltd. v. 158, 463 F. Supp. 3d 348, 363 (S.D.N.Y. 2020) (Liman, J.) (citing Chloé, 616 F.3d at 162-63, 170).  But Leong's declaration also describes the Singapore Defendants' more extensive relationship to

New York, including $1,830.95 in "Sales Profit" from sales to customers located in the State of New York. (Leong Dec. ¶ 21.) Further, The Penthouse Theory maintained an interactive commercial website that accepted orders and payments from New York customers, allowed New York customers to submit billing and shipping information and arranged for the shipment of good. A defendant's use and control of an interactive commercial website that facilitates transactions with New York customers further supports a showing that The Penthouse Theory and Leong transacted business in New York. See, e.g., Grand v. Schwarz, 2016 WL 2733133, at *3 (S.D.N.Y. May 10, 2016) (Wood, J.) (collecting cases).

The record also makes out a prima facie case for a nexus between The Penthouse Theory's transactions in New York and plaintiffs' causes of action. The Complaint annexes at Exhibit 8 examples of allegedly counterfeit KAWS goods that were available for purchase on The Penthouse Theory site. As quoted in the Complaint, the site's FAQ page states that it sells "hand-reworked reproductions" at "low prices." (Compl't ¶ 70.) In other words, The Penthouse Theory made "reproductions" available for purchase by New York buyers, accepted payment for these items by New York buyers, and then shipped the items to New York. The record makes out a prima facie case that The Penthouse Theory's transactions in New York involve predominantly – and perhaps entirely – the sales of counterfeit and infringing items. This is sufficient to show a nexus between The Penthouse Theory's transactions in New York and plaintiffs' causes of action. See, e.g., Chloé, 616 F.3d at 167; Spin Master, 463 F. Supp. 3d at 364 ("[T]here is no question that the business transaction (i.e., the offer and/or sale of the Counterfeit Products) in New York has a substantial relationship with the claim asserted in this action against [defendants] (i.e., [defendants'] offers or sales of products that infringe upon trademarks or contain counterfeited trademarks).").

To the extent that the Singapore Defendants emphasize that their business was principally directed toward an Asian market and that New York has accounted for only 4% of "Sales Profit," the argument is unavailing. Leong's declaration reflects that $1,830.95 in "Sales Profit" was derived from New York. Even if those sales constituted 4% of Leong's profits, they would still reflect "a larger business plan purposefully directed at New York consumers." Chloé, 616 F.3d at 167.

As the owner and operator of The Penthouse Theory, Leong is also subject to personal jurisdiction under CPLR 302(a)(1). Leong states that he "operated," "incorporated" and is "the owner" of The Penthouse Theory, and had the goal "to put in practice what I had learnt in business school to see how far it could take me." (Leong Dec. ¶¶ 1-3, 11, 12.) He also refers to "my sales" made through The Penthouse Theory and The Penthouse Collective. (Id. ¶ 20.) As noted, "Section 302(a) also confers jurisdiction over individual corporate officers who supervise and control an infringing activity." Chloé, 616 F.3d at 164; see also Kreutter, 71 N.Y.2d at 467-72. Leong's declaration describes his ownership and control of The Penthouse Theory sufficient to exercise personal jurisdiction over him. See Chloé, 616 F.3d at 165 (exercising jurisdiction over employee who physically shipped or was responsible for shipping counterfeit handbag).

The Court concludes that plaintiffs have made out a prima face case for the exercise of personal jurisdiction over The Penthouse Theory and Leong under section 302(a)(1).

C. The Exercise of Personal Jurisdiction over The Penthouse Theory and Leong Satisfies Due Process.

Due process allows for the exercise of jurisdiction over a defendant that purposefully avails itself of conducting business activities in the forum state. See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021); J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 877 (2011) ("As a general rule, the exercise of judicial power is not

lawful unless the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'") (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  The contacts must be through the defendant's own choice, and not "random, isolated, or fortuitous."  Ford, 141 S. Ct. at 1025 (quotation marks omitted).  The defendant must deliberately "reach[ ] out beyond" its home by exploiting a market in the forum state or entering into a contractual relationship centered in the forum.  Id.  Due process requires that the plaintiffs' claims "must arise out of or relate to" those voluntary contacts.  Id. (quotation marks omitted).

Based on the Complaint and the Leong Declaration, the exercise of personal jurisdiction over The Penthouse Theory and Leong is consistent with due process.  As explained, The Penthouse Theory and Leong accepted and fulfilled orders submitted by New York customers.  A legitimate business that engages in this type of commerce would rightfully expect to invoke the benefits and protections of New York laws.  These New York contacts also arose by deliberate choice: The Penthouse Theory could have opted not to transact business in New York.  Plaintiffs' counterfeiting and infringement claims arise out of or relate to these voluntary contacts with New York.

A plaintiff must also demonstrate that the exercise of jurisdiction is reasonable and does not offend traditional notions of fair play and substantial justice.  Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty., 480 U.S. 102, 113 (1987).  "A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.  It must also weigh in its determination the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."  Id. (quotation marks omitted).

Again, Chloé's analysis informs the application of these factors. See 616 F.3d at 172-73. As the forum state, New York has a "'manifest interest in providing effective means of redress for its residents,'" and the plaintiffs' interest in obtaining relief favors New York because both plaintiffs are based in New York, as is much of the evidence. Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 483 (1985)). As in Chloé, inconvenience to the Singapore Defendants "cuts both ways since all of [plaintiffs'] witnesses would have to travel to [Singapore] if the case were brought there." 616 F.3d at 173. Considerations of interstate interests and comity are neutral. The Singapore Defendants' "generalized complaints of inconvenience arising from having to defend [themselves] from suit in New York do not add up to a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. at 173. Accordingly, the Court concludes that the exercise jurisdiction over The Penthouse Theory and Leong does not offend traditional notions of fair play and substantial justice.

The Court therefore concludes that the exercise of personal jurisdiction over The Penthouse Theory and Leong satisfies the guarantee of due process.

### D. The Leong Declaration Describes The Penthouse Collective as an Alter Ego of The Penthouse Theory.

As discussed, the Complaint describes the purchase of an infringing product from The Penthouse Theory website that was delivered to New York, and also describes infringing products made available for sale in New York through that same website. It does not allege facts about any New York transactions of The Penthouse Collective. However, because the Complaint and the Leong Declaration describe The Penthouse Collective as an alter ego of The Penthouse Theory and Leong, plaintiffs have made out a prima facie case that The Penthouse Collective is also subject to jurisdiction under CPLR 302(a)(1).

"Personal jurisdiction is an individualized exercise . . . . Plaintiffs must show personal jurisdiction over each defendant against which they seek relief." Spin Master, 463 F. Supp. 3d at 364. "[I]n general, 'alter egos are treated as one entity' for jurisdictional purposes." Transfield ER Cape Ltd. v. Indus. Carriers, Inc., 571 F.3d 221, 224 (2d Cir. 2009) (quoting William Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 142-143 (2d Cir. 1991)). "When determining whether personal jurisdiction exists over an entity alleged to be an alter ego, courts apply a less onerous standard than that necessary to pierce the corporate veil for liability purposes under New York law. Specifically, a plaintiff must establish only that one entity was a shell for the other, i.e., that one entity was subject to the 'complete domination' of the other." Bank of Am. v. Apollo Enter. Sols., LLC, 2010 WL 4323273, at *4 (S.D.N.Y. Nov. 1, 2010) (Cote, J.) (internal citation omitted); see also WAG SPV I, LLC v. Fortune Glob. Shipping & Logistics, Ltd., 2020 WL 1489814, at *6 (S.D.N.Y. Mar. 27, 2020) (to demonstrate alter ego status on liability, "a plaintiff must show that an alter ego was used to perpetrate a fraud or was so dominated and its corporate form so disregarded that the alter ego primarily transacted another entity's business rather than its own corporate business."). "It is also well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process." S. New England Tel. Co., 624 F.3d at 138.

As described in the Complaint, on or about September 28, 2021, The Penthouse Theory posted an Instagram story stating that it would begin operating as The Penthouse Collective in order to distance itself from Penthouse Theory, which it called a "scam website." (Compl't ¶¶ 71-75.) Leong's declaration states: "'The Penthouse Collective' was started to take over the online business of 'The Penthouse Theory', so they are essentially one and the same website." (Leong Dec. ¶ 13; emphasis added.) Leong states that The Penthouse Collective

operated only from October 21, 2021 through October 28, 2021.  (Leong Dec. ¶ 13.)  Leong also states that he was responsible for incorporating both companies and that he has authority over them, and refers to them as "my two websites" and "my businesses."  (Leong Dec. ¶¶ 2-3, 6, 11, 14, 16.)  The portion of Leong's declaration describing the Singapore Defendants' overall sales makes no distinction between The Penthouse Theory and The Penthouse Collective.  (Leong Dec. ¶¶ 20-21.)

For the purposes of determining personal jurisdiction only, the Court concludes that the submissions make out a prima facie case that The Penthouse Collective was an alter ego of Leong and The Penthouse Theory.  The Leong Declaration describes his total domination and control of The Penthouse Collective and forthrightly states that The Penthouse Collective "was started to take over the online business of 'The Penthouse Theory', so they are essentially one and the same website."  (Leong Dec. ¶ 13.)  The Leong Declaration describes The Penthouse Collective as a shell for The Penthouse Theory that was completely dominated by Leong.

Because the Leong Declaration describes The Penthouse Collective as an alter ego of Leong and The Penthouse Theory, the Court concludes that The Penthouse Collective is subject to personal jurisdiction in New York under CPLR 302(a)(1).

THE SINGAPORE DEFENDANTS' MOTION TO DISMISS ON FORUM NON CONVENIENS GROUNDS WILL BE DENIED.

"The doctrine of forum non conveniens is a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim."  Carey v. Bayerische Hypo-Und Vereinsbank AG, 370 F.3d 234, 237 (2d Cir. 2004).  A district court has "broad discretion" to dismiss a case on forum non conveniens grounds.  Iragorri v. United Techs. Corp., 274 F.3d 65, 72 (2d Cir. 2001) (en banc).  The exercise of that discretion is guided by a three-step analysis:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) (citing Irragori, 274 F.3d at 73-74).

On the first factor, "a plaintiff's choice ordinarily deserves substantial deference." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 242 (1981). "[I]t is generally understood that, unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. . . . Usually, the greatest deference is afforded a plaintiff's choice of its home forum, while less deference is afforded a foreign plaintiff's choice of a United States forum." Norex, 416 F.3d at 154 (citations and quotation marks omitted). "[T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens . . . ." Id. (quoting Iragorri, 274 F.3d at 71-72). Relevant factors include "'[1] the convenience of the plaintiff's residence in relation to the chosen forum, [2] the availability of witnesses or evidence to the forum district, [3] the defendant's amenability to suit in the forum district, [4] the availability of appropriate legal assistance, and [5] other reasons relating to convenience or expense.'" Id. at 155 (quoting Iragorri, 274 F.3d at 72).

Here, plaintiffs' choice of forum is afforded substantial deference. The Complaint asserts that plaintiff Donnelly is a "resident" of Brooklyn and that KAWS, Inc. is organized under the laws of New York with an "office" in Brooklyn. (Compl't ¶¶ 1-2.) The Complaint alleges that defendant Anand is a resident of New York, New Jersey and/or Virginia

and that his Homeless Penthouse business claims to have a "main office" in Brooklyn or New York City. (Compl't ¶ 3.) Anand's Penthouse Theory entity has held itself out as being headquartered in Manhattan. (Compl't ¶ 4.) Defendant Kang allegedly "resides" in New York, New Jersey and/or Virginia. (Compl't ¶ 9.) Litigating in this District is convenient and efficient for plaintiffs and defendants Anand and Kang. Witnesses and evidence are likely to be easily obtainable in this District. There is no suggestion that this District affords unfair tactical advantage to any party or that this choice of forum was made with an eye toward harassing or inconveniencing any party. See Norex, 416 F.3d at 155. Accordingly, this Court affords substantial deference to plaintiffs' choice of forum.

    On the second factor, "a movant must demonstrate the availability of an adequate alternative forum." Id. at 157. "If the movant fails to carry this burden, the forum non conveniens motion must be denied regardless of the degree of deference accorded plaintiff's forum choice." Id. "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." Id. (quotation marks omitted). "[A] case cannot be dismissed on grounds of forum non conveniens unless there is presently available to the plaintiff an alternative forum that will permit it to litigate the subject matter of its dispute." Id. at 159.

    The Singapore Defendants urge that the courts of Singapore can provide an adequate alternative forum to adjudicate plaintiffs' claims against them, but they have made no showing in support of this assertion. They state: "Without a doubt, Singapore would be easily satisfied with this requirement since Defendants are all domiciled in Singapore, and there is no law prohibiting the lawsuit to be filed in Singapore." (Def. Mem. at 13.) The Singapore Defendants have made no showing about the willingness of Singapore's courts to entertain

claims such as those brought by plaintiffs, nor have they addressed the willingness of Singapore's courts to exercise jurisdiction or adjudicate claims over defendants Anand and Kang. The Singapore Defendants' limited, conclusory statement about Singapore's adequacy as an alternative forum does not satisfy their burden. See Motown Rec. Co., L.P. v. iMesh.Com, Inc., No. 03 CIV. 7339 (PKC), 2004 WL 503720, at *6 (S.D.N.Y. Mar. 12, 2004) ("Whether Israeli courts have enforced or can enforce U.S. copyrights simply is not addressed and I conclude that defendants have failed in their burden on this point. This effectively ought to end the forum non conveniens inquiry because an alternative has not been shown by the moving party.").

On the third factor, the Singapore Defendants "bear[] the burden of establishing . . . that the balance of private and public interest factors tilts heavily in favor of the alternative forum." Abdullahi v. Pfizer, Inc., 562 F.3d 163, 189 (2d Cir. 2009). Courts look to factors including the relative ease of access to sources of proof, availability of compulsory process to force the attendance of unwilling witnesses, costs of obtaining attendance of willing witnesses, and "all other practical problems" going toward the efficiency and expense of trial. Piper Aircraft, 454 U.S. at 241 n.6. Because the Singapore Defendants have not met the burden of demonstrating that Singapore provides an adequate alternative forum, the Court need not consider this factor. However, even if Singapore were an available forum, issues of expense, efficiency and convenience would weigh in favor of proceeding in this District. On the question of public interests, this District has a local interest in controversies about infringing activities herein and there are no administrative difficulties in proceeding with this action. See id. Public considerations also weigh against the Singapore Defendants' motion.

Accordingly, the Singapore Defendants' motion to dismiss on grounds of forum non conveniens will be denied.

CONCLUSION.

The Singapore Defendants' motion to dismiss is DENIED. (Docket # 41.) The Clerk is directed to terminate the motion.

SO ORDERED.

*P. Kevin Castel*
P. Kevin Castel
United States District Judge

Dated: New York, New York
September 22, 2022