UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X Civil Action No. 1:21-cv-09562-PKC
BRIAN DONNELLY AKA KAWS and
KAWS INC.,

                           Plaintiffs,

-against-

JONATHAN ANAND, both individually and doing
business as HOMELESS PENTHOUSE,
PENTHOUSE THEORY, HIDEOUT.NYC,
INCOGNITO and YOUNG NEON, DAVID KANG,
DYLAN JOVAN LEONG YI ZHI,
THE PENTHOUSE THEORY,
THE PENTHOUSE COLLECTIVE and
OSELL DINODIRECT CHINA LIMITED,

                           Defendants.
-----------------------------------------------------------------------X

**DECLARATION OF PLAINTIFF
BRIAN DONNELLY A/K/A KAWS
IN SUPPORT OF MOTION
FOR DEFAULT JUDGMENT**

BRIAN DONNELLY A/K/A KAWS hereby declares as follows:

1. I am the Plaintiff in this action and also a principal of Plaintiff KAWS Inc. ("KI"), and as such am familiar with the facts and circumstances herein. I submit this Declaration in support of Plaintiffs' motion for a default judgment and a permanent injunction against Defendants Dylan Jovan Leong Yi Zhi ("Leong"), The Penthouse Theory ("TPT"), and The Penthouse Collective ("TPC") (collectively, the "Defaulting Leong Defendants").

2. I respectfully refer the Court to the Complaint (Ex. 1 ¶¶1-2, 10-12, 20-31, 32-39 and 66-75) and the accompanying Declaration of my counsel for some background information about me, my Federal Registered Trademarks and Registered Copyrights (Exs. 2-3). I am a contemporary artist as that term is known in the art world, working in sculptures, paintings and vinyl collectible figurines (or "toys") that I exhibit and distribute internationally. My artworks have been exhibited in major museums and galleries worldwide. My sculptures range in size

from a few inches tall to more than 30 feet tall and I work with an equally wide range of materials, varying from traditional bronze to fiberglass to unusual items like a steel pontoon inflatable raft.

3. I have been creating images and sculptures based on my original characters since I began my career in the early 1990's. Ex. 4 contains some examples of images of my works of art and designs utilizing my registered trademarks and registered copyrights. I use the trademarked pseudonym KAWS (Exs. 2-3) to create and sell my works of art and designs. My KAWS products have acquired national and worldwide recognition because of, among other things, their unique and novel designs, collectability and stature in the art world.

**SOME OF THE NEGATIVE EFFECTS ON MY CAREER AS A RESULT OF THE ILLEGAL COUNTERFEITING AND INFRINGING ACTIVITIES OF THE DEFENDANTS**

4. I create art, designs and consumer goods using my trademarks and copyrights, with an emphasis on, among many other things, originality, creativity, exclusivity, craftsmanship, precision, and innovation. The art market, art collectors and the consuming public value (as seen through my auction prices and through private sales) my original art, my original designs, and my craftsmanship which distinguishes my art and brand of art. By duping customers into purchasing counterfeit KAWS work of art or counterfeit KAWS consumer goods, counterfeiters such as the Defaulting Leong Defendants nullify and dilute the decades of "sweat equity" I and my company have invested and continue to invest, in developing my unique style of art and unique designs. I create and am creating new art and new designs using my universally recognized trademarks and copyrights, against the tide of counterfeit KAWS works generated by these Defendants.

5. The Defendants counterfeiters are interested in external appearance and presentations. Selling fakes, infiltrating the internet and anonymous websites with fake items for sale, is a standard method of how counterfeiters reap huge profits by exploiting the ***false*** associations of their counterfeit products with me and KI. When a customer finds out or realizes the product does not meet my exacting standards or is a fake, it directly damages my art, my image and dampens their next purchase of an authentic KAWS work of art. Furthermore, these counterfeit KAWS items often end up being consigned at auction houses or stores.

6. Even a single instance of counterfeiting damages my reputation and image. The natural response by a consumer who realizes the KAWS item he/she purchased is a counterfeit, is that the consumer feels "burned" and prefers ***not*** to buy an authentic KAWS item because it may not be authentic.

7. Competing in the USA and abroad on equal footing with offshore counterfeiters in the e-commerce sphere, without the intervention of this Court, is extremely difficult.

8. Moreover, one of the salient characteristics of my ***authentic*** works of art, designs and "toys," is that they retail for as little as $15.00 and over a million dollars. I try to provide the full range of consumers with the opportunity to purchase authentic KAWS items that are affordable to them. When a consumer is fooled by some of the low sale prices offered by these counterfeiters, again my image and I are severely damaged. The counterfeiter impacts not only my reputation but other companies' sales and reputations as the counterfeiter leads the consumers ***not*** to prefer to buy any brand product because of the possibility of later finding it as counterfeit.

9. Besides direct losses of sales, income, reputation and goodwill, and the attorneys fees expended and to be expended in this litigation, it must be kept in mind the magnitude of the great financial outlay involved in protecting and enforcing my intellectual property rights outside of the litigation context. For example, the Complaint makes several references to the Digital Millennium Copyright Act ("DMCA") takedown notices (Ex. 1 ¶31, 48, 55, 60, 65) performed by the web-based company Red Points.[1] Plaintiff KI will be paying in excess of $40,000.00 this year (2023) alone to Red Points to track fake KAWS items offered for sale on the internet and to generate DMCA take down notices for each infringing KAWS product offered for sale on the internet (Arkin Decl.), in addition to the litigation fees and costs and time consumption, when I could be creating art. Plaintiff KI made similar size payments to Red Points (i.e. in excess of $40,000.00) for years 2021 and 2022 (Arkin Decl.)

10. There are consumers who are not legitimate collectors of authentic KAWS works of art, designs, and artistic creations, and are all too willing to intentionally purchase a counterfeit KAWS product at a lower price on the internet, with full knowledge that the item is a fake. Unfortunately, this category of consumer doesn't realize that by intentionally buying a counterfeit KAWS item on a website, they are taking income not only from me but also from Plaintiff KI and making it more difficult for me to create new, original and authentic works of art, designs, sculptures.

11. The foregoing demonstrates that consumers and the e-commerce platforms and

---

[1] I understand the accompanying Declaration of KI's Project Assistant David Arkin ("Arkin Decl."), will discuss the services performed by Red Points pertaining to the Defaulting Leong Defendants.

4

marketplaces they frequent, cannot be expected to be the solution to the mass counterfeiting of branded works of art and branded products available for purchase by one computer click, through the anonymity provided to counterfeiters by online storefronts. This Court is my only legal recourse which underscores why the Court should grant the maximum statutory damages available against the Defaulting Leong Defendants.

12. I respectfully refer the Court to paragraphs 32 through 38 of the Complaint for a further understanding of the damaging effect counterfeiters such as the Defaulting Leong Defendants (and the Jonathan Anand Defendants (Ex. 1 ¶¶ 3-8, 12)) have on me, my art and my designs, the art market and other artists (Ex. 1 ¶¶32-38).

## CONCLUSION

13. The Defaulting Leong Defendants are defrauding me and the consuming public for their own benefit and unjust enrichment (Ex. 1 ¶33). Through Internet and website manipulations, the Defaulting Leong Defendants are illegally and underhandedly, trading on my and KI's goodwill and reputation, thereby weakening, diluting, tarnishing and blurring the distinctive quality of the KAWS reputation and of Plaintiffs' Registered Trademarks and Copyrights (Ex. 1 ¶36). For the reasons set forth above, in the Complaint, and in the accompanying Memorandum of Law by my counsel, I urge the Court to award the maximum statutory damages allowed under the law and to grant permanent injunctive relief.[2]

---

[2] I understand the amount of statutory damages is explained in my counsel's accompanying Memorandum of Law.

WHEREFORE, it is respectfully requested that Plaintiffs' motion for a default judgment and permanent injunction be granted, together with such other and further relief as to this Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information and belief.

Executed this 22nd day of February, 2023 in New York, New York.

BRIAN DONNELLY