UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X Civil Action No. 1:21-cv-09562-PKC

BRIAN DONNELLY AKA KAWS and
KAWS INC.,

                      Plaintiffs,       **DECLARATION OF**
                                                 **DAVID ARKIN**

-against-

JONATHAN ANAND, both individually and doing
business as HOMELESS PENTHOUSE,
PENTHOUSE THEORY, HIDEOUT.NYC,
INCOGNITO and YOUNG NEON, DAVID KANG,
DYLAN JOVAN LEONG YI ZHI,
THE PENTHOUSE THEORY,
THE PENTHOUSE COLLECTIVE and
OSELL DINODIRECT CHINA LIMITED,

                      Defendants.
-----------------------------------------------------------------X

DAVID ARKIN hereby declares as follows:

1. I am the Project Assistant of Plaintiff KAWS Inc. ("KI"), and am an assistant to Plaintiff Brian Donnelley, also known as KAWS ("KAWS") and as such am familiar with the facts and circumstances herein. I submit this Declaration in support of Plaintiffs' motion for a default judgment and injunctive relief against Defendants' Dylan Jovan Leong Yi Zhi ("Leong"), The Penthouse Theory ("TPT") and The Penthouse Collective ("TPC") (collectively, the "Defaulting Leong Defendants").

2. As detailed in the Complaint (Ex. 1 ¶66) and as noted by the Court in its Order dated September 22, 2022 (Ex. 5 pp. 2-4), some background on Defendant Jonathan Anand ("Anand") and his entity Defendant Penthouse Theory is useful for understanding the counterfeiting and infringing activities of the Defaulting Leong Defendants. Plaintiffs allege that in or about 2020 or 2021, Leong interned for Defendants Anand and Penthouse Theory (Ex. 1,

¶66)—a New York entity with a principal place of business in Manhattan. Leong returned to Singapore, appropriating their name—"*The* Penthouse Theory" instead of "Penthouse Theory"—and illegal business model—counterfeiting and selling infringing items, including items unauthorizedly featuring Plaintiffs' Registered Trademarks and Registered Copyrights, and advertising and selling to purchasers globally (including in New York).

3. Plaintiffs further alleged that in September 2021—before this action was commenced—Defendants posted an Instagram story attacking Anand and Penthouse Theory and announcing the intention to rebrand to avoid association with them (Ex. 1, ¶¶71-75). Defendants Leong (and his Singapore defendant entities TPT and TPC) and Anand (and his New York defendant entities) are mirror images, jointly and independently exploiting Plaintiffs' name and intellectual property. Defaulting Defendant Leong has followed in Defendant Anand's lawless, arrogant footsteps and, now that Defendant Leong has been called to account, he cannot disassociate himself from Anand.

4. The Complaint further alleges that, and as again noted by the Court in its Order (Ex. 5 pp. 3-4), the Defaulting Leong Defendants made an egregious admission on the Defendant TPT website, i.e. that the KAWS items offered for sale on the Defendant TPT's website *are indeed fake counterfeit KAWS items* (Ex. 1 ¶70-71). A Frequently Asked Questions page on the Defendant TPT's website included the following frequently asked question *and* answer (Ex. 1 ¶70-71):

> "ARE YOUR ITEMS REWORKED?
>
> Our items are custom hand-reworked reproductions due to the low prices we are able to provide." (Ex. 1 ¶ 70).

5. Clearly, the business model of the Defaulting Leong Defendants is to sell knock-

off goods in flagrant violation of the law and with no respect whatsoever for the rights of the Plaintiff artist. Despite repeated Digital Millennium Copyright Act ("DMCA") takedown notices and infringement warnings to the Defaulting Leong Defendants in 2020 and 2021 issued by third party web searcher Red Points (Ex. 11),[1] the Defaulting Leong Defendants brazenly continued selling KAWS counterfeit items.

6. The Complaint (Ex. 1) alleges that as of October 20, 2021, the Defaulting Leong Defendants offered for sale 45 counterfeit items that illegally copy and infringe on Plaintiffs' Registered Trademarks and Registered Copyrights (Exs. 2-3; Ex. 1 ¶¶67-68). Following a more full and complete investigation by Red Points, Plaintiffs have discovered that the Defaulting Leong Defendants offered for sale and/or sold no less than 154 fake KAWS items on their websites. Ex. 9 contains 154 images of the fake KAWS items and the retail selling price of each fake item which was offered for sale by the Defaulting Leong Defendants (as captured by Red Points). Each counterfeit KAWS item in Ex. 9 is captioned and numbered on the upper left as "*LEONG-COUNTERFEIT KAWS ITEM ___*" (e.g. *LEONG-COUNTERFEIT KAWS ITEM 001, LEONG-COUNTERFEIT KAWS ITEM 002*, and so on, until the last item in Ex. 9 is captioned *LEONG-COUNTERFEIT KAWS ITEM 154* (Ex. 9)).

7. Ex. 10 is an Excel spreadsheet summary containing 154 entries corresponding to each of the 154 fake KAWS items in Ex. 9. Some of the fake KAWS items are the same but available in different colors. For example, the KAWS BFF COMPANION PLUSHIES in Ex. 9

---

[1] Red Points is a computer consulting company which, for a fee, provides brand and content protection tools to spot fake items being marketed online. Its software uses machine learning and computer vision to identify photos of fake or illegally sourced content online. See https://www.redpoints.com/about-us/.

items 7-10 (Ex. 9 Items 7-10), are available in Blue (for $129.00), Pink (for $129.00), Black (for $129.00) or all three colors (for $339.00) (Ex. 9 *LEONG—COUNTERFEIT KAWS ITEMS* 7-10; see Ex. 10 Items 7-10).

8. The Defaulting Leong Defendants illegally infringed and counterfeited Plaintiffs' Registered Trademarks and Registered Copyrights on the following nine different types of goods:

      i. Plush dolls;

      ii. Vinyl figures;

      iii. Ashtrays;

      iv. Skateboard;

      v. Canvas;

      vi. Posters;

      vii. Sculptures;

      viii. Rugs; and

      ix. Neon light.

9. All of the 154 counterfeit KAWS items have retail prices ranging from $59.00 to $3,299.00. The total retail price of all 154 fake KAWS items is $63,749.99. 18 of these counterfeit, infringing items appear in Exs. 9-10 Items 86-88, 89, 107-110, 76-78, 79, 80, 147, 148, and 137-139, ranging in price from $1,899.00 to $3,299.00.

10. Hundreds of millions of people use the Internet every day in the United States alone (Ex. 12 sourced from https://www.statista.com/topics/2237/internet-usage-in-the-united-states/#topicOverview). A counterfeiter's potential customer base over the Internet is virtually

4

limitless and the sale of counterfeit items over the Internet suggests a broad scope of operations. Due to the Defaulting Leong Defendants' deliberate failure to meaningfully participate in the discovery process in this litigation, the Defaulting Leong Defendants have made it impossible to assess Plaintiffs' losses, the extent of the Defaulting Leong Defendants' profits gained, expenses saved, or the number of internet 'hits' the Defaulting Leong Defendants' websites received.

11. Moreover, KI is a relatively small company with only nine full time employees. KI's costs and expenditures to monitor, protect and enforce the Plaintiffs' Federal registered trademarks and copyrights, are not insignificant. For year 2023 alone, it is estimated that Plaintiff KI will be paying Red Points in excess of $40,000.00 to track fake KAWS items offered for sale on the Internet by counterfeiters and to generate DMCA take down notices for each counterfeit KAWS product offered for sale on the Internet. Plaintiff KI paid Red Points in excess of $40,000.00 for its services in 2021 and in excess of $40,000.00 in 2022.

12. The allegations in the following paragraphs 12-23 below, are derived directly from the Complaint (Ex. 1).

13. The Defaulting Leong Defendants illegally sold, offered for sale, distributed, promoted and/or advertised in interstate and international commerce, through the Internet and e-mail, counterfeit KAWS goods which directly infringe on Plaintiffs' Registered Trademarks and Registered Copyrights (Ex. 1 ¶32).

14. The Defaulting Leong Defendants conducted their counterfeiting and infringing activities within the United States and internationally and are defrauding Plaintiffs and the consuming public for their own benefit and unjust enrichment (Ex. 1 ¶33).

15. The Defaulting Leong Defendants are not and never have been associated with,

affiliated with, connected with, endorsed by or sanctioned by Plaintiffs and Plaintiffs never authorized or consented to the Defaulting Leong Defendants' use of Plaintiffs' Registered Trademarks and Registered Copyrights or ones substantially indistinguishable therefrom or confusingly similar thereto (Ex. 1 ¶34).

16. Plaintiffs have no control over the nature and quality of the Defaulting Leong Defendants' counterfeit goods infringing on Plaintiffs' Registered Trademarks and Registered Copyrights (Ex. 1 ¶34).

17. Despite being notified by Plaintiffs of their illegal activities and/or knowing that they were unlawfully counterfeiting and infringing Plaintiffs' Registered Trademarks and Registered Copyrights, the Defaulting Leong Defendants intentionally, maliciously, willfully and/or recklessly reproduced, copied and prepared derivative works of Plaintiffs' Registered Trademarks and Registered Copyrights and advertised, promoted, displayed, distributed, offered for sale and sold counterfeit goods infringing on Plaintiffs' Registered Trademarks and Registered Copyrights (Ex. 1 ¶35).

18. The Defaulting Leong Defendants' unlawful acts were and are calculated to confuse and deceive the public and to underhandedly trade on Plaintiffs' goodwill and reputation and were conducted with full knowledge of Plaintiffs' rights (Ex. 1 ¶36).

19. The Defaulting Leong Defendants' illegal use Plaintiffs' Registered Trademarks and Copyrights or ones substantially indistinguishable therefrom and/or confusingly similar thereto in connection with the Defaulting Leong Defendants counterfeit goods offered for sale, has likely caused the public, the trade and consumers to believe erroneously that the products offered for sale and/or distributed by the Defaulting Leong Defendants were created, authorized

and/or approved by Plaintiffs (Ex. 1 ¶36).

20. This confusion has caused and continues to cause irreparable harm to Plaintiffs and weakens, dilutes, tarnishes and blurs the distinctive quality of Plaintiffs' Registered Trademarks and Copyrights (Ex. 1 ¶36).

21. The Defaulting Leong Defendants have disparaged Plaintiffs, Plaintiffs' Registered Trademarks and Copyrights and Plaintiffs' products for sale by creating a false association with the Defaulting Leong Defendants' shoddy, inferior, counterfeit goods and the false impression that Plaintiffs are the source of origin thereof (Ex. 1 ¶37).

22. The Defaulting Leong Defendants' unlawful activities will hamper continuing efforts by Plaintiffs to protect their outstanding reputation for high quality, original and distinctive works and will tarnish the goodwill and demand for genuine products for sale by Plaintiffs (Ex. 1 ¶37).

23. Clearly, the Defaulting Leong Defendants have been unjustly enriched by illegally using and misappropriating Plaintiffs' intellectual property for their own financial gain and have unfairly benefited and profited from Plaintiffs' outstanding reputation, Plaintiffs' Registered Trademarks and Registered Copyrights and Plaintiffs' significant promotion of their genuine products for sale (Ex. 1 ¶38).

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information and belief.

Executed this 22nd day of February, 2023 in New York, New York.

DAVID ARKIN