UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X Civil Action No. 1:21-cv-09562-PKC
BRIAN DONNELLY AKA KAWS and
KAWS INC.,

                                  Plaintiffs,

            -against-

JONATHAN ANAND, both individually and doing
business as HOMELESS PENTHOUSE,
PENTHOUSE THEORY, HIDEOUT.NYC,
INCOGNITO and YOUNG NEON, DAVID KANG,
DYLAN JOVAN LEONG YI ZHI,
THE PENTHOUSE THEORY,
THE PENTHOUSE COLLECTIVE and
OSELL DINODIRECT CHINA LIMITED,

                                 Defendants.
---------------------------------------------------------------------X


## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION


AARON RICHARD GOLUB, ESQUIRE, P.C.
Attorneys for Plaintiffs
24 East 64th Street, Fifth Floor
New York, New York 10065
ph: (212) 838-4811
fx: (212)838-4869

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT…………………………………………………………..1

PROCEDURAL HISTORY …………………………………………………………………2

ARGUMENT……………………………………………………………………………………4

A.   A DEFAULT JUDGMENT AGAINST THE DEFAULTING LEONG
     DEFENDANTS SHOULD BE GRANTED BASED UPON THE
     WELL-PLEADED ALLEGATIONS IN THE COMPLAINT…………………………..4

B.   LIABILITY FOR:

        TRADEMARK COUNTERFEITING (First Cause of Action ("COA")—15
        U.S.C. §§ 1114, 1116 and 1117);

        TRADEMARK  INFRINGEMENT (Fourth COA—15 U.S.C. § 1114);

        TRADEMARK DILUTION (Eighth COA—15 U.S.C. § 1125(c));

        UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN AND
        FALSE DESCRIPTION (Seventh COA—15 U.S.C. § 1125(a))………………..5

C.   LIABILITY FOR COPYRIGHT INFRINGEMENT
     (Ninth Cause of Action—17 U.S.C.  § 501)………………………………………….6

D.   PLAINTIFFS ARE ENTITLED TO AN AWARD OF STATUTORY DAMAGES
     FOR THE DEFAULTING LEONG DEFENDANTS' MULTIPLE WILLFUL AND
     MALICIOUS TRADEMARK AND COPYRIGHT INFRINGEMENTS………………7

        I.     Statutory Damages under the Lanham Act……………………………...7

        II.    Plaintiffs' Request for Maximum Statutory Damages is Reasonable
               Under the Circumstances Here……………………………………….....11

        III.   Statutory Damages Under the Copyright Act…………………………17

        IV.    Double Recovery ………………………………………………...…….18

E.   AN EVIDENTIARY HEARING TO DETERMINE
     STATUTORY DAMAGES IS ___NOT___ REQUIRED…………………………..…...…19

F.   THE DEFAULTING LEONG DEFENDANTS SHOULD
     BE PERMANENTLY ENJOINED…………………………………….……19

CONCLUSION……………………………………………………………………...……22

# TABLE OF AUTHORITIES

## Cases

Page(s)

Cases

Au Bon Pain Corp. v. Artect, Inc.,
653 F.2d 61 (2d Cir. 1981).............................................................................. 4
Boxy, LLC v. Jay at Play Int'l,
2021 WL 1226388 (S.D. Fla. Mar. 31, 2021) ......................................... 11
Brainstorm Interactive, Inc. v. Sch. Specialty, Inc.,
2014 WL 6893881 (W.D. Wis. Dec. 5, 2014) ......................................... 12
Bravado Int'l Group Merch. Servs., Inc. v. Ninna,
655 F.Supp.2d 177 (E.D.N.Y. 2009)......................................................... 9
Burberry Ltd. v. Euro Moda, Inc.,
2009 WL 4432678 (S.D.N.Y. Dec. 4, 2009)........................................... 16
Cengage Learning, Inc. v. Shi,
2017 WL 1063463 (S.D.N.Y. Mar. 31, 2017) ......................................... 19
Cengage Learning, Inc. v Bhargava,
2017 WL 9802833 (S.D.N.Y. Aug. 22, 2017)......................................... 19
Cengage Learning, Inc. v Globonline SDN,
2018 WL 1989574 (S.D.N.Y. Apr. 25, 2018).......................................... 18
Chanel, Inc. v. Cui,
2010 WL 2835749 (S.D.N.Y. July 7, 2010, Castel, J.).......................... 10
Coach Inc. v. Allen,
2012 WL 2952890 (S.D.N.Y. July 19, 2012) .............................. 8, 13, 16
Coach, Inc. v. Chaos of Muncie,
2012 WL 896420 (S.D. Ind. Mar. 15, 2012)............................................. 5
Cotton v. Slone,
4 F.3d 176 (2d Cir. 1993)............................................................................. 4
Edward B. Beharry & Co. v. Bedessee Imps., Inc.,
2006 WL 3095827 (E.D.N.Y. Oct. 31, 2006) .......................................... 5
Evo Brands, LLC v. Performance Plus Mktg., Inc.,
2022 WL 18231779 (C.D. Cal. July 5, 2022) ........................................ 12
Evony, LLC v Holland,
2011 WL 1230405 (W.D. Pa. Mar. 31, 2011)......................................... 19
Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,
499 U.S. 340 (1991) ...................................................................................... 6
Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.,
807 F.2d 1110 (2d. Cir. 1986)................................................................. 9, 17
FTC v. 1263523 Ont., Inc.,
205 F. Supp. 2d 218 (S.D.N.Y. 2002)....................................................... 4
Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,
973 F.2d 155 (2d Cir. 1992)........................................................................ 4

Gucci Am., Inc. v. Curveal Fashion,
    2010 WL 308303 (S.D.N.Y. Jan. 20, 2010)................................................................ 17

Gucci Am., Inc. v. Tyrrell-Miller,
    678 F. Supp. 2d 117 (S.D.N.Y. 2008) ...................................................................... 4

Guess?, Inc. v. Gold Ctr. Jewelry, 997 F. Supp. 409, 411 (S.D.N.Y. 1998),
    rev'd on other grounds, 158 F.3d 631 (2d. Cir. 1998)............................................. 12

Hard Rock Café Licensing Corp. v. Concession Servs., Inc.,
    955 F.2d 1143 (7th Cir. 1992)............................................................................. 20, 21

JCW Invs., Inc. v. Novelty, Inc.,
    482 F.3d 910 (7th Cir. 2007)..................................................................................... 6

Joseph J. Legat Architects, P.C. v U.S. Dev. Corp.,
    1991 WL 38714...................................................................................................... 18

Kaloti Enters. of Mich.,
    697 F. Supp. 2d 287 (E.D.N.Y. 2009)....................................................................... 19

Kepner-Tregoe, Inc. v Vroom,
    186 F.3d 283 (2d Cir. 1999).................................................................................. 8, 17

Louis Vuitton Malletier & Oakley, Inc. v. Veit,
    211 F. Supp. 2d 567 (E.D. Pa. 2002) .......................................................... 12, 13, 14

Maletier v. Carduci Leather Fashions, Inc.,
    648 F. Supp. 2d 501 (S.D.N.Y. 2009)....................................................................... 11

Manufacturers Techs., Inc. v. Cams, Inc.,
    728 F. Supp. 75 (D. Conn. 1989) ............................................................................ 18

MuscleTech Research and Dev., Inc. v. East Coast Ingredients, LLC,
    2007 WL 655755 (W.D.N.Y. Feb. 26, 2007)............................................................ 18

Music, Inc. v. PAMDH Enters.,
    2014 WL 2781846 (S.D.N.Y. June 19, 2014)........................................................... 16

N.A.S. Imp., Corp. v. Chenson Enters., Inc.,
    968 F.2d 250 (2d Cir. 1992)..................................................................................... 9

North Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd,
    No. 10-Civ-1630 (AKH) (S.D.N.Y. Sept. 13, 2010)...........................................15-16

OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.,
    2015 WL 12911326 (E.D. Wash. Nov. 30, 2015)..................................................... 12

Packman v. Chicago Tribune Co.,
    267 F.3d 628 (7th Cir. 2001).................................................................................... 5

Philip Morris U.S., Inc. v. U.S. Sun Star Trading, Inc.,
    2010 WL 2133937 (E.D.N.Y. Mar. 11, 2010) .......................................................... 7

Philip Morris USA Inc. v. Marlboro Express,
    2005 WL 2076921 (E.D.N.Y. Aug. 26, 2005) .......................................................... 8

Playboy Enters., Inc. v. Asia Focus Int'l, Inc.,
    1998 WL 724000...................................................................................................... 14

Playboy Enterprises, Inc. v. Universal Tel-A-Talk, Inc.,
    1998 WL 767440 (E.D. Pa. Nov. 3, 1998) ............................................................... 13

Polo Fashions, Inc. v. Dick Bruhn, Inc.,
    793 F.2d 1132 (9th Cir. 1986)............................................................................. 20, 21

Rolex Watch U.S.A., Inc. v. Brown,
    2002 WL 1226863 (S.D.N.Y. June 5, 2002)......................................................... 16, 19

<u>Sara Lee Corp. v. Bags of New York, Inc.</u>,
  36 F. Supp. 2d 161 (S.D.N.Y. 1999)............................................................ 13, 16
<u>Securacomm Consulting Inc. v. Securacom Inc.</u>,
  166 F.3d 182 (3d Cir.1999) ......................................................................... 9
<u>Silhouette Int'l Schmied AG v. Chakhbazian</u>,
  2004 WL 2211660 (S.D.N.Y. Oct. 4, 2004) ............................................... 16
<u>Starbucks Corp. v. Morgan</u>,
  2000 WL 949665 (S.D.N.Y. July 11, 2000) ............................................... 4
<u>Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.</u>,
  74 F.3d 488 (4th Cir. 1996)......................................................................... 17
<u>Tamarin v. Adams Caterers, Inc.</u>,
  3 F.3d 51 (2d Cir. 1993).............................................................................. 19
<u>Thomsen v. United States</u>,
  887 F.2d 12 (1st Cir. 1989) ......................................................................... 9
<u>Tiffany (NJ) Inc. v. Luban</u>,
  282 F. Supp. 2d 123 (S.D.N.Y. 2003).......................................................... 10
<u>TigerCandy Arts, Inc. v. Blairson Corp.</u>,
  2012 WL 760168 (S.D.N.Y. Feb. 23, 2012) ............................................... 21
<u>True Religion Apparel v. Xiaokang Lei D/B/A Truereligionjeans40utlet.com</u>,
  No. 11-Civ-8242 (HB) (S.D.N.Y. March 12, 2012)……………………………………15
<u>Tu v. Tad System</u>,
  2009 WL 2905780 (E.D.N.Y. 2009).............................................................. 18
<u>Twentieth Century Fox Film Corp v. 316 W. 49th Street Pub. Corp.</u>,
  1990 WL 165680 (S.D.N.Y. Oct. 23, 1990) ................................................ 18
<u>Union of Orthodox Jewish Congregation of Am. v. Royal Food Distribs. LLC</u>,
  665 F. Supp. 2d 434 (S.D.N.Y. 2009).......................................................... 4
<u>Vuitton Et Fils, S.A. v. Crown Handbags</u>,
  492 F. Supp. 1071 (S.D.N.Y. 1979)............................................................. 20
<u>William R. Warner & Co. v. Eli Lilly & Co.</u>,
  265 U.S. 526 (1924) .................................................................................... 20
<u>Yahoo! Inc. v. XYZ Cos.</u>,
  872 F. Supp. 2d 300 (S.D.N.Y. 2011) ......................................................... 16


Statutes


15 U.S.C. § 1065 ................................................................................................. 4
15 U.S.C. § 1114(1)(a) ....................................................................................... 5
15 U.S.C. § 1116 ................................................................................................. 19
15 U.S.C. § 1116(d)(1)(B)(i)............................................................................... 12
15 U.S.C. § 1117(a)............................................................................................. 11
15 U.S.C. § 1117(c).................................................................................. 7, 11, 12, 15
15 U.S.C. § 1117(c)(1) ........................................................................................ 7, 8
15 U.S.C. § 1117(c)(2) ........................................................................................ 8
15 U.S.C. § 1121 ................................................................................................. 2
15 U.S.C. § 1125 ................................................................................................. 1, 5
15 U.S.C. § 1127 ................................................................................................. 11

15 U.S.C. §§ 1114, 1116 and 1117............................................................................ 1, 5
15 U.S.C. § 1116(a) ........................................................................................... 19, 21
17 U.S.C. § 501 .................................................................................................... 1, 6
17 U.S.C. § 106 ......................................................................................................... 6
17 U.S.C. § 502(a) ............................................................................................. 20, 21
17 U.S.C. § 504(c)(1) ............................................................................................... 17
17 U.S.C. § 504(c)(2) ............................................................................................... 17
17 U.S.C. § 602 ......................................................................................................... 6
17 U.S.C. §§ 101 ....................................................................................................... 7
28 U.S.C. § 1331 ....................................................................................................... 2
28 U.S.C. § 1338 ....................................................................................................... 2

Other Authorities

CONG. REC. S12085 (Aug. 9, 1995) ........................................................................ 13
Senate Report No. 117 (104th Cong. 1995) .............................................................. 16

## PRELIMINARY STATEMENT

At all relevant times, Defendant Dylan Jovan Leong Yi Zhi ("Leong") resided in Singapore (Ex. 5 Dkt. #85 pp. 1-3). As detailed at length in the Complaint (Ex. 1 ¶¶10-12, 32-39, 66-75), Defendant Leong is the founder, owner, operator and/or controlling force of Defendants The Penthouse Theory ("TPH") and The Penthouse Collective ("TPC") (Leong, TPH and TPC collectively, the "Defaulting Leong Defendants"), two Singapore entities with their principal place of business in Singapore, ***but*** which operate a network of Instagram accounts, Facebook pages, Pinterest pages, websites and YouTube accounts which advertise, promote, display, distribute, offer for sale and sell counterfeit and infringing KAWS goods, including counterfeit goods that illegally copy and infringe on Plaintiffs' Registered Trademarks (Ex. 2) and Registered Copyrights (Ex. 3).

Defendant Leong is a counterfeiter who despite being served with process in this action, hiring counsel, filing a motion to dismiss, allegedly spending $40,000.00 on attorneys fees for his dismissal motion (Ex. 6 p. 6), brazenly instructing his attorney ***not*** to file an Answer to the Complaint ***after*** the Court denied the motion to dismiss (Dkt. #90 ¶¶6-7), causing his counsel to withdraw from representation (Dkt. #89-91) and even communicating with the Court (Dkt. #93 and Ex. 6 pp. 2-9), has knowingly and willfully failed to Answer the Complaint. As a result, pursuant to Plaintiffs' application, on January 26, 2023, the Clerk of Court entered a default against the Defaulting Leong Defendants (Ex. 8 Dkt. # 101).

Plaintiffs now seek the entry of a default judgment against the Defaulting Leong Defendants seeking $36,000,000.00 (thirty six million dollars) in statutory damages due to the Defaulting Leong Defendants' willful and malicious trademark counterfeiting and copyright infringement of Plaintiffs' Registered Trademarks and Registered Copyrights and a permanent injunction in order to prevent the Defaulting Leong Defendants and others from counterfeiting

and infringing Plaintiffs' trademarks and copyrights in the future (Ex. 13 Proposed Default and Injunction Order).

**PROCEDURAL HISTORY**

This action was commenced on November 18, 2021 pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331 and 28 U.S.C. § 1338 (Ex. 1 Dkt. # 1). On February 15, 2022, Defendants Dylan Jovan Leong Yi Zhi ("Leong"), The Penthouse Theory ("TPH"), and The Penthouse Collective ("TPC") (collectively, the "Defaulting Leong Defendants") moved to dismiss the Complaint (Dkt. # 41). On September 22, 2022, the Court denied the motion to dismiss (Dkt. # 85).

On October 17, 2022, counsel for the Defaulting Leong Defendants moved to withdraw as counsel (Dkt. #89). On November 14, 2022, the Court granted the motion to withdraw as counsel (Dkt. # 91) and ordered, inter alia, the following (Dkt. # 91 pp. 1-2):

> "The Court will conduct a case management conference for all defendants, including Dylan Jovan Leong Yi Zhi, The Penthouse Theory, The Penthouse Collective and Jonathan Anand, on January 17, 2023 at 2:00 p.m. in Courtroom 11D, U.S. Courthouse, 500 Pearl Street, New York, NY.
>
> **DEFENDANT THE PENTHOUSE THEORY AND THE PENTHOUSE COLLECTIVE APPEAR TO BE ENTITIES AND NOT NATURAL PERSONS AND THEREFORE ARE NOT PERMITTED TO APPEAR IN THIS COURT, EXCEPT THROUGH AN ATTORNEY WHO IS ADMITTED TO PRACTICE IN THIS COURT. DEFENDANTS THE PENTHOUSE THEORY AND THE PENTHOUSE COLLECTIVE SHALL CAUSE A NOTICE OF APPEARANCE TO BE FILED BY AN ATTORNEY ADMITTED TO PRACTICE IN THIS COURT ON OR BEFORE JANUARY 4, 2023 AND SAID ATTORNEY SHALL APPEAR AT THE JANUARY 17, 2023 2:00 P.M. HEARING. FAILURE TO COMPLY WILL RESULT IN STRIKING THE NON-APPEARING DEFENDANT'S ANSWER AND THE ENTRY OF A DEFAULT JUDGMENT AGAINST IT.**
>
> **DYLAN JOVAN LEONG YI ZHI SHALL APPEAR AT THE JANUARY 17, 2023, 2 P.M. CONFERENCE IN PERSON OR BY AN ATTORNEY ADMITTED TO PRACTICE BEFORE THIS COURT. FAILURE TO COMPLY WILL RESULT IN STRIKING DYLAN JOVAN LEONG YI ZHI'S ANSWER AND THE ENTRY OF A DEFAULT JUDGMENT AGAINST HIM.**" (**emphasis** and CAPS in original) (Dkt. #91 pp. 1-2).

On January 13, 2023, the Court issued an Order (Dkt. # 93), which ordered, inter alia, the following (Dkt. # 93 p. 2):

> "At 1:06 p.m. today, the last business day before the conference, Leong has sent an email to the Court1 seeking an adjournment. He alternatively seeks a telephone conference. He now claims that he cannot attend in person because he is a student living in Singapore without resources to fly to New York. Leong, who notes that he is 9521 miles away, most certainly knew prior to today that he had absolutely no plans to come to New York no matter how the Court ruled.
>
> Leong subscribes his email with his name and that of The Penthouse Theory and The Penthouse Collective, the two apparent entities. To the extent the entities seek an adjournment, they are not represented, and the request is DENIED.
>
> With respect to Leong, his application to adjourn is also DENIED but he may participate by telephone. Dial-In No: 1-888-363-4749, Access Code: 3667981." (Dkt. # 93 p. 2).

On January 17, 2023, the Court held a Civil Case Management conference which was attended by Defendant Leong via telephone. The Court ruled, inter alia, concerning the Defaulting Leong Defendants, the following (Ex. 5 pp. 9 and 14):

> "So the plaintiff is free to move for a default judgment." (Ex. 5 p. 9) and
>
> "Plaintiffs shall file a motion for a default judgment within 30 days. So you have 30 days to do that. And hopefully and ideally, Mr. Leong will be able to settle this case with the plaintiffs. And otherwise, the plaintiffs will have to proceed with their motion for default judgment within 30 days of today." (Ex. 5 p. 14).

On January 17, 2023, the Court issued a Civil Case Management Plan And Scheduling Order (Ex. 7 Dkt. # 94), which ordered in paragraph 14 thereof, the following (Ex. 7 p. 3):

> "Plaintiff shall file motion for a default judgment within 30 days." (Ex. 7 p. 3).

On January 26, 2023, the Clerk of Court issued a Clerk's Certificate of Default (Dkt. # 101). On February 13, 2023, the Court granted Plaintiffs' request for a one week extension to February 23, 2023 to file their default motion against the Defaulting Leong Defendants (Dkt.

3

#107).

**ARGUMENT**

A. **A DEFAULT JUDGMENT AGAINST THE DEFAULTING LEONG
DEFENDANTS SHOULD BE GRANTED BASED UPON THE
WELL-PLEADED ALLEGATIONS IN THE COMPLAINT.**

The Defaulting Leong Defendants, by their default, have conceded "all well-pleaded

allegations of liability." Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); FTC v. 1263523

Ont., Inc., 205 F. Supp. 2d 218, 221 (S.D.N.Y. 2002); Union of Orthodox Jewish Congregation

of Am. v. Royal Food Distribs. LLC, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) ("When the

Court enters a default judgment, as regards liability it must 'accept [] as true all of the factual

allegations of the complaint" quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir.

1981)); Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) ("A

plaintiff's factual allegations, except those relating to damages, must be accepted as true where,

as here, the defendant defaults."); Starbucks Corp. v. Morgan, 2000 WL 949665 at *2 (S.D.N.Y.

July 11, 2000) (explaining that factual allegations in complaint "taken as true" when defendant is

in default). The Defaulting Leong Defendants, by their default, have conceded all well-pleaded

allegations of the Complaint and their liability in this action.

Plaintiffs are the owners of three Registered Trademarks (represented by six USA Federal

Trademark Registration Certificates (Ex. 2)), which are valid, subsisting, distinctive and

incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065 (Ex. 1 Compl. ¶ 21-24, 25-

31; Ex. 2). Plaintiffs are also the owners of two Registered Copyrights (represented by two

USA Federal Copyright Registration Certificates (Ex. 3)), which are valid and subsisting in full

force and effect, under the Copyright Act (Ex. 1 Compl. ¶ 20-31, 178-190; Ex. 3).

4

**B.     LIABILITY FOR TRADEMARK COUNTERFEITING (1st Cause of Action
        ("COA")—15 U.S.C. §§ 1114, 1116 and 1117),
        TRADEMARK INFRINGEMENT (4th COA—15 U.S.C. § 1114),
        TRADEMARK DILUTION (8th COA—15 U.S.C. § 1125(c)) and
        UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN
        AND FALSE DESCRIPTION (7th COA—15 U.S.C. § 1125(a))**

The factual allegations in the Complaint establish the Defaulting Leong Defendants'

liability for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a).  To prove

this claim, a plaintiff must show that it owns a valid and legally protectable mark, and the

defendant's use of the mark to identify goods is likely to cause confusion among consumers.

Coach, Inc. v. Chaos of Muncie, 2012 WL 896420 at *7 (S.D. Ind. Mar. 15, 2012) (citing

Packman v. Chicago Tribune Co., 267 F.3d 628, 638 (7th Cir. 2001)). Where a plaintiff has

obtained federal registration of its marks, such registrations constitute prima facie evidence of

their validity and ownership. Id. With respect to the second element, courts have developed a

seven-factor test to determine the likelihood of confusion by use of a protected trademark. In

cases that involve counterfeit goods, however, "a likelihood of confusion exists as a matter of

law." See Coach, Inc., supra at *8; Edward B. Beharry & Co. v. Bedessee Imps., Inc., 2006 WL

3095827, at *5 (E.D.N.Y. Oct. 31, 2006) (finding step-by-step likelihood of confusion analysis

not required as "counterfeit marks are inherently confusing") (internal quotations and citations

omitted).

Plaintiffs alleged that the Leong Defendants, without Plaintiffs' authorization, are selling

and/or sold in commerce counterfeit KAWS items that contain and refer to Plaintiffs' three

Registered Trademarks (Ex. 1 Compl. ¶¶ 66-75, 76-86, 116-128, 160-168, 169-177; Ex. 2).

Moreover, the Complaint alleges that such sales have caused and are likely to continue to cause

confusion, mistake, and/or deception as to the source or origin of the Defaulting Leong

Defendants' goods, in that the public, and others, are likely to believe that the Leong Defendants'

goods are provided by, sponsored by, approved by, licensed by, affiliated with, or in some other

way legitimately connected with Plaintiffs, all to Plaintiffs' irreparable harm (Ex. 1 Compl. ¶¶ 36-38, 81-83, 118-126, 161-167).

Significantly, Plaintiffs have alleged that the Defaulting Leong Defendants' infringement of Plaintiffs' three Registered Trademarks was intentional, willful, and malicious (Ex. 1 Compl. ¶¶ 35, 70, 83, 86, 125, 128, 168, 173-177).  Accordingly, Plaintiffs have sufficiently established the elements necessary to sustain their first, fourth, seventh and eighth trademark violation causes of action against the Defaulting Leong Defendants.

## C.     LIABILITY FOR COPYRIGHT INFRINGEMENT (9ᵗʰ COA—17 U.S.C. § 501)

In a copyright infringement claim, Plaintiffs must demonstrate that (1) they own valid copyrights; and (2) the defendant violated one or more of the exclusive rights in 17 U.S.C. § 106. See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); JCW Invs., Inc. v. Novelty, Inc., 482 F.3d 910, 914 (7th Cir. 2007). Registration alone is prima facie evidence that the plaintiff owns valid copyrights for the works at issue. Id.,  482 F.3d at 914-15 (Ex. 3).  The exclusive rights specified under 17 U.S.C. §106 include the right to reproduce the copyrighted works and to distribute copies of the copyrighted works to the public.  Importation/exportation of infringing copyrighted works is a violation of the distribution right. 17 U.S.C. § 602.

The Complaint alleges, inter alia, that Plaintiffs are the owners of all rights, title, and interest in and to their two Registered Copyrights, which have never been assigned, licensed, or otherwise transferred to any Defendants (Ex. 1 Compl. ¶¶ 20-23, 27-31, 66-75, 178-190; Ex. 3). Beginning at least as early as 2021, the Defaulting Leong Defendants, with knowledge of Plaintiffs' copyrights, infringed Plaintiffs' copyrights by deliberately selling and/or distributing unauthorized, infringing counterfeit copies of Plaintiffs' Registered Copyrights for profit. Id. ¶¶ 20-23, 27-31, 66-75, 178-190). The Complaint also alleges that the Defaulting Leong Defendants' infringing activities were and are deliberate, intentional, malicious, and willful, Id. ¶

35, 70, 187-190), which have caused and continue to cause Plaintiffs irreparable damage, Id. ¶¶ 36, 186-188), all in violation of the Copyright Act, 17 U.S.C. §§ 101 et seq. As these factual allegations are deemed true upon default, Plaintiffs have sufficiently established that the Defaulting Leong Defendants are liable for willful copyright infringement.

**D. PLAINTIFFS ARE ENTITLED TO AN AWARD OF STATUTORY DAMAGES FOR THE DEFAULTING LEONG DEFENDANTS' MULTIPLE AND WILLFUL AND MALICIOUS TRADEMARK AND COPYRIGHT INFRINGEMENTS**

Once liability is established against a defaulting defendant, the court then conducts an inquiry sufficient to establish damages to a "reasonable certainty." See Philip Morris U.S., Inc. v. U.S. Sun Star Trading, Inc., 2010 WL 2133937, at *9-10 (E.D.N.Y. Mar. 11, 2010).

**I. Statutory Damages under the Lanham Act**

In 1996 Congress amended the Lanham Act to provide for the right to recover statutory damages for trademark counterfeiting and infringement—15 U.S.C. § 1117(c).[1] The Lanham Act provides for statutory damages in an amount not less than $1,000.00 or more than $200,000.00 ***per counterfeit mark* per type of good** offered. 15 U.S.C. § 1117(c)(1). The Lanham Act also permits increased awards—up to $2,000,000.00 for each counterfeit mark **per**

---

[1] 15 U.S.C. § 1117(c), provides in pertinent part:

**"(c) Statutory damages for use of counterfeit marks**

In a case involving the use of a counterfeit mark… in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages… in the amount of—

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods… as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods… as the court considers just."

**type of good** offered—for **_willful_** trademark infringement. 15 U.S.C. § 1117(c)(2). Courts have wide latitude in determining the amount of statutory damages to award. <u>Coach Inc. v. Allen</u>, 2012 WL 2952890, at *23 (S.D.N.Y. July 19, 2012) ("Although the Lanham Act does not provide guidelines for courts to consider in awarding statutory damages, courts look to the analogous provision of the Copyright Act, which gives the court wide discretion to determine what amount of damages should be awarded within the minimum and maximum bounds proscribed under the Lanham Act.").

The Defaulting Leong Defendants illegally infringed and counterfeited Plaintiffs' three Registered Trademarks on **_nine_** different types of goods (Arkin Decl. ¶ 8).[2] Pursuant to 15 U.S.C. § 1117(c)(1), Plaintiffs are entitled to statutory damages up to $3,600,000.00 as follows:

    i.     $200,000.00 × 9 types of goods = $1,800,000.00;

    ii.    $1,800,000.00 × 2 Registered Trademarks = $3,600,000.00.

Pursuant to the enhanced statutory damages in 15 U.S.C. § 1117(c)(2) for **_willful_** trademark infringement, Plaintiffs are entitled to statutory damages up to $36,000,000.00 as follows:

    i.     $2,000,000.00 × 9 types of goods = $18,000,000.00;

    ii.    $18,000,000.00 × 2 Registered Trademarks = $36,000,000.00.

The Defaulting Leong Defendants' infringement and counterfeiting of Plaintiffs' Registered Trademarks and Registered Copyrights was willful. Willfulness is determined by "whether the defendant had knowledge that [its] conduct represented infringement or recklessly disregarded the possibility." <u>Philip Morris USA Inc. v. Marlboro Express</u>, 2005 WL 2076921, at *20 (E.D.N.Y. Aug. 26, 2005); <u>Kepner-Tregoe, Inc. v Vroom</u>, 186 F.3d 283, 288 (2d Cir. 1999)

---

[2] i.e. plush dolls, vinyl figures, ashtrays, skateboard, canvas, posters, sculptures, rugs and neon light (Arkin Decl. ¶8).

(same). Knowledge "need not be proven directly but may be inferred from the defendant's conduct." <u>N.A.S. Imp., Corp. v. Chenson Enters., Inc</u>., 968 F.2d 250, 252 (2d Cir. 1992) (internal quotations and citation omitted); <u>Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc</u>., 807 F.2d 1110 (2d. Cir. 1986) holding that proof of actual knowledge is not necessary.[3]

The Defaulting Leong Defendants' counterfeiting and infringing illegal activities went far beyond willfulness. They were malicious, wanton and deliberate. As explained in the Complaint (Ex. 1 ¶66) and as held by the Court in its Order dated September 22, 2022 (Ex. 5 Dkt. #85 pp. 2-4), in order to understand the full scope of the Defaulting Leong Defendants' counterfeiting and infringing illegal activities, background information is required on Defendant Jonathan Anand ("Anand") and his entity Defendant Penthouse Theory.

In or about 2020 or 2021, Defendant Leong interned for Defendants Anand and Penthouse Theory in New York (Ex. 1, ¶66). After interning with his mentor Anand, where he learned the illegal business model of selling counterfeit designer goods through the internet, Leong returned to Singapore. Leong then appropriated Defendant Anand's entity and website name—"*The* Penthouse Theory" instead of "Penthouse Theory"—and appropriated Anand's illegal business model of selling counterfeit and infringing KAWS items unauthorizedly featuring Plaintiffs' Registered Trademarks and Registered Copyrights, and advertising and selling to purchasers globally (including in New York). Defendants Leong (and his Singapore

---

[3] See also <u>Bravado Int'l Group Merch. Servs., Inc. v. Ninna</u>, 655 F.Supp.2d 177, 191 (E.D.N.Y. 2009) defining willful infringement as "[k]nowledge that a defendant's conduct represented infringement or perhaps recklessly disregarded the possibility;" <u>Thomsen v. United States</u>, 887 F.2d 12, 17 (1st Cir. 1989) holding "Willful conduct denotes intentional, knowing and voluntary acts. It may also indicate a reckless disregard for obvious or known risk;" <u>Securacomm Consulting Inc. v. Securacom Inc</u>., 166 F.3d 182, 187 (3d Cir.1999) willful conduct includes an "aura of indifference to plaintiff's rights' or a `deliberate and unnecessary duplicating of a plaintiff's mark...in a way that was calculated to appropriate otherwise benefit from the goodwill the plaintiff has nurtured'" (citation omitted).

defendant entities TPT and TPC) and Anand (and his New York defendant entities) are mirror images, jointly and independently exploiting Plaintiffs' name and intellectual property.

The Complaint further alleges another glaring example of the Defaulting Leong Defendants' willfulness, which, again, is prominently mentioned by the Court in its Order (Dkt. #85 pp. 3-4). The Defaulting Leong Defendants brazenly admitted on the Defendant TPT's website, that the KAWS items offered for sale on their website ***are indeed fake counterfeit KAWS items*** (Ex. 1 ¶70-71). A Frequently Asked Questions page on the Defendant TPT's website included the following frequently asked question ***and*** answer (Ex. 1 ¶70-71):

> "ARE YOUR ITEMS REWORKED?
>
> Our items are ***custom hand-reworked reproductions due to the low prices*** we are able to provide." (Ex. 1 ¶ 70) (emphasis supplied).

See Chanel, Inc. v. Cui, 2010 WL 2835749, at *1 (S.D.N.Y. July 7, 2010, Castel, J.) holding:

> "In addition, the defendant's descriptions of certain goods as Chanel 'replicas' support a finding of bad faith [citation omitted]. The very nature of Defendants' business, which involved the open sale of 'replica' handbags and other items, demonstrates that the infringement was willful. [citation omitted]. [D]escription of products as 'replicas' reflected intention to capitalize off of plaintiff's mark and reflected 'manifest' bad faith" [quotation marks and citations omitted].

The business model of the Defaulting Leong Defendants is to boast about selling knock-off goods in flagrant violation of the law and with no respect whatsoever for the rights of the Plaintiff artist. Despite repeated Digital Millennium Copyright Act ("DMCA") takedown notices and infringement warnings to the Defaulting Leong Defendants in 2020, and 2021 issued by third party web searcher Red Points (Ex. 11; Arkin Decl. ¶5), the Defaulting Leong Defendants brazenly continued selling KAWS counterfeit items.

Regardless of actual knowledge, where a defendant has defaulted, a court may infer willfulness on that ground alone. Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) holding "By virtue of the default, the Lubans' infringement is deemed willful;"

Maletier v. Carduci Leather Fashions, Inc., 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) holding "Here, by virtue of its default, [defendant] has admitted [plaintiff's] allegation that it acted knowingly and intentionally or with reckless disregard or willful blindness to [plaintiff's] rights." As this Court explained at length during the January 17, 2023 initial Court conference, the Defaulting Leong Defendants clearly had notice of this action but chose not to defend this action.

Accordingly, the Defaulting Leong Defendants' intentional selling, distributing and offering to sell counterfeit KAWS items over the internet, failing to Answer the Complaint, and continuing to sell even after receiving multiple DMCA takedown notices and infringement warnings, satisfies every definition of "willful" in 15 U.S.C. § 1117(c).

Without any prejudice to Plaintiffs and reserving all of Plaintiffs' rights, remedies and defenses, none of which are waived, Plaintiffs elect the statutory remedies, for purposes of the subject default judgment motion, for willful trademark counterfeiting, infringement, dilution and unfair competition, false designation of origin and false description and willful copyright infringement under the Lanham Act and the Copyright Act. In the event the Court refers the matter to a Magistrate or for a hearing to determine Plaintiffs' damages, Plaintiffs reserve the right to seek compensatory damages pursuant to 15 U.S.C. § 1117(c) and the enhanced trebling of compensatory damages pursuant to 15 U.S.C. § 1117(a).

## II. Plaintiffs' Request for Maximum Statutory Damages is Reasonable Under the Circumstances Here.

Counterfeiting is "the most egregious form of trademark infringement" Boxy, LLC v. Jay at Play Int'l, 2021 WL 1226388, at *9 (S.D. Fla. Mar. 31, 2021). A counterfeit mark is a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark" (15 U.S.C. § 1127.). Counterfeiting is called "hard core" or "first degree" trademark

infringement.[4]  A mark is deemed to be counterfeit whether or not the unauthorized user had any

knowledge that the mark in issue was registered (15 U.S.C. § 1116(d)(1)(B)(i)).

The statutory remedies and the enhanced statutory remedies for *willful* counterfeiting (15

U.S.C. § 1117(c)) were added to the existing array of trademark remedies because of "a harsh

reality—counterfeiters often do not keep or secrete records of their unlawful activities, thus

making proof of the extent of the plaintiffs' injury or the counterfeiters' profits impossible as a

practical matter." Guess?, Inc. v. Gold Ctr. Jewelry, 997 F. Supp. 409, 411 (S.D.N.Y. 1998),

*rev'd on other grounds*, 158 F.3d 631 (2d. Cir. 1998).  The legislative history to 15 U.S.C. §

1117(c) provides, in pertinent part (Sen. Rep. No. 177, 104th Cong. 1995):

> "Moreover, counterfeiters' records are frequently nonexistent, inadequate or deceptively
> kept in order to willfully deflate the level of counterfeiting activity actually engaged in,
> making proving actual damages in these cases extremely difficult if not impossible.
> Enabling trademark owners to elect statutory damages is both necessary and appropriate
> in light of the deception routinely practiced by counterfeiters. The amounts are
> appropriate given the extent of damage done to business goodwill by infringement of
> trademarks." Id., at 10.[5]

Therefore, "[t]he option to elect statutory damages in counterfeit cases ensures that

trademark owners are adequately compensated and that counterfeiters are justly punished, even

---

[4] Evo Brands, LLC v. Performance Plus Mktg., Inc., 2022 WL 18231779, at *3 (C.D. Cal. July 5,
2022) holding "Counterfeiting is 'hard core' or 'first degree' trademark infringement and is the
most blatant and egregious form of 'passing off'" (quotations and citations omitted); OTR Wheel
Eng'g, Inc. v. W. Worldwide Servs., Inc., 2015 WL 12911326, at *3 (E.D. Wash. Nov. 30, 2015)
(same); Brainstorm Interactive, Inc. v. Sch. Specialty, Inc., 2014 WL 6893881, at *16 (W.D.
Wis. Dec. 5, 2014) holding:

> "Because these cases typically involve efforts to imitate a well-known product to deceive
> customers, counterfeiting is 'hard core' or 'first degree' trademark infringement and is
> the most blatant and egregious form of 'passing off' [citation omitted].  In light of the
> especially egregious characteristic of a counterfeiting claim, a successful plaintiff may
> seek treble actual damages, together with attorney's fees, or opt for statutory damages…"

[5] See also Louis Vuitton Malletier & Oakley, Inc. v. Veit, 211 F. Supp. 2d 567, 583 (E.D. Pa.
2002), amended (June 28, 2002), referencing and quoting Sen. Rep. No. 177, 104th Cong. 1995.

in cases where the plaintiff is unable to prove actual damages because, for example, the defendant engages in deceptive record-keeping." See Senate Section-by-Section analysis, CONG. REC. S12085 (Aug. 9, 1995).[6] Courts have wide latitude in determining the amount of statutory damages to award.[7]

Plaintiffs are facing the next generation of counterfeiting schemes—the operation of multiple illicit, online storefronts by anonymous counterfeiters—a structure specifically designed to avoid liability. The Defaulting Leong Defendants, and countless infringers like Defendant Leong—and Defendant Anand is chief among them—have built businesses around illicit storefronts selling counterfeit and infringing goods from overseas locations. The Defaulting Leong Defendants and others will continue to come up with ways of masking his identity and selling counterfeit KAWS works of art for economic gain unless this cycle is broken—see Donnelly and Arkin Declarations.

Easy accessibility to the Defaulting Leong Defendants' counterfeit KAWS items via the Internet provides enhanced injury to the Plaintiffs. In <u>Veit</u>, <u>supra</u>, the record contained no evidence of the actual scope of defendant's sales or number of hits the Internet site received. However, the court held that "given the scope of the internet supermarket, such sale offerings are

---

[6] Statutory remedies are available to the Plaintiffs even if they have suffered no actual damages and the infringing defendant has earned no discernable profits. <u>Sara Lee Corp. v. Bags of New York, Inc</u>., 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999) holding "[D]efendants did not have any profits and plaintiff has failed to prove actual damages. Nevertheless, ... plaintiff may elect to recover statutory damages" [quotation and citation marks omitted]; <u>Playboy Enterprises, Inc. v. Universal Tel-A-Talk, Inc</u>., 1998 WL 767440, at *20 (E.D. Pa. Nov. 3, 1998).

[7] See <u>Coach Inc. v. Allen</u>, 2012 WL 2952890, at *23 (S.D.N.Y. July 19, 2012) ("Although the Lanham Act does not provide guidelines for courts to consider in awarding statutory damages, courts look to the analogous provision of the Copyright Act, which gives the court wide discretion to determine what amount of damages should be awarded within the minimum and maximum bounds proscribed under the Lanham Act.").

presumptively quite high…" Id., at 584.  The Veit court's 1992 opinion held that "The internet is used by more than 143 million Americans." Id., at 579.  30 years later, that number has now risen to over 307 million internet users in the United States alone.[8]

The Defaulting Leong Defendants have counterfeited, infringed and diluted both of Plaintiffs' two Registered Trademarks and Two Registered Copyrights.  Exs. 9 and 10 are an updated list of no less than 154 fake and counterfeit KAWS items sold and/or offered for sale by the Defaulting Leong Defendants (Arkin Decl. ¶¶609).  Plaintiffs have never authorized the Defaulting Leong Defendants (or any other Defendant) to reproduce, copy, distribute, sell, or offer for sale the KAWS items in Exs. 9 and 10 and nor have Plaintiffs authorized the Defaulting Leong Defendants (or any other Defendant) to use Plaintiffs' Registered Trademarks. Nonetheless, the Defaulting Leong Defendants knowingly imported, stored, sold and/or distributed no less than 154 fake and counterfeit KAWS items through their online storefronts https://www.thepenthousetheory.com/ and www.thepenthousecollective.com, as alleged in the Complaint (Ex. 1 ¶12).

A ***statutory*** award of $36,000,000.00 in damages for the Defaulting Leong  Defendants' ***multiple willful*** and ***malicious*** infringement, counterfeiting and dilution of Plaintiffs' three Registered Trademarks and two Registered Copyrights, is a fraction of what it could be if this case were litigated against the Defaulting Leong Defendants and the full extent of their infringement revealed. The damages amount is based on only the 154 fake and counterfeit

---

[8] See Arkin Decl. ¶10 and Ex. 12 which is a screen shot of:
https://www.statista.com/topics/2237/internet-usage-in-the-united-states/#topicOverview

See also Playboy Enters., Inc. v. Asia Focus Int'l, Inc., 1998 WL 724000, at *8 (E.D. Va. Apr. 10, 1998) ("The accessibility of the infringing Web sites, the defendants' successful number of hits and the blatant display of PEI's trademarks are all factors that compound PEI's damage."

KAWS items sold and/or offered for sale to date without the benefit of any discovery. For each of the counterfeit and fake KAWS items, there are sometimes multiple versions of the same counterfeit and fake KAWS items offered for sale (See Arkin Decl. ¶6-7). The retail selling price of all the 154 counterfeit KAWS items sold or offered for sale by the Defaulting Leong Defendants totals $63,749.99 (Arkin Decl. ¶ 9). But Plaintiffs have no way of calculating or discovering how many counterfeit KAWS items were sold by the Defaulting Leong Defendants or the amount of their profits. As discussed above, that alone is the reason Congress enacted the statutory remedies of 15 U.S.C. § 1117(c).

The Court should consider the point of sale in which the Defaulting Leong Defendants sold the fake counterfeit KAWS items in Exs. 9 and 10, which is relevant in the discussion of statutory damages, especially when it comes to the sale of counterfeit goods over the Internet. Hundreds of millions of people use the Internet every day and a counterfeiter's potential customer base is countless. Due to the Defaulting Leong Defendants' willful failure to meaningfully participate in the discovery process, Plaintiffs are unable to determine the actual scope of the Defendant Leong's sales or the number of hits his website received.

The distribution of these KAWS counterfeit works has caused real and substantial harm to Plaintiffs—see at length Donnelly Decl. Plaintiffs actively seek to **_legally_** **_create_** and sell authentic and legitimate works of art to galleries, museums, private collectors and others, bearing Plaintiffs world renowned Registered Trademarks and Copyright. The sale of counterfeit KAWS purported works of art undercuts Plaintiffs' ability to create and sell authentic works of art and grossly damages the perceived value of legitimate works of art created by Plaintiffs, thereby damaging Plaintiffs' business reputation and good will. (Donnelly Decl.; Arkin Decl.; Ex. 1 Compl. ¶ 25-31, 32-39, 82-86, 121-128, 164-168, 171-177, 181-190).

Furthermore, the Defaulting Leong Defendants' illegal activities need to be deterred. The

default judgment entered in this action should discourage the Defaulting Leong Defendant ***and***

***others***—**including** the Anand Defendants—from engaging in trademark and copyright

infringement and counterfeiting.  Statutory damages are intended to serve as both compensatory

and punitive relief for plaintiffs who have been harmed by a willful infringer. See Sara Lee

Corp., supra at 165. Statutory damages also serve as a deterrent against future infringement. See

Silhouette Int'l Schmied AG v. Chakhbazian, 2004 WL 2211660, at *6 (S.D.N.Y. Oct. 4, 2004);

Rolex Watch U.S.A., Inc. v. Brown, 2002 WL 1226863, at *8 (S.D.N.Y. June 5, 2002).

"The purpose of § 1117 of the [Lanham] Act is to take the incentive out of counterfeiting

and strengthen the civil remedies against counterfeiters." Coach, Inc. v. Allen, 2012 WL

2952890, at *11 (S.D.N.Y. July 19, 2012) quoting Senate Report No. 117 (104th Cong. 1995);

see also Burberry Ltd. v. Euro Moda, Inc., 2009 WL 4432678, at *15 (S.D.N.Y. Dec. 4, 2009)

("[W]here, as here, a defendant is shown to have acted willfully, a statutory award should

incorporate not only a compensatory, but also a punitive component to discourage further

wrongdoing by the defendants and others.") (internal quotations and citations omitted); Broad.

Music, Inc. v. PAMDH Enters., 2014 WL 2781846, at *8 (S.D.N.Y. June 19, 2014) (highlighting

the deterrent effect on the infringer and third parties as a factor in awarding statutory damages

for copyright infringement).

In similar actions, courts in this District have granted plaintiffs the maximum statutory

amount for willful trademark counterfeiting. See, e.g., Coach, supra at *28-29 awarding $44

million in statutory damages for trademark infringement; True Religion Apparel v. Xiaokang Lei

D/B/A Truereligionjeans40utlet.com, No. 11-Civ-8242 (HB) (S.D.N.Y. Mar. 12, 2012) (Ex. 14)

awarding maximum statutory damages of $2,000,000.00 for each trademark infringement

totaling $8,150,000.00; Yahoo! Inc. v. XYZ Cos., 872 F. Supp. 2d 300, 308 (S.D.N.Y. 2011)

awarding $27 million in statutory damages; North Face Apparel Corp. v. Fujian Sharing Imp. &

Exp. Ltd, No. 10-Civ-1630 (AKH) (S.D.N.Y. Sept. 13, 2010) (Ex. 15) awarding maximum

statutory damages of $2,000,000.00 for each trademark infringement totaling $78 million in

statutory damages; Gucci Am., Inc. v. Curveal Fashion, 2010 WL 308303, at *14 (S.D.N.Y. Jan.

20, 2010) awarding plaintiffs $13,500,000.00 in statutory damages.

Plaintiffs' request for statutory damages is reasonable and appropriate in this case.

### III.     Statutory Damages Under the Copyright Act

The Copyright Act provides for statutory damages in an amount not less than $750 or

more than $30,000 per copyright infringed, as the court considers just—see 17 U.S.C. §

504(c)(1).   Pursuant to 17 U.S.C. § 504(c)(1), Plaintiffs are entitled to statutory damages up to

$60,000.00 ($30,000.00 × 2 Registered Copyrights = $60,000.00).   In cases of ***willful*** copyright

infringement, a court may increase the award up to $150,000 per copyright infringed—17 U.S.C.

§ 504(c)(2).   Pursuant to 17 U.S.C. § 504(c)(2), Plaintiffs are entitled to statutory damages up to

$300,000.00 ($150,000.00 × 2 Registered Copyrights = $300,000.00).   The "willful" analysis is

the same as under the Lanham Act—see Section D.(I.) and D.(II.) above and Philip Morris,

Kepner-Tregoe, N.A.S. Imp., Fitzgerald Pub. Co., Tiffany (NJ), and Maletier, supra.

Courts have wide discretion in setting an amount of statutory damages for copyright

infringement. See Fitzgerald Publ'g Co. v. BaylorPubl'g Co., 807 F.2d 1110, 1116 (2d Cir.

1986).   Courts, including the Second Circuit, have upheld awards of maximum statutory

damages for willful copyright infringement. See Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283,

288 (2d Cir. 1999) upholding then-maximum statutory damages award of $100,000; Superior

Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., 74 F.3d 488, 496 (4th Cir. 1996)

upholding then-maximum statutory damages award of $100,000 per infringed work; True

Religion, supra (Ex. 14), awarding plaintiffs maximum statutory damages for willful copyright

infringement.

## IV.     Double Recovery

Plaintiffs are aware of the ***general*** rule that a plaintiff may not obtain a double recovery where the damages for Lanham Act (trademark) and Copyright Act (copyright) violations are coextensive and must elect between the two. <u>MuscleTech Research and Dev., Inc. v. East Coast Ingredients, LLC</u>, 2007 WL 655755 at *5 (W.D.N.Y. Feb. 26, 2007) holding "Plaintiffs may not … recover separate awards for both its trademark violations and copyright infringement claims but, rather, must elect between the two theories to avoid a double recovery.[9]  The gravamen of this action against the Defaulting Leong Defendants is their multiple violations of the Lanham Act.  Of the five causes of action against the Defaulting Leong Defendants, four are for Lanham Act violations (1st, 4th, 7th and 8th causes of action) and one is for Copyright Act violation (9th cause of action).  Indeed of the 11 causes of action against ***all*** of the Defendants, eight are for Lanham Act violations (1st through 8th causes of action) and three for Copyright Act violations (9th through 11th causes of action).

Accordingly, without any prejudice to Plaintiffs and reserving all of Plaintiffs' rights, remedies and defenses, none of which are waived, Plaintiffs elect the Lanham Act statutory remedies for purposes of the subject default judgment motion. See <u>Cengage Learning, Inc. v Globonline SDN</u>, 2018 WL 1989574 (S.D.N.Y. Apr. 25, 2018) collecting cases and holding that where damages for trademark and copyright violations are co-extensive, it is appropriate to

---

[9] See, <u>Joseph J. Legat Architects, P.C. v U.S. Dev. Corp</u>., 1991 WL 38714, at *14 and n.8 (N.D. Ill. Mar. 20, 1991) requiring plaintiff to choose relief under Lanham or Copyright Act "to eliminate any inconsistency that may result between the two counts and to prevent double recovery;" <u>Tu v. Tad System</u>, 2009 WL 2905780 (E.D.N.Y. 2009); <u>Twentieth Century Fox Film Corp v. 316 W. 49th Street Pub. Corp</u>., 1990 WL 165680, at *6 (S.D.N.Y. Oct. 23, 1990) (where identical acts violate both copyright and trademark laws, damages need be determined only once); <u>Manufacturers Techs., Inc. v. Cams, Inc</u>., 728 F. Supp. 75, 85 (D. Conn. 1989) (separate awards under Lanham and Copyright Acts improper for the same "wrong").

award damages under the statutory violation which is the "substantial cause"[10] or "gravamen"[11] of plaintiff's damages.[12]

### E.     AN EVIDENTIARY HEARING TO DETERMINE STATUTORY DAMAGES IS *NOT* REQUIRED.

Plaintiffs' request for an award of statutory damages does ***not*** require the Court to conduct an evidentiary hearing. Courts have awarded damages post-default without an evidentiary hearing based upon affidavits submitted by the plaintiff. See Church & Dwight Co. v. Kaloti Enters. of Mich., 697 F. Supp. 2d 287, 295 (E.D.N.Y. 2009) ("Where the issue is statutory damages, inquest by paper record is particularly appropriate."); Rolex Watch U.S.A., Inc. v. Brown, 2002 WL 1226863, at *5 (S.D.N.Y. June 5, 2002) ("Here, of course, the issue is statutory damages, making it even more appropriate to hold the inquest on a paper record."); Tamarin v. Adams Caterers, Inc., 3 F.3d 51, 54 (2d Cir. 1993) holding it unnecessary to conduct a hearing to assess post-default damages where the court relied on affidavits and documentary evidence). Accordingly, a hearing to award statutory damages is not necessary.

### F.     THE DEFAULTING LEONG DEFENDANTS SHOULD BE PERMANENTLY ENJOINED.

Plaintiffs also respectfully request that the Court permanently enjoin the Defaulting Leong Defendants from any further counterfeiting and infringement of the Plaintiffs' Registered Trademarks and Registered Copyrights.   Pursuant to the Lanham Act—15 U.S.C. § 1116[13] and

---

[10] Cenage, supra at 2.

[11] Evony, LLC v Holland, 2011 WL 1230405, at *5 (W.D. Pa. Mar. 31, 2011).

[12]  See also Cengage Learning, Inc. v Bhargava, 2017 WL 9802833, at *4 (S.D.N.Y. Aug. 22, 2017), report and recommendation adopted sub nom. Cengage Learning, Inc. v Globonline SDN, 2018 WL 1989574 (S.D.N.Y. Apr. 25, 2018); Cengage Learning, Inc. v. Shi, 2017 WL 1063463, at *3 (S.D.N.Y. Mar. 31, 2017); ]

[13] 15 U.S.C.A. § 1116(a) provides, in pertinent part:

the Copyright Act—17 U.S.C. § 502(a))[14] a plaintiff is entitled to a permanent injunction to prevent any future trademark infringement by a defendant. Injunctive relief is one of the standard remedies in a trademark counterfeiting action. <u>William R. Warner & Co. v. Eli Lilly & Co.</u>, 265 U.S. 526, 532-33 (1924).

### *Exhibit 13 is a Proposed Default Judgment And Permanent Injunction Order.*

Circuit Courts hold that permanent injunctive relief is proper even if there is no evidence that a defendant is currently engaging in illegal sales. <u>Polo Fashions, Inc. v. Dick Bruhn, Inc.</u>, 793 F.2d 1132, 1135-36 (9th Cir. 1986) ("If the defendant sincerely intends not to infringe, the injunction harms them little, if they do, it gives [plaintiff] substantial protection of its trademark."); <u>Hard Rock Café Licensing Corp. v. Concession Servs., Inc</u>., 955 F.2d 1143, 1151 (7th Cir. 1992) (holding same); see also <u>Vuitton Et Fils, S.A. v. Crown Handbags</u>, 492 F. Supp. 1071, 1077 (S.D.N.Y. 1979) (holding the "mere possibility" of infringement sufficient to warrant a permanent injunction), aff'd, 622 F.2d 577 (2d Cir. 1980).  In <u>Polo Fashions</u>, supra, the court reversed the district court's denial of a permanent injunction against the retailer of shirts bearing unauthorized copies of the "Polo" logo.  In doing so, the 9th Circuit held that a trademark plaintiff "entitled to relief, is entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in its favor as the innocent producer and against the [defendants], which has

---

"The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."

[14] 17 U.S.C. § 502(a)) provides, in pertinent part:

 "(a) Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."

shown by its conduct that, it is not to be trusted." Id. at 1135. The court held that a plaintiff need not introduce evidence of a threat of future harm since defendants had willfully violated Polo's trademark rights. "If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives Polo substantial protection of its trademark." Polo Fashions, at 1135-36. See Hard Rock, supra at 1151, (same and referencing Polo Fashions, supra).

"A court may issue an injunction when the moving party establishes that there is a statutory basis for relief and that it meets the prerequisites for the issuance of an injunction. The second of these conditions requires that a party seeking an injunction demonstrate irreparable harm and the absence of an adequate remedy at law." TigerCandy Arts, Inc. v. Blairson Corp., 2012 WL 760168, at *20-21 (S.D.N.Y. Feb. 23, 2012). The first requirement is clearly met because both the Lanham Act (15 U.S.C. § 1116(a)) and the Copyright Act (17 U.S.C. § 502(a)) vest the Court with the power to grant injunctive relief. See TigerCandy, supra at *21 (holding first requirement met where injunctive relief sought to prevent or restrain infringement of a copyright and/or trademark).

The second requirement is also satisfied because the Defaulting Leong Defendants, through their default, have admitted to counterfeiting and infringing Plaintiffs' Registered Trademarks and Registered Copyrights. As a result of the counterfeiting and infringement, Plaintiffs have been harmed and will continue to be harmed, for which they have no adequate remedy at law. The Defaulting Leong Defendants have engaged in mass distribution of counterfeited and infringing KAWS works of art. These counterfeits and fakes deprive Plaintiffs of lost revenues and injure Plaintiffs' name, reputation, and goodwill (Donnelly Decl; Arkin Decl.).

Given the Defaulting Leong Defendants' flagrant and repeated counterfeiting and infringement and indifference to this lawsuit, Plaintiffs and this Court cannot be sure that the

Defaulting Leong Defendants will simply ignore an award of damages and continue to sell counterfeit KAWS items under different seller names or aliases—that is a proven counterfeiter's business model. Accordingly, Plaintiffs' request for a permanent injunction enjoining the Defaulting Leong Defendants from continued infringing conduct, should be granted. In sum, all of the factors weigh in favor of a permanent injunction.

## CONCLUSION

The Defaulting Leong Defendants have willfully infringed Plaintiffs' Registered Trademarks and Registered Copyrights in association with their distribution of illegal KAWS merchandise. The facts are clear and Plaintiffs are entitled to a default judgment as a matter of law.

The Defaulting Leong Defendants' counterfeiting and infringement of Plaintiffs' Registered Trademarks and Registered Copyrights have irreparably harmed and continue to harm Plaintiffs. The Defaulting Leong Defendants have chosen to ignore this lawsuit and by refusing to engage in discovery, have chosen instead to hide from this Court and from Plaintiff. Without entry of the requested relief, the Defaulting Leong Defendants will more than likely continue to sell infringing counterfeit and infringing copies of Plaintiffs' works of art over the Internet with impunity. Accordingly, Plaintiffs, respectfully request that the Court enter a default judgment against the Defaulting Leong Defendants, award statutory damages of $36,000,000.00 (thirty six million dollars) plus prejudgment interest, and enter an order permanently enjoining the Defaulting Leong Defendants from counterfeiting and infringing Plaintiffs' trademarks and

copyrights.

Dated: New York, New York
        February 23, 2023

                                    Respectfully submitted,
                                    AARON RICHARD GOLUB, ESQUIRE, P.C.
                                    Attorneys for Plaintiffs


                                    _____s/Nehemiah S. Glanc_____

                                    BY:    Nehemiah S. Glanc
                                           24 East 64th Street – Fifth Floor
Of Counsel:                                New York, New York 10065
        Aaron Richard Golub                ph: 212-838-4811
        Nehemiah S. Glanc                  fx: 212-838-4869