UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
BRIAN DONNELLY a/k/a KAWS and KAWS INC.,

                          Plaintiffs,                      21-cv-9562 (PKC)

     -against-                                 ORDER

JONATHAN ANAND, et al.,

                          Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiffs Brian Donnelly and KAWS, Inc. move for the entry of default judgment against defendants Dylan Jovan Leong Yi Zhi, who is a natural person residing in Singapore, and The Penthouse Theory and The Penthouse Collective, both of which are Singapore corporations with their principal places of business in Singapore. The Court will refer to Leong, The Penthouse Theory and The Penthouse Collective collectively as the "Singapore Defendants."

        For the reasons that will be explained, the Court concludes that plaintiffs are entitled to the entry of default judgment as to liability. The Court will award statutory damages jointly and severally against the Singapore Defendants in the amount of $900,000 and grant plaintiffs' application for permanent injunctive relief.

I.       Procedural History.

        This action commenced when plaintiffs filed a complaint on November 18, 2021. (ECF 1.) Plaintiffs' sculptures, designer toys and other products are well-known and highly prized within a category of sophisticated consumers. (Id. ¶¶ 1, 20-24, 30.) An original KAWS painting has sold at auction for $14.8 million. (Id. ¶ 1.) KAWS also has collaborated with the

Uniqlo store chain on apparel that retailed for less than $50.  (Id.)  The Complaint brings claims of counterfeiting, trademark infringement and dilution, and copyright infringement directed to defendants' sales of counterfeit KAWS goods.  (ECF 1.)

On January 25, 2022, a notice of appearance was filed on behalf of the Singapore Defendants.  (ECF 25.)  On February 15, 2022, the Singapore Defendants filed a motion to dismiss, which asserted deficient service of process, lack of personal jurisdiction and forum non conveniens.  (ECF 41.)  The Court denied the motion in a twenty-page Opinion and Order filed on September 22, 2022.  (ECF 85; Donnelly v. Anand, 2022 WL 4385901 (S.D.N.Y. Sept. 22, 2022).)

Counsel to the Singapore Defendants moved to withdraw on October 17, 2022.  (ECF 89.)  Counsel stated that the Singapore Defendants had instructed him not to file an answer and that the Singapore Defendants had failed to pay his fees.  (ECF 90.)  The Court granted the motion to withdraw in an Order of November 14, 2022.  (ECF 91.)  The Order also scheduled an in-person case management conference for January 17, 2023 at 2 p.m.  (Id.)  In capitalized, boldfaced type, the Order stated as follows:

> **DEFENDANT THE PENTHOUSE THEORY AND THE PENTHOUSE COLLECTIVE APPEAR TO BE ENTITIES AND NOT NATURAL PERSONS AND THEREFORE ARE NOT PERMITTED TO APPEAR IN THIS COURT, EXCEPT THROUGH AN ATTORNEY WHO IS ADMITTED TO PRACTICE IN THIS COURT.  DEFENDANTS THE PENTHOUSE THEORY AND THE PENTHOUSE COLLECTIVE SHALL CAUSE A NOTICE OF APPEARANCE TO BE FILED BY AN ATTORNEY ADMITTED TO PRACTICE IN THIS COURT ON OR BEFORE JANUARY 4, 2023 AND SAID ATTORNEY SHALL APPEAR AT THE JANUARY 17, 2023 2:00 P.M. HEARING.  FAILURE TO COMPLY WILL RESULT IN STRIKING THE NON-APPEARING DEFENDANT'S ANSWER AND THE ENTRY OF A DEFAULT JUDGMENT AGAINST IT.**

> **DYLAN JOVAN LEONG YI ZHI SHALL APPEAR AT THE JANUARY 17, 2023, 2 P.M. CONFERENCE IN PERSON OR BY AN ATTORNEY ADMITTED TO PRACTICE BEFORE THIS COURT. FAILURE TO COMPLY WILL RESULT IN STRIKING DYLAN JOVAN LEONG YI ZHI'S ANSWER AND THE ENTRY OF A DEFAULT JUDGMENT AGAINST HIM.**

(Id.)

In an email sent on January 13, 2023, Leong requested adjournment of the January 17 conference, or, alternatively, permission to participate by telephone. (ECF 93.) The Court again stated that Leong was not able to act on behalf of the two Singapore entities, denied the adjournment request, and granted Leong's application to participate by phone. (Id.)

At the conference of January 17, 2023, Leong purported to appear on behalf of himself and the two Singapore entities. (ECF 104 at 2.) The Court once again stated that the entities could only appear through counsel, recounted the procedural history as it pertained to the Singapore Defendants and read aloud from the above-quoted language of the November 14 Order. (Id. at 3-4.) The Court noted that it had received no communication from any lawyer on behalf of either Singapore entity, and that none of the three Singapore Defendants, including Leong, had filed an Answer. (Id. at 5.) Leong stated that, in essence, he is unable to afford counsel and that his ability to travel is constrained by his academic responsibilities as a student. (Id. at 6-7.) He stated that the claims against him are without merit and that he wished to resolve them. (Id. at 7.) In response, the Court noted that none of the Singapore Defendants, including Leong, had answered the Complaint or requested an extension of time to do so, and stated that plaintiffs were free to move for the entry of default judgment. (Id. at 9.)

The Clerk issued a Certificate of Default against the Singapore Defendants on January 26, 2023. (ECF 101.) Plaintiffs filed this motion for entry of default judgment on

February 23, 2023.  (ECF 108.)  An affidavit of service dated February 28 states that the Singapore Defendants were served with plaintiffs' motion papers through USPS Priority Express International Mail.  (ECF 113.)  None of the Singapore Defendants has since appeared, responded to the motion or answered the Complaint.

For the reasons set forth in the Opinion and Order of September 22, 2022, the Court is satisfied that the Singapore defendants were adequately served with process and that the Court has personal jurisdiction over them.  (ECF 85.)  The Court's subject matter jurisdiction is adequately alleged under the Lanham Act and the Copyright Act.  There is no suggestion that Leong is an infant or an incompetent.  (Glanc Dec. ¶ 11.)

All three Singapore Defendants have defaulted by failing to answer the Complaint.  The Penthouse Theory and The Penthouse Collective have separately defaulted by failing to appear through an attorney after being expressly advised to do so.  "'It is settled law that a corporation may not appear in a lawsuit against it except through an attorney, and that, where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55, Fed. R. Civ. P.'"  Grace v. Bank Leumi Trust Co. of NY, 443 F.3d 180, 192 (2d Cir. 2006) (quoting SEC v. Research Automation Corp., 521 F.2d 585, 589 (2d Cir. 1975)).

II.     Plaintiffs' Motion for Entry of Default Judgment Is Granted as to Liability.

The Complaint and plaintiffs' submissions in connection with this motion adequately establish the Singapore Defendants' liability under the Lanham Act and the Copyright Act.  When a defendant defaults, a complaint's well-pleaded allegations are deemed admitted.  See, e.g., Vera v. Banco Bilbao Vizcaya Argentaria, S.A., 946 F.3d 120, 135 (2d Cir. 2019).  To establish liability for copyright infringement, a plaintiff must prove ownership of a

valid copyright and "'copying of constituent elements of work that are original.'" Boisson v. Banian, Ltd., 273 F.3d 262, 267 (2d Cir. 2011) (quoting Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). A plaintiff asserting trademark infringement must demonstrate ownership in a valid mark and that the defendant's actions are likely to cause "confusion of any kind" about the mark. Hamilton Int'l Ltd. v. Vortic LLC, 13 F.4th 264, 271 (2d Cir. 2021). For a trademark dilution claim, a plaintiff must demonstrate that the defendant has blurred the distinctiveness of a famous mark. See, e.g., Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 110 (2d Cir. 2009).

Plaintiffs have demonstrated that they own three trademarks registered with the USPTO and two copyrights registered with the Copyright Office. (Compl't Exs. 1-3.) The Penthouse Theory, which is plausibly alleged to be owned and controlled by Leong, offered for sale on thepenthousetheory.com at least 45 items that infringed upon plaintiffs' copyrights and trademarks, and represented them as "4FT KAWS COLLECTION." (Compl't ¶¶ 67-68.) Plaintiffs state that since filing the Complaint, they have identified a total of 154 counterfeit goods sold by the Singapore Defendants, specifically including plush dolls, vinyl figures and sculptures. (Arkin Dec. ¶¶ 7-9.) The FAQ page of The Penthouse Theory Website included the following:

> ARE YOUR ITEMS REWORKED?
>
> Our items are custom hand-reworked reproductions due to the low prices we are able to provide.

(Compl't ¶ 70.) This language demonstrates that Leong and The Penthouse Theory knew and intended to sell counterfeit and infringing goods.

On or about September 28, 2021, The Penthouse Theory posted to its Instagram account an "URGENT" announcement about a "scam syndicate" run by a competing website

called "Penthouse Theory." (Compl't ¶¶ 71-72.) The Penthouse Theory announced that going forward, it would do business as The Penthouse Collective, at www.thepenthousecollective.com. (Compl't ¶ 74.) At the time the Complaint was filed, both sites were operational and sold the same infringing goods. (Compl't ¶ 75.) Plaintiffs submit images of 154 purportedly infringing and counterfeit KAWS items offered for sale by the Singapore Defendants. (Glanc Dec. Exs. 9-10.)

Plaintiffs have established their entitlement to the entry of default judgment as to liability against the Singapore Defendants. The Complaint's well-pleaded allegations, the exhibits annexed thereto, and the exhibits submitted in connection with this motion establish plaintiffs' registered trademarks and copyrights in the KAWS goods, and that defendants sold unauthorized, infringing and counterfeit KAWS goods. Plaintiffs' motion will therefore be granted as to liability.

III.    Plaintiffs Are Awarded Statutory Damages Totaling $900,000.

Plaintiffs also seek an award of statutory damages and a permanent injunction. They do not seek an inquest and assert that a hearing is "not necessary" on the application. (ECF 112 at 19.) Based on the Singapore Defendants' willfulness, plaintiffs seek total damages of $36,000,000. (Id. at 8.)

The Lanham Act and Copyright Act both provide for statutory damages in lieu of actual damages. 17 U.S.C. § 504(c); 15 U.S.C. § 1117(c). Plaintiffs acknowledge that an award of damages under both the Lanham Act and Copyright Act risks double recovery, and they therefore seek damages under the Lanham Act only. (ECF 112 at 18-19.)

The Lanham Act provides that when a defendant has sold and distributed goods bearing a counterfeit mark, a plaintiff may be awarded statutory damages "not less than $1,000

or more than $200,000 per counterfeit mark per type of goods or services . . . ." 15 U.S.C. § 1117(c)(1). Where use of the counterfeit mark is willful, a court may award "not more than $2,000,000 per counterfeit mark per type of goods or services . . . ." Id. § 1117(c)(2).

"Courts have recognized that statutory damages are appropriate in the context of a default judgment, given the lack of disclosure available from the defaulting party." JUUL Labs, Inc. v. Smoke Depot of Liu Inc., 2022 WL 4129437, at *1 (S.D.N.Y. Sept. 12, 2022) (Román, J.). Damages should be awarded to adequately compensate the plaintiff and justly punish any counterfeiter. Id. Courts have "broad discretion" to determine an award that "the court considers just," but statutory damages also "should bear some relation to actual damages suffered." Id. at *2-3 (quotation marks omitted). Even when a defendant's counterfeiting is willful, "small-scale Lanham Act violations" typically do not warrant maximum statutory awards. Id. at *3 (awarding $20,000 for each willfully infringed mark).

Plaintiffs have adequately demonstrated the willfulness of the Singapore Defendants. Plaintiffs have submitted evidence of cease-and-decease letters and takedown notices sent to The Penthouse Theory in 2020. (Glanc Dec. Ex. 11.) As previously noted, The Penthouse Theory website publicly described its KAWS products as "hand-reworked reproductions" made available at low prices. (Compl't ¶ 70.) Plaintiffs have demonstrated that the Singapore Defendants knowingly intended to sell counterfeit KAWS goods.

The Lanham Act grants an award of statutory damages "per counterfeit mark per type of goods . . . ." 15 U.S.C. § 1117(c) (emphasis added). Plaintiffs have demonstrated their registration of three marks: the word mark "KAWS," a design mark consisting "of two 'X's, with the lines of each 'X' tapered at the top and rounded with semi-circles at the ends," and a design mark that "consists of a head with two letters 'X' in the place of eyes, two sets of ear-like

appendages, and indentations in the chin area." (Glanc Dec. Ex. 2.) Plaintiffs assert that each counterfeit product sold by the Singapore Defendants included two infringing marks. The Court has reviewed the images of the 154 infringing goods identified by plaintiffs, which all appear to be falsely identified as KAWS products and contain some variation of the distinctive "X X" mark or the distinctive, cartoon-like head mark. (Glanc Dec. Ex. 9.)

Plaintiffs assert that the Singapore Defendants sold nine types of infringing goods: plush dolls, vinyl figurines, ashtrays, skateboards, canvases, posters, sculptures, rugs and neon lights. (Arkin Dec. ¶ 8; Glanc Dec. Exs. 9, 10.) Plaintiffs seek the maximum available statutory damages for willful counterfeiting: Each "type of good[]" includes two infringing marks and plaintiffs seek $2,000,000 per mark, amounting to $4,000,000 multiplied by nine types of goods, for a total of $36,000,000. (ECF 112 at 8.)

Plaintiffs have submitted some evidence going toward actual damages. Plaintiff Donnelly has submitted a declaration stating that the sale of lower-quality counterfeits damages his reputation among the buying public and art aficionados, and that counterfeit goods often transact on a secondary auction market. (Donnelly Dec. ¶ 5.) He states that counterfeit goods chill the market for his original work because purchasers fear inadvertently acquiring a counterfeit. (Id. ¶ 8.) Donnelly states that plaintiffs spend more than $40,000 per year to identify counterfeit goods and disseminate takedown notices. (Id. ¶ 9.)

David Arkin, who has the job title of project assistant at KAWS Inc., states that the 154 counterfeit items offered for sale by the Singapore Defendants were marketed at prices between $59 and $3,299. (Arkin Dec. ¶ 9.) "The total retail price of all 154 fake KAWS items is $63,749.99." (Id.) Arkin describes KAWS Inc. as "a relatively small company with only nine

full time employees." (Id. ¶ 11.)  Like Donnelly, he emphasizes the annual expense of the company's anticounterfeiting measures.  (Id. ¶ 11.)

The Court concludes that statutory damages in the total amount of $900,000 is appropriate to justly punish the Singapore Defendants and compensate plaintiffs.  This reflects an award of $50,000 for each of two infringing marks across nine categories of goods.  15 U.S.C. § 1117(c).  It is a multiplier of approximately 14.1 against the total retail price of the counterfeit goods that plaintiffs have identified and also accounts for the likelihood that the Singapore defendants have sold other, unidentified counterfeit KAWS items.  The damages award also accounts for the effect that the Singapore Defendants' counterfeiting has upon the market for plaintiffs' goods, including the dilution of the products' distinctiveness and disruption in the market for KAWS goods.  The Court concludes that this award is sufficient to advance the goals of punishing the Singapore Defendants' willful counterfeiting and compensating plaintiffs for damages attributable to the Singapore Defendants.

IV.     Plaintiffs' Application for Permanent Injunctive Relief Will Be Granted.

The Lanham Act and Copyright Act both allow for injunctive relief.  15 U.S.C. § 1116(a); 17 U.S.C. § 502(a).  Plaintiffs' application for injunctive relief will be granted, as set forth in the separate Default Judgment and Permanent Injunction Order.

CONCLUSION.

Plaintiffs motion for entry of default judgment against defendants Dylan Jovan Leong Yi Zhi, The Penthouse Theory and The Penthouse Collective is GRANTED.  The Clerk is directed to terminate the motion. (ECF 108.) Judgment and relief are set forth in a separate Order.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       May 2, 2023