Exhibit 10

Exhibit 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X Civil Action No. 1:21-cv-09562-PKC

BRIAN DONNELLY AKA KAWS and
KAWS INC.,

Plaintiffs,

**PLAINTIFFS' FIRST SET
OF DOCUMENT REQUESTS**

-against-

JONATHAN ANAND, both individually and doing
business as HOMELESS PENTHOUSE,
PENTHOUSE THEORY, HIDEOUT.NYC,
INCOGNITO and YOUNG NEON, DAVID KANG,
DYLAN JOVAN LEONG YI ZHI,
THE PENTHOUSE THEORY,
THE PENTHOUSE COLLECTIVE and
OSELL DINODIRECT CHINA LIMITED,

Defendants.

------------------------------------------------------------------X

PLEASE TAKE NOTICE that pursuant to Rules 26(b) and 34 of the Federal Rules of

Civil Procedure ("FRCP") and pursuant to the Civil Case Management Plan and Scheduling

Order dated January 17, 2023 ("Civil Case Management Plan"), Plaintiffs Brian Donnelly AKA

KAWS and Kaws Inc., through their attorneys Aaron Richard Golub, Esquire, P.C., hereby

demands that Defendants Jonathan Anand, Both Individually And Doing Business As Homeless

Penthouse, Penthouse Theory, Hideout.NYC, Incognito and Young Neon, produce the

documents and information designated herein that are in their possession, custody and/or control

for inspection and copying at the offices of Aaron Richard Golub, Esquire, P.C., 24 East 64th

Street, Fifth Floor, New York, New York 10065 within 30 days of the date hereof.

## INSTRUCTIONS

1.     Where an objection is made to any document request or sub-part thereof, the

objection shall state with specificity all grounds.  Any ground not stated in an objection shall be

waived.

2.      Pursuant to Local Rule 26.2, where a claim of privilege is asserted in objecting to any document request or sub-part thereof, and an answer is not provided on the basis of such assertion, the party or attorney asserting the privilege shall in the objection to the document request or sub-part thereof: (i) Identify the nature of the privilege (including work product) which is being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and (ii) Provide the following information in objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

(A)      For documents: (i) The type of document, _e.g._, letter or memorandum; (ii) The general subject matter of the document; (iii) The date of the document; and (iv) Such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees and recipients to each other; and

(B)      For oral Communications: (i) The name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) The date and place of communication; and (iii) The general subject matter of the communication.

3.      These document requests shall be deemed continuing so as to require further and supplemental response if Defendants receive or discover additional information subsequent to the date of this request, pursuant to FRCP 26(e).

## DEFINITIONS

These document requests incorporate by reference the Uniform Definitions to be used in Discovery Requests as set forth in Local Rule 26.3. The following definitions and instructions shall also apply:

1.  The terms "presently" and "to the present" shall mean as of or through the date of the response to these document requests.

2.  The term "person" or "persons" shall mean the plural as well as the singular and includes any natural person, corporation, company, firm, partnership, association, joint venture, government entity or any other form of organization, association or entity.

3.  The term "identify" or "identity of," when used with respect to a natural person, shall mean to state the full name of the person identified, the person's job title, the name and address of the person's employer and the person's present or last known business and home addresses.

4.  The term "identify" or "identity of," when used with respect to a document, as that term is hereinafter defined, shall mean to state the date appearing on such item, the full name of the person sending or transmitting the same, the sender's job title, the name and address of the recipient and a brief statement of the subject matter of such item.

5.  The term "Document" or "Documents" shall have the meaning ascribed to them in Rule 34 of the FRCP, and shall include, without limitation, the original and any non-identical copy, regardless of origin or location, and regardless of whether it exists in hard print or electronic media, of any text message, e-mail, book, pamphlet, periodical, advertisement, promotion, letter to the trade, catalog, letter, opinion, report, electronic mail message, facsimile, photocopy, telegram, cable, telex correspondence, report, record, notebook, sketch, blueprint,

manual, handwritten note, contract, agreement, manuscript, minutes, intra-corporate communication, bulletin, brochure, circular, instructions, memorandum, notice, working paper, diary, chart, paper, graph, laboratory record, computer printout, magnetic or optical media, work assignment, print tracing, drawing, survey, photograph, microfilm, index, data sheet, data processing card, audio or video recording, sketch or notes of or relating to any telephone or other conversation, or any other written, recorded, transcribed, filmed or graphic material, however produced or reproduced, which is or has been in Plaintiff's possession, control or custody, or available to Plaintiff, or of which Plaintiff has knowledge.

6.      As used herein, "thing" or "things" shall mean any item whatsoever of a tangible nature other than documents.

7.      The term "Communication" or "Correspondence" shall mean any contact or act by which any information or knowledge is transmitted or conveyed between two or more persons and shall include, without limitation, written contact by such means as text messages, letters, memoranda, telegrams, telexes, facsimiles and electronic mail messages, and any oral contact by such means as face-to-face meetings, video teleconferences and telephone conversations, which is or has been in Plaintiff's possession, control or custody, or available to Plaintiff, or of which Plaintiff has knowledge.

8.      The term "day" or "date" shall mean the exact day, month and year, if ascertainable, or if not, the best available approximation, including the relationship to other events.

9.      The term "identify,"

    (A)      When used with reference to a person (as defined above) shall mean to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in

4

accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person; and

(B)  When used with reference to a document (as defined above) shall mean, in addition to the meanings ascribed to it by Local Civil Rule 26.3(c)(4), to give and identify (as defined in said local rule) to the extent known:

      i.      The custodian;

      ii.      The location and general description of the document;

      iii.      The type of document;

      iv.      The general subject matter;

      v.      The date of the document; and

      vi.      The author(s), addressee(s) and recipient(s).

In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy FRCP 33(d).

10.  The term "Third Party" shall mean and refer to any person (as defined above) other than Plaintiff, and Defendants.

11.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

12.  The use of the singular form of any word shall include the plural and vice versa.

13.  The terms "all," "any" and "each" shall each be construed as encompassing any and all.

14.  "Among" shall include "between," and "between" shall include "among."

15.  "Concerning" shall mean relating to, referring to, pertaining to and/or concerning.

16.  The term "BD" means Plaintiff Brian Donnelly also known as KAWS, including,

but not limited to, his agents and other persons purporting to act at his direction and/or on his behalf.

17. The term "KI" means Plaintiff KAWS Inc., including, but not limited to, its employees, officers, directors, subsidiaries, affiliates, successors, assigns, agents and other persons purporting to act at their direction and/or on its behalf.

18. "Plaintiffs" shall refer to Plaintiffs BD and KI.

19. The term "JA" means Defendant Jonathan Anand both individually and doing business as Homeless Penthouse, Penthouse Theory, Hideout.NYC, Incognito and Young Neon, and includes, but is not limited to, Homeless Penthouse, Penthouse Theory, Hideout.NYC, Incognito, Young Neon, their employees, officers, directors, subsidiaries, affiliates, successors, assigns, agents and other persons or entities purporting to act at their direction and/or on their behalf, and any individual or entity acting or purporting to act on Jonathan Anand's direction and/or on his behalf and any individual or entity connected or related to Jonathan Anand.

20. The term "JA's Websites" means https://shophomeless.com/ and https://homelesspenthouse.com/ and any other website in which JA (defined above) maintains any direct or indirect ownership and/or which acts or purports to act on JA's direction and/or his behalf.

21. The term "Other Defendants" refers to Defendants David Kang, Dylan Jovan Leong Yi Zhi, The Penthouse Theory, The Penthouse Collective and Osell Dinodirect China Limited, including, but not limited to, their employees, officers, directors, subsidiaries, affiliates, successors, assigns, agents and other persons purporting to act at their direction and/or on their behalf.

22. "Parties" shall mean Plaintiffs and Defendant JA.

23. The term "Internal JA Documents and/or Communications" shall mean and refer to any Documents sent to or received from, Communications sent to or received from, or discussions between, any employees, officers, directors, subsidiaries, affiliates, successors, assigns, agents and/or other persons purporting to act at the direction and/or on behalf of Defendant JA (as defined above).

24. The term "Complaint" refers to the Complaint dated November 18, 2021.

25. The term "Answer" refers to Defendant JA's Answer dated July 27, 2022 (ECF 84).

26. The term "JA's Rule 26.1 Statement" refers to the Required Disclosures Of JA pursuant to Rule 26(a)(l) of the Federal Rules of Civil Procedure, dated January 27, 2023 (ECF 102).

27. "KAWS Trademarks" mean all trademarks, whether registered or at common-law, in which Plaintiffs assert rights as against Defendant JA and the Other Defendants in this action, including without limitation U.S. Trademark Registration Nos.: 6,046,763; 6,047,656; 6,102,259; 6,102,260; 6,116,823; and 6,852,850; and as identified and set forth in paragraphs 20-31 of the Complaint and Exhibit 3 thereto.

28. "KAWS Copyrights" mean all copyrights, whether registered or at common-law, in which Plaintiffs assert rights as against Defendant JA and the Other Defendants in this action, including without limitation U.S. Copyright Registration Nos.: VA 2-180-272; and VA 2-182-652; and as identified and set forth in paragraphs 20-31 of the Complaint and Exhibit 2 thereto.

29. The term "KAWS Branded Products" means any goods, products, works of art, sculptures, paintings, designs, vinyl collectible figurines ('toys'), bearing any one or more of the authentic or counterfeit KAWS Trademarks or any variation thereof or in the image of one or

more of authentic or infringing KAWS Copyrights or any variation thereof, including without limitation, plush dolls, wearing apparel, vinyl figures, ashtrays, skateboards, canvas, posters, sculptures, rugs, accessories and neon lights.

30.     The term "Online Marketplace Platform" means an online or e-commerce platform that hosts various different products, from an array of different sellers, for customers to purchase, including without limitation, Amazon, eBay, Shopify, Etsy, AliExpress, JingDong (JD), Rakuten, Alibaba, AliExpress, Alibris, Shopee, Lazada, Taobao, Flipkart, Walmart, Newegg, Wayfair, Mercado Libre, Cdiscounts, BigCommerce, Salesforce and Oracle.

31.     The term "User Accounts" means any and all websites and any and all accounts which JA maintains or controls and/or maintained or controlled in the past, either directly or indirectly, with any Online Marketplace Platform, including without limitation, https://www.etsy.com/shop/HomelessPenthouse?ref=shop_sugg, https://shophomeless.com/ and https://homelesspenthouse.com/ and any and all as yet undiscovered accounts and websites held by or associated with JA in any manner whatsoever and all individuals and entities acting or purporting to act at the direction and/or on behalf of JA (as defined above).

32.     The term "Merchant Storefront" means any and all User Accounts through which JA (as defined above), directly or indirectly, currently and/or in the past and/or intends to in the future, operates storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in KAWS Branded Products, including without limitation JA's Websites (defined above).

33.     The term "Electronic Payment Service" means an electronic payment system which digitally or electronically facilitates financial transactions between two parties and/or

enables the transfer of funds to an individual or an entity via the Internet, which includes without limitation, Paypal, Venmo, Cash App, Zelle, Google Pay, Apple Pay, Samsung Pay and Klarna.

34.     The term "Social Media Website" means any websites, internet addresses and web based applications that facilitate the creation and sharing of information, ideas, images, interests, content-sharing, and other forms of expression through virtual internet based communities and networks, including without limitation, Facebook, YouTube, WhatsApp, Facebook Messenger, Instagram, Weixin/WeChat, TikTok, QQ, Douyin, Sina Weibo, Telegram, Snapchat, Kuaishou, Pinterest and Reddit.

## TIME PERIOD

35.     Unless otherwise noted, the time period covered by these Document Requests shall be from January 1, 2018 to the present.

## DOCUMENTS TO BE PRODUCED

1.     Documents and Communications concerning and evidencing JA's (as defined above) weekly sales of KAWS Branded Products (defined above), including without limitation, the gross sales price, net sales price, gross profit, net profit, returns and attempted returns of each KAWS Branded Product marketed, sold or offered for sale by JA, from the inception of JA's selling of KAWS Branded Products to the present. ***Such documentation should include Documents, Communications and information that identifies the type of KAWS Branded Product and the individual stores, Online Marketplace Platforms (defined above), User Accounts (defined above), JA's Websites (defined above) and Merchant Storefronts (defined above) from or through which such KAWS Branded Products were sold.***

2.     Documents concerning and evidencing JA's total annual gross revenues and total annual net revenues from the sale of any KAWS Branded Products from the inception of JA's

selling of KAWS Branded Products to the present.

3.        Documents and Communications concerning all financial statements and other documents reflecting JA's revenues generated from the marketing, offering for sale and sale of any KAWS Branded Products, since the inception of JA's selling of KAWS Branded Products to the present, and including without limitation any profit and loss and income statements prepared for or on JA's behalf.

4.        Documents and Communications concerning and evidencing JA's weekly, monthly and quarterly costs to purchase, market and sell any KAWS Branded Products.

5.        To the extent not produced in response to Document Request nos. 1-4, Documents and Communications concerning and evidencing any information in the possession, custody or control JA related to JA's revenues generated by the marketing, offering for sale, sale and/or distribution of any KAWS Branded Products, including but not limited to, invoices, purchase orders, canceled checks, ledger and disbursement entries, bank account statements, tax returns, correspondence, and other Documents and Communications concerning cost and profits of the KAWS Branded Products marketed, sold, offered for sale or distributed by JA.

6.        Documents and Communications concerning and evidencing the yearly number of individuals and entities who have purchased KAWS Branded Products from JA since the inception of JA's selling of KAWS Branded Products to the present.

7.        Documents and Communications, including without limitation, agreements, concerning the manufacture, production, distribution, purchase, sale, marketing, advertising, importation, or exportation of any KAWS Branded Products.

8.        Documents and Communications concerning all purchase orders, receipts, sales orders, invoices, statements, communications, and other documents evidencing any purchases by

JA (defined above) of any KAWS Branded Products.

9.     Documents and Communications concerning any agent, employee, or independent contractor who purchased or sold or was otherwise involved in the purchase or sale of a KAWS Branded Product on JA's behalf and/or at JA's request.

10.    Documents and Communications including without limitation all screenshot print-outs and other documents, concerning or evidencing any website or domain name registered, operated, owned or used by JA in any manner whatsoever that: (i) depicts or depicted any KAWS Branded Product, (ii) uses or used the KAWS name in part or whole, or (iii) is or was used to market, advertise, promote, offer to sell, or sell any KAWS Branded Product.

11.    Documents and Communications between JA and any of the Other Defendants, concerning any KAWS Branded Products.

12.    To the extent not produced in response to Document Request no. 10, all agreements between JA and any of the Other Defendants, concerning any KAWS Branded Products.

13.    Documents and Communications concerning the corporate organization and structure associated with the conduct of JA's business activities, including without limitation Documents and Communications concerning the creation, maintenance and continuation of Homeless Penthouse, Penthouse Theory, Hideout.NYC, Incognito, Young Neon and any other entity through which JA has now or previously marketed, offered or sold and/or presently markets, offers and sells KAWS Branded Products.

14.    Documents and Communications, exchanged or received between any of the Plaintiffs and JA concerning the sale or offering for sale of any KAWS Branded Products, including without limitation, all Digital Millennium Copyright Act ("DMCA") takedown notices

and trademark and copyright infringement warnings to JA and/or any of the Other Defendants.

15. Documents and Communications, including without limitation, agreements, between JA and each and every Online Marketplace Platform (defined above) through which JA currently markets or offers for sale, has marketed or offered for sale, and/or intends to market or offer for sale, any KAWS Branded Products.

16. Documents and Communications, including without limitation, agreements, between JA and each and every Merchant Storefront (defined above) through which JA currently markets or offers for sale, has marketed or offered for sale, and/or intends to market or offer for sale, any KAWS Branded Products.

17. Documents and Communications, including without limitation, agreements, between JA and each and every website through which JA currently markets or offers for sale, has marketed or offered for sale, and/or intends to market or offer for sale, any KAWS Branded Products.

18. Documents and Communications, including without limitation, agreements, between JA and each and every Electronic Payment Service (defined above) through which JA currently accepts, has previously accepted, and/or intends to accept in the future, payment for the sale of any KAWS Branded Products.

19. Documents and Communications, including without limitation, agreements, concerning each and every User Account (defined above) through which JA currently markets or offers for sale, has marketed or offered for sale, and/or intends to market or offer for sale, any KAWS Branded Products.

20. Documents and Communications, including without limitation any and all images and/or text, posted on each and every Social Media Website (defined above) concerning JA and

any KAWS Branded Products, regardless of whether JA or any third party or any of the Other Defendants posted such Documents or Communications.

21.     Documents and Communications concerning JA's current inventory of KAWS Branded Products, the date of acquisition of any such KAWS Branded Products and from who or which entity such KAWS Branded Products were acquired.

22.     Documents and Communications, including without limitation all agreements, concerning internet service providers or other entities involved with the hosting of any of JA's Websites and/or User Accounts.

23.     Documents and Communications concerning all instances in which an individual or entity has confused or mistaken the identity, source, affiliation, or relationship between JA and any of the Plaintiffs.

24.     Documents and Communications concerning all instances in which an individual or entity has confused or mistaken the identity, source, affiliation, or relationship between JA and any of the Plaintiffs and has notified JA of such confusion or mistaking the identity, source, affiliation, or relationship between JA and any of the Plaintiffs.

25.     Documents and Communications concerning all instances in which an individual or entity has inquired as to whether JA or any KAWS Branded Products offered for sale are or were affiliated with, connected to, licensed by, sponsored by, or otherwise related to any of the Plaintiffs.

26.     Documents and Communications concerning communications, inquiries, or comments to or from any individual or entity, referring or relating to any KAWS Branded Products, KAWS's Trademarks or KAWS's Copyrights.

27.     Documents and Communications concerning all physical addresses where JA has

stored or distributed any KAWS Branded Products.

28.     Documents and Communications concerning all physical addresses from which JA conducted or presently conducts business.

29.     Documents and Communications concerning each and every individual and/or entity which has purchased any KAWS Branded Products from or through JA.

30.     To the extent not produced in response to any of the foregoing Document Requests, Documents, Communications and agreements with JA which in any manner relate to KAWS Branded Products.

31.     Documents and Communications concerning and evidencing any customer or competitor lists relating to JA's purchase, sale, alteration, shipping or advertising of any KAWS Branded Product.

32.     Documents and Communications concerning and evidencing any payment received or made by you for the sale of any KAWS Branded Product.

33.     Documents and Communications concerning and evidencing debit or credit cards or any payment means, bank accounts, bank statements or other financial account documents reflecting any and all deposits or withdrawals of any funds JA received or used for the purchase, sale or alteration of any KAWS Branded Product.

34.     Documents and Communications concerning and evidencing the shipment of any KAWS Branded Product to or from JA, including without limitation, through or by FedEx, DHL, TNT, UPS, U.S. Mail, and EMS, and any and all other shippers' shipping documents, shipping labels, invoices, and records.

35.     Documents and Communications concerning and evidencing the alteration of any KAWS Branded Product.

36.     Documents and Communications concerning and evidencing all advertising and marketing materials, e-mails, brochures and other documents created by JA or used by JA to advertise or promote the sale of any KAWS Branded Product to any prospective purchaser.

37.     Copies of the hard drives, computer back-ups tapes, and electronic storage devices for the computers used by JA in connection with the purchase and/or sale of any KAWS Branded Product.

38.     Documents and Communications concerning and evidencing all business plans or other documents that explain or describe JA's business activities relating to the purchase, sale, alteration, shipping or advertising of any KAWS Branded Product.

39.     Documents and Communications concerning and evidencing any personal or business loan or financing applications completed by JA or on JA's behalf to fund any operation relating to the purchase, sale, shipping or advertising of any KAWS Branded Product.

40.     Documents and Communications concerning and evidencing any bank statements, canceled checks, deposit slips and merchant account statements and records concerning JA's business operations that identifies the purchaser, seller, shipper or advertiser of any KAWS Branded Product.

41.     Documents and Communications concerning and evidencing JA's general ledgers, check registers, accounts, books of account, financial statements, balance sheets, profit and loss statements, canceled checks, electronic or credit card charge receipts and similar accounting/bookkeeping records which identifies any purchaser, seller, shipper or advertiser of any KAWS Branded Product.

42.     Documents and Communications concerning and evidencing all sales agreements, partnership agreements or other contracts entered into for the purchase, sale, alteration, shipping

or advertising of any concerning KAWS Branded Product.

43.     Documents and Communications concerning and evidencing all joint venture agreements, distributorship agreements and other contracts entered into with any person or entity concerning the purchase, sale, alteration, shipping or advertising of any KAWS Branded Product.

44.     Documents and Communications concerning and evidencing any KAWS Branded Product which has been altered in any manner whatsoever.

45.     Documents and Communications concerning and evidencing JA's customer list.

46.     Documents and Communications concerning and evidencing JA's supplier and/or vendor list.

47.     Documents and Communications concerning and evidencing any advertising or promoting by JA or on JA's behalf, which mentions, identifies or depicts any KAWS Branded products.

48.     Documents and Communications received from and sent to JA's suppliers of KAWS Branded Products.

49.     Documents and Communications exchanged between JA and prospective buyers or sellers of KAWS Branded Products.

50.     Documents and Communications received from, dispatched to and/or exchanged between JA or any individual or entity acting in whole or in part on JA's behalf, and any state or federal law enforcement agency, customs agency or other state or federal investigative agency or department, concerning the purchase, sale, altering, shipping or advertising of any KAWS Branded Product.

51.     Excluding privileged attorney/client communications, Documents and Communications relating to JA's involvement in any lawsuit relating to the purchase, sale,

altering, shipping or advertising of any branded product, including without limitation concerning the following two Federal actions commenced in the Southern District of New York ("SDNY"):

 i. *Hypebeast Hong Kong Limited v. Jonathan Anand*, SDNY Civil Case no. 19-cv-8338;

 ii. *MANTA INDUSTRIES LTD. v. PAUL P. LAW, A/K/A PAUL LAW, YOGESH M. ANAND A/K/A YOGESH ANAND A/K/A "YOGI" ANAND, RICH KIDS JEAN CORP., FASHION DEVELOPMENT GROUP, INC., FOLDOM INDUSTRIES, LTD., DANI MAX DESIGN, INC., NY GROUP CORPORATION, KUM S. CASANOVA A/K/A KUM CASANOVA A/K/A KUM SUN CASANOVA, Q FOLLOW SHIPPING, INC., LOURDES LAW A/K/A "LOU" LAW A/K/A LOURDES P. LAW A/K/A LOURDES W. LAW, JONATHAN M. ANAND A/K/A JONATHAN N. ANAND A/K/A "JON" ANAND, J GROUP NY INC, XYZ, INCs 1-10 and ABC, LLCs 1-10,* SDNY Civil Case No. 16-cv-08308.

52. Excluding privileged attorney/client communications, Documents and Communications concerning any action, lawsuit, potential claim, potential lawsuit, or proceeding of any kind whatsoever which concerns JA and alleged acts of trademark infringement, copyright infringement and/or unfair competition.

53. Documents and Communications concerning any insurance policies or any insurance agreement under which an insurance company may provide JA coverage in this action, be liable to satisfy all or part of a judgment in this action, indemnify or reimburse JA for payments made to satisfy any judgment in this action or may pay for an attorney to represent JA in this lawsuit.

54. Documents and Communications concerning any customer complaints of any nature whatsoever, received by JA which mention, refers to, discusses or relates to KAWS Branded Products.

55. Documents and Communications concerning and evidencing JA's pricing policies, structure and/or guidelines regarding KAWS Branded Products and the responses of

any customer, client or any other individual or entity to such prices.

56.     Documents and Communications concerning and evidencing any market studies, reports or analyses relating to competition, market segments, market share, market reactions to pricing of any KAWS Branded Products, including third party research reports.

57.     Documents and Communications concerning all media, including without limitation, print media, websites, social media, television, radio, trade journals, trade shows and direct mail advertising, pertaining to KAWS Branded Products.

58.     Documents and Communications that JA relies on concerning paragraph 2 of the Answer, alleging:

> "With regards to paragraph 3 of the complaint, Defendant admits that during Covid 19, Defendant resided in state of Virginia however Defendant is a Citizen of United States and engaged in Internet based Business (E-Commerce) located in Country of China and in ordinary course of business, Defendant resides in City of Shenzhen, China, and Hong Kong. Defendant used a U.S. address for the purposes of facilitating returns from customers. Rest of the contents of paragraph 3 are denied."

59.     Documents and Communications that JA relies on concerning paragraph 3 of the Answer, alleging:

> "Contents of Paragraphs 4, 5, 6, and 7 are admitted to the extent that Penthouse Theory, Hideout. NYC, Incognito, and Young Neon are marketing entities for online sales."

60.     Documents and Communications that JA relies on concerning JA's Second Affirmative Defense in the Answer, alleging:

> "The complaint and complainant have failed to demonstrate any wrongdoing by Defendant Anand. Plaintiff states that Defendants have conducted and are conducting the counterfeiting and infringing activity within this judicial district and elsewhere throughout the United States. It is stated that all the alleged goods are routinely available on internet e-commerce website like Alibaba and eBay to name some. Defendant as a retail reseller ordered these products from whole sellers and sold on his website."

61.    Documents and Communications concerning each and every "whole seller" alleged by JA in JA's Second Affirmative Defense in the Answer concerning KAWS Branded Products. ***Such documentation should include Documents, Communications and information that identifies each "whole seller" from whom JA ordered counterfeit or infringing KAWS Branded Products to sell at retail, as alleged in JA's Second Affirmative Defense in the Answer.***

62.    Documents and Communications concerning the availability of KAWS Branded Products on ***each*** and every "internet e-commerce website" as alleged by JA in JA's Second Affirmative Defense in the Answer.

63.    Documents and Communications supporting and concerning JA's Fourth Affirmative Defense in the Answer alleging "Plaintiff's claims are barred by the doctrine of laches, waiver, equitable estoppel and/or unclean hands."

64.    Documents and Communications supporting and concerning JA's Fifth Affirmative Defense in the Answer alleging "The Defendant has, at all material times with respect to Plaintiff, acted in or believed they acted in good faith in an effort to comply fully with all relevant federal, state and city laws."

65.    Documents and Communications supporting and concerning JA's Eighth Affirmative Defense in the Answer alleging:

> "Plaintiff's claims are barred to the extent that the expenses incurred by Defendant in connection with their alleged use of the alleged trademarks, and/or copyrights exceeded their revenues in connection with such alleged use."

66.    Documents and Communications supporting and concerning JA's Ninth Affirmative Defense in the Answer alleging "Plaintiff has abandoned the alleged trademarks and alleged copyrights."

67.     Documents and Communications supporting and concerning JA's Tenth Affirmative Defense in the Answer alleging "Plaintiff's conduct with regards to the matters alleged in the Complaint was such that Plaintiff is barred by the equitable doctrine of unclean hands from obtaining the relief requested against Defendant."

68.     Documents and Communications supporting and concerning JA's Eleventh Affirmative Defense in the Answer alleging "Plaintiff is claiming exclusive right and ownership on the product which is commercially available in the market."

69.     Documents and Communications supporting and concerning JA's Twelfth Affirmative Defense in the Answer alleging "Some or all of the damages alleged by Plaintiff, if any, are to be offset by the damage sustained by Defendant as a result of Plaintiff's conduct."

70.     Documents and Communications supporting and concerning JA's allegation that JA sustained damages as a result of Plaintiff's conduct.

71.     Documents and Communications supporting and concerning JA's Fourteenth Affirmative Defense in the Answer alleging:

> "Defendant denies that it is responsible or liable in any way for the damages or loss alleged in the Complaint. However, if Defendant is found to be liable or responsible for any or all of the alleged damages or loss, Defendant alleges that it, if any, is not the sole proximate cause of the damage or loss, that the damage awarded to Plaintiff, if any, should be apportioned according to state law by each parties' respective fault and legal responsibility of all parties, persons and entities, and their agents, servants, and employees who contributed to and/or cause such damages or loss according to the proof presented at the time of trial."

72.     Documents and Communications supporting and concerning JA's Fifteenth Affirmative Defense in the Answer alleging:

> "At all times, Defendant acted in a commercially reasonable and lawful manner. Each and every act or statement done or made by Defendant was a good faith assertion of the Defendant's rights and, therefore, was privileged and justified."

73. Documents and Communications supporting and concerning JA's Sixteenth

Affirmative Defense in the Answer alleging:

> "Plaintiff failed to protect and/or enforce its alleged rights, and/or engaged in conduct and activities sufficient to constitute a waiver of any alleged breach of duty, negligent act, omission, or any other conduct, if any, as set forth in the Complaint."

74. Documents and Communications supporting and concerning JA's Seventeenth

Affirmative Defense in the Answer alleging:

> "Plaintiff, though under an affirmative duty to do so, failed and neglected to mitigate its alleged damages, if any, and cannot recover against Defendant, whether as alleged of otherwise."

75. Documents and Communications supporting and concerning JA's Eighteenth

Affirmative Defense in the Answer alleging:

> "The damages suffered by Plaintiff, if any, were the direct and proximate result of the acts, omission, or negligence of persons or entities other than Defendant."

76. To the extent not produced in response to the above Document Requests,

Documents and Communications that JA intends to rely on for his defenses to the claims

asserted by the Plaintiffs.

Dated: New York, New York
March 1, 2023

<div style="margin-left: 40%;">

Respectfully submitted,
AARON RICHARD GOLUB, ESQUIRE, P.C.
Attorney for Plaintiff

*N M S. G*

BY: Nehemiah S. Glanc (NSG-7264)
24 East 64th Street, Fifth Floor
New York, New York 10065
Ph: (212) 838-4811
nglanc@argolub.com

</div>

To: SANJAY CHAUBEY, Esq.
Attorney for Defendants
    Jonathan Anand, individually and doing business as Homeless Penthouse,
    Penthouse Theory, Hideout NYC, Incognito and Young Neon
Graybar Building
420 Lexington Avenue, Suite 2148
New York, New York 10170
Phone: (212) 563-3223
chaubeylaw@gmail.com