Exhibit 11

Exhibit 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X Civil Action No. 1:21-cv-09562-PKC
BRIAN DONNELLY AKA KAWS and
KAWS INC.,

                                        Plaintiffs,           **PLAINTIFFS' FIRST SET**
                                                               **OF INTERROGATORIES**
       -against-

JONATHAN ANAND, both individually and doing
business as HOMELESS PENTHOUSE,
PENTHOUSE THEORY, HIDEOUT.NYC,
INCOGNITO and YOUNG NEON, DAVID KANG,
DYLAN JOVAN LEONG YI ZHI,
THE PENTHOUSE THEORY,
THE PENTHOUSE COLLECTIVE and
OSELL DINODIRECT CHINA LIMITED,

                                          Defendants.
-----------------------------------------------------------------X

        PLEASE TAKE NOTICE that pursuant to Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("FRCP"), "), Plaintiffs BRIAN DONNELLY AKA KAWS and KAWS INC., through their attorneys Aaron Richard Golub, Esquire, P.C., hereby serves the following interrogatories on Defendant Jonathan Anand, Both Individually And Doing Business As Homeless Penthouse, Penthouse Theory, Hideout.NYC, Incognito and Young Neon (collectively, "Anand Defendants"), and requests that the Anand Defendants serve sworn answers on Plaintiffs' attorneys, within thirty (30) days.

        Each interrogatory should be quoted in full immediately preceding the response.

## INSTRUCTIONS

        1.     In answering these Interrogatories, furnish all information, including information contained in or on any document that is known or available to you, including all information in

the possession of your attorneys or other persons acting on your behalf or under your attorneys' employment or direction.

2. If you cannot answer any interrogatory fully and completely after exercising due diligence to make inquiries and secure information necessary to do so, so state, and answer each such interrogatory to the full extent you deem possible; specify the portion of such interrogatory that you claim you are unable to answer fully and completely; state the facts on which you rely to support your contention that you are unable to answer such interrogatory fully and completely which shall include, without limitation, a statement indicating what is needed to be able to give a full answer to the Interrogatory, and state what knowledge, information and/or belief you have concerning the unanswered portion of each such interrogatory.

3. Pursuant to FRCP Rule 33, you are to furnish all information available to you in answering the following Interrogatories. You are to designate any information that is not within your personal knowledge and, as to that information, you are to state the name and address of every person or entity from whom it was received, or if the source of the information is documentary, a full description of the document including its title and location.

4. Pursuant to Local Rule 26.2, where a claim of privilege is asserted in objecting to any Interrogatory or sub-part thereof, and an answer is not provided on the basis of such assertion, the party or attorney asserting the privilege shall in the objection to the Interrogatory or sub-part thereof: (i) Identify the nature of the privilege (including work product) which is being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and (ii) Provide the following information in objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

(A) For documents: (i) The type of document, e.g., letter or memorandum; (ii) The general subject matter of the document; (iii) The date of the document; and (iv) Such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees and recipients to each other; and

(B) For oral Communications: (i) The name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) The date and place of communication; and (iii) The general subject matter of the communication.

5. If there is any item of information that you refuse to disclose on grounds of privilege or work-product immunity, answer so much of the Interrogatory as does not request information for which you claim privilege.

6. If the response to any Interrogatory consists, in whole or in part, of an objection relating to burdensomeness, then with respect to such response:

    a. Provide such information as can be ascertained without undue burden;

    b. State with particularity the basis for such objection including:

        i. a description of the process or method required to obtain any fact responsive to the Interrogatory; and

        ii. the estimated cost and time required to obtain any fact responsive to the interrogatory.

7. Where an objection is made to any Interrogatory or sub-part thereof, the objection shall state with specificity all grounds. Any ground not stated in an objection shall be waived.

8. Each Interrogatory should be construed independently, and not in reference to any other Interrogatory for purposes of limitation.

9. All Interrogatories must be answered completely, in writing, and under oath and

signed by the person providing the answers.

10. These Interrogatories are continuing and require further answer and supplementation, if the Anand Defendants receive or discover additional information subsequent to the date of this request, pursuant to FRCP 26(e).

## DEFINITIONS

These Interrogatories incorporate by reference the Uniform Definitions to be used in Discovery Requests as set forth in Local Rule 26.3. The following definitions and instructions shall also apply:

1. The terms "presently" and "to the present" shall mean as of or through the date of the response to these document requests.

2. The term "person" or "persons" shall mean the plural as well as the singular and includes any natural person, corporation, company, firm, partnership, association, joint venture, government entity or any other form of organization, association or entity.

3. The term "Document" or "Documents" shall have the meaning ascribed to them in Rule 34 of the FRCP, and shall include, without limitation, the original and any non-identical copy, regardless of origin or location, and regardless of whether it exists in hard print or electronic media, of any text message, e-mail, book, pamphlet, periodical, advertisement, letter to the trade, catalog, letter, opinion, report, electronic mail message, facsimile, telegram, cable, telex correspondence, report, record, notebook, sketch, blueprint, manual, handwritten note, contract, agreement, manuscript, minutes, intra-corporate communication, bulletin, brochure, circular, instructions, memorandum, notice, working paper, diary, chart, paper, graph, laboratory record, computer printout, magnetic or optical media, work assignment, print tracing, drawing, survey, photograph, microfilm, index, data sheet, data processing card, audio or video recording,

sketch or notes of or relating to any telephone or other conversation, or any other written, recorded, transcribed, filmed or graphic material, however produced or reproduced, which is or has been in Plaintiff's possession, control or custody, or available to Plaintiff, or of which Plaintiff has knowledge.

4. As used herein, "thing" or "things" shall mean any item whatsoever of a tangible nature other than documents.

5. The term "Communication" or "Correspondence" shall mean any contact or act by which any information or knowledge is transmitted or conveyed between two or more persons and shall include, without limitation, written contact by such means as text messages, letters, memoranda, telegrams, telexes, facsimiles and electronic mail messages, and any oral contact by such means as face-to-face meetings, video teleconferences and telephone conversations, which is or has been in Plaintiff's possession, control or custody, or available to Plaintiff, or of which Plaintiff has knowledge.

6. The term "day" or "date" shall mean the exact day, month and year, if ascertainable, or if not, the best available approximation, including the relationship to other events.

7. The term "identify,"

(A) When used with reference to a person (as defined above) shall mean to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person; and

(B) When used with reference to a document (as defined above) shall mean, in addition to the meanings ascribed to it by Local Civil Rule 26.3(c)(4), to give and identify (as defined in said local rule) to the extent known:

5

    i.  The custodian;

    ii.  The location and general description of the document;

    iii.  The type of document;

    iv.  The general subject matter;

    v.  The date of the document; and

    vi.  The author(s), addressee(s) and recipient(s).

    In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy FRCP 33(d).

  8.  The term "Third Party" shall mean and refer to any person (as defined above) other than Plaintiff, and Defendants.

  9.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

  10.  The use of the singular form of any word shall include the plural and vice versa.

  11.  The terms "all," "any" and "each" shall each be construed as encompassing any and all.

  12.  "Among" shall include "between," and "between" shall include "among."

  13.  "Concerning" shall mean relating to, referring to, pertaining to and/or concerning.

  14.  The term "BD" means Plaintiff Brian Donnelly also known as KAWS, including, but not limited to, his agents and other persons purporting to act at his direction and/or on his behalf.

  15.  The term "KI" means Plaintiff KAWS Inc., including, but not limited to, its employees, officers, directors, subsidiaries, affiliates, successors, assigns, agents and other

persons purporting to act at their direction and/or on its behalf.

16. "Plaintiffs" shall refer to Plaintiffs BD and KI.

17. The term "JA" means Defendant Jonathan Anand both individually and doing business as Homeless Penthouse, Penthouse Theory, Hideout.NYC, Incognito and Young Neon, and includes, but is not limited to, Homeless Penthouse, Penthouse Theory, Hideout.NYC, Incognito, Young Neon, their employees, officers, directors, subsidiaries, affiliates, successors, assigns, agents and other persons or entities purporting to act at their direction and/or on their behalf, and any individual or entity acting or purporting to act on Jonathan Anand's direction and/or on his behalf.

18. The term "JA's Websites" means https://shophomeless.com/ and https://homelesspenthouse.com/ and any other website in which JA maintains any direct or indirect ownership and/or which acts or purports to act on JA's direction and/or his behalf.

19. The term "Other Defendants" refers to Defendants David Kang, Dylan Jovan Leong Yi Zhi, The Penthouse Theory, The Penthouse Collective and Osell Dinodirect China Limited, including, but not limited to, their employees, officers, directors, subsidiaries, affiliates, successors, assigns, agents and other persons purporting to act at their direction and/or on their behalf.

20. "Parties" shall mean Plaintiffs and Defendant JA.

21. The term "Internal JA Documents and/or Communications" shall mean and refer to any Documents sent to or received from, Communications sent to or received from, or discussions between, any employees, officers, directors, subsidiaries, affiliates, successors, assigns, agents and/or other persons purporting to act at the direction and/or on behalf of Defendant JA (as defined above).

7

22. The term "Complaint" refers to the Complaint dated November 18, 2021.

23. The term "Answer" refers to Defendant JA's Answer dated July 27, 2022 (ECF 84).

24. The term "JA's Rule 26.1 Statement" refers to the Required Disclosures Of JA pursuant to Rule 26(a)(l) of the Federal Rules of Civil Procedure, dated January 27, 2023 (ECF 102).

25. "KAWS Trademarks" mean all trademarks, whether registered or at common-law, in which Plaintiffs assert rights as against Defendant JA and the Other Defendants in this action, including without limitation U.S. Trademark Registration Nos.: 6,046,763; 6,047,656; 6,102,259; 6,102,260; 6,116,823; and 6,852,850; and as identified and set forth in paragraphs 20-31 of the Complaint and Exhibit 3 thereto.

26. "KAWS Copyrights" mean all copyrights, whether registered or at common-law, in which Plaintiffs assert rights as against Defendant JA and the Other Defendants in this action, including without limitation U.S. Copyright Registration Nos.: VA 2-180-272; and VA 2-182-652; and as identified and set forth in paragraphs 20-31 of the Complaint and Exhibit 2 thereto.

27. The term "KAWS Branded Products" means any goods, products, works of art, sculptures, paintings, designs, vinyl collectible figurines ('toys'), bearing any one or more of the authentic or counterfeit KAWS Trademarks or any variation thereof or in the image of one or more of authentic or infringing KAWS Copyrights or any variation thereof, including without limitation, plush dolls, wearing apparel, vinyl figures, ashtrays, skateboards, canvas, posters, sculptures, rugs, accessories and neon lights.

28. The term "Online Marketplace Platform" means an online or e-commerce platform that hosts various different products, from an array of different sellers, for customers to

purchase, including without limitation, Amazon, eBay, Shopify, Etsy, AliExpress, JingDong (JD), Rakuten, Alibaba, AliExpress, Alibris, Shopee, Lazada, Taobao, Flipkart, Walmart, Newegg, Wayfair, Mercado Libre, Cdiscounts, BigCommerce, Salesforce and Oracle.

29. The term "User Accounts" means any and all websites and any and all accounts which JA maintains or controls and/or maintained or controlled in the past, either directly or indirectly, with any Online Marketplace Platform, including without limitation, https://www.etsy.com/shop/HomelessPenthouse?ref=shop_sugg, https://shophomeless.com/ and https://homelesspenthouse.com/ and any and all as yet undiscovered accounts and websites held by or associated with JA in any manner whatsoever and all individuals and entities acting or purporting to act at the direction and/or on behalf of JA (as defined above).

30. The term "Merchant Storefront" means any and all User Accounts through which JA (as defined above), directly or indirectly, currently and/or in the past and/or intends to in the future, operates storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in counterfeit or infringing KAWS Branded Products, including without limitation JA's Websites (defined above).

31. The term "Electronic Payment Service" means an electronic payment system which digitally or electronically facilitates financial transactions between two parties and/or enables the transfer of funds to an individual or an entity via the Internet, which includes without limitation, Paypal, Venmo, Cash App, Zelle, Google Pay, Apple Pay, Samsung Pay and Klarna.

32. The term "Social Media Website" means any websites, internet addresses and web based applications that facilitate the creation and sharing of information, ideas, images, interests, content-sharing, and other forms of expression through virtual internet based communities and networks, including without limitation, Facebook, YouTube, WhatsApp,

Facebook Messenger, Instagram, Weixin/WeChat, TikTok, QQ, Douyin, Sina Weibo, Telegram, Snapchat, Kuaishou, Pinterest and Reddit.

## TIME PERIOD

33. Unless otherwise noted, the time period covered by these Admission Requests shall be from January 1, 2018 to the present.

## INTERROGATORIES

1. Identify each and every "whole seller" alleged by JA in JA's Second Affirmative Defense in the Answer concerning infringing and/or counterfeit KAWS Branded Products, alleging:

> "The complaint and complainant have failed to demonstrate any wrongdoing by Defendant Anand. Plaintiff states that Defendants have conducted and are conducting the counterfeiting and infringing activity within this judicial district and elsewhere throughout the United States. It is stated that all the alleged goods are routinely available on internet e-commerce website like Alibaba and eBay to name some. ***Defendant as a retail reseller ordered these products from whole sellers and sold on his website."*** (emphasis supplied).

2. Identify each and every "e-commerce website" alleged by JA in JA's Second Affirmative Defense in the Answer concerning infringing and/or counterfeit KAWS Branded Products, alleging:

> "The complaint and complainant have failed to demonstrate any wrongdoing by Defendant Anand. Plaintiff states that Defendants have conducted and are conducting the counterfeiting and infringing activity within this judicial district and elsewhere throughout the United States. ***It is stated that all the alleged goods are routinely available on internet e-commerce website like Alibaba and eBay to name some.*** Defendant as a retail reseller ordered these products from whole sellers and sold on his website." (emphasis supplied).

3. Identify each and every individual or entity, which:

   i. Presently manufactures;

   ii. Formerly manufactured;

any counterfeit or infringing KAWS Branded Products. Each sub-part of this Interrogatory must be answered *separately* and fully.

    4.    Identify each and every individual or entity, which:

        i.    Presently stores;

        ii    Formerly stored;

any counterfeit or infringing KAWS Branded Products. Each sub-part of this Interrogatory must be answered *separately* and fully.

    5.    Identify each and every individual or entity, which:

        i    Presently imports;

        ii    Formerly imported;

any counterfeit or infringing KAWS Branded Products. Each sub-part of this Interrogatory must be answered *separately* and fully.

    6.    Identify each and every individual or entity, which:

        i    Presently exports;

        ii    Formerly exported;

any counterfeit or infringing KAWS Branded Products. Each sub-part of this Interrogatory must be answered *separately* and fully.

    7.    Identify each and every individual or entity, which:

        i    Presently distributes;

        ii    Formerly distributed;

any counterfeit or infringing KAWS Branded Products. Each sub-part of this Interrogatory must be answered *separately* and fully.

    8.    Identify each and every individual or entity, which:

i        Presently markets, promotes, advertises and/or displays;

ii       Formerly marketed, promoted, advertised and/or displayed;

any counterfeit or infringing KAWS Branded Products. Each sub-part of this Interrogatory must be answered *separately* and fully.

9. Identify each and every individual or entity, which:

    i.       Presently offers for sale;

    ii.      Formerly offered for sale;

any counterfeit or infringing KAWS Branded Products. Each sub-part of this Interrogatory must be answered *separately* and fully.

10. Identify each and every individual or entity, which:

    i       Presently sells;

    ii.      Formerly sold;

counterfeit or infringing KAWS Branded Products. Each sub-part of this Interrogatory must be answered *separately* and fully.

11. Identify each and every website which:

    i       JA presently uses;

    ii.      JA used;

to manufacture, import, export, advertise, market, promote, distribute, store, display, offer for sale, sell and/or otherwise deal in counterfeit or infringing KAWS Branded Products. Each sub-part of this Interrogatory must be answered *separately* and fully.

12. Identify each and every Online Marketplace Platform which:

    i       JA presently uses;

    ii      JA used;

to manufacture, import, export, advertise, market, promote, distribute, store, display, offer for sale, sell and/or otherwise deal in counterfeit or infringing KAWS Branded Products. Each sub-part of this Interrogatory must be answered *separately* and fully.

    13.    Identify each and every User Account which:

        i    JA presently uses;

        ii    JA used;

to manufacture, import, export, advertise, market, promote, distribute, store, display, offer for sale, sell and/or otherwise deal in counterfeit or infringing KAWS Branded Products. Each sub-part of this Interrogatory must be answered *separately* and fully.

    14.    Identify each and every Merchant Storefront which:

        i.    JA presently uses;

        ii    JA used;

to manufacture, import, export, advertise, market, promote, distribute, store, display, offer for sale, sell and/or otherwise deal in counterfeit or infringing KAWS Branded Products. Each sub-part of this Interrogatory must be answered separately and fully. Each sub-part of this Interrogatory must be answered *separately* and fully.

    15.    Identify each and every Electronic Payment Service which:

        i    JA presently uses;

        ii    JA used;

to manufacture, import, export, advertise, market, promote, distribute, store, display, offer for sale, sell and/or otherwise deal in counterfeit or infringing KAWS Branded Products. Each sub-part of this Interrogatory must be answered *separately* and fully.

    16.    Identify each and every Social Media Website which:

      i     JA presently uses;

      ii    JA used;

to import, export, advertise, market, promote, distribute, store, display, offer for sale, sell and/or otherwise deal in counterfeit or infringing KAWS Branded Products.

17.    To the extent not responded to in response to the foregoing Interrogatories, Identify each and every marketing, sales, and distribution channel used by JA to advertise, offer, sell, and/or provide counterfeit or infringing KAWS Branded Products to the public, including without limitation, Identifying every location, store, outlet, domain name, website, social media page, and any other marketing, distribution, and/or sales channel used by JA in connection with KAWS Branded Products.

18.    Identify each and every employee, consultant, manager, shareholder, director, officer or anyone else affiliated with or employed by JA.

19.    Identify all current and/or past lawsuits against any of the Anand Defendants, including without limitation, each and every individual or entity who has information relevant to this Interrogatory.

20.    Identify the first date on which JA sold a counterfeit or infringing KAWS Branded Product.

21.    Identify the first date on which JA advertised, marketed, promoted or offered for sale, on or through the Internet, a counterfeit or infringing KAWS Branded Product.

22.    Identify each of the following:

    i.    All e-mail addresses previously owned or used by JA from January 1, 2010;

    ii.   All e-mail addresses presently owned or used by JA;

    iii.  All addresses where JA resided commencing January 1, 2010;

  iv.  All addresses where JA presently resides;

  v.  All addresses where JA stores or distributes any counterfeit or infringing KAWS Branded Products;

  vi.  All addresses where JA stored or distributed any counterfeit or infringing KAWS Branded Products;

  vii.  All addresses from which JA conducted business;

  viii.  All addresses from which JA presently conducts business.

23. Identify all opinions upon which JA has relied concerning advertising, marketing, promoting, offering for sale, selling, and/or distributing, counterfeit or infringing KAWS Branded Products.

Dated: New York, New York
   March 1, 2023

            Respectfully submitted,
            AARON RICHARD GOLUB, ESQUIRE, P.C.
            Attorney for Plaintiffs

            */s/ Nehemiah S. Glanc*
            BY: Nehemiah S. Glanc (NSG-7264)
            24 East 64th Street, Fifth Floor
            New York, New York 10065
            Ph: (212) 838-4811
            nglanc@argolub.com

To: SANJAY CHAUBEY, Esq.
   Attorney for Defendants
    Jonathan Anand, individually and doing business as Homeless Penthouse,
    Penthouse Theory, Hideout NYC, Incognito and Young Neon
   Graybar Building
   420 Lexington Avenue, Suite 2148
   New York, New York 10170
   Phone: (212) 563-3223
   chaubeylaw@gmail.com