UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X Civil Action No. 1:21-cv-09562-PKC

BRIAN DONNELLY AKA KAWS and
KAWS INC.,

**Oral Argument Requested**

Plaintiffs,

-against-

JONATHAN ANAND, both individually and doing
business as HOMELESS PENTHOUSE,
PENTHOUSE THEORY, HIDEOUT.NYC,
INCOGNITO and YOUNG NEON, DAVID KANG,
DYLAN JOVAN LEONG YI ZHI,
THE PENTHOUSE THEORY,
THE PENTHOUSE COLLECTIVE and
OSELL DINODIRECT CHINA LIMITED,

Defendants.

-------------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR SANCTIONS AGAINST DEFENDANT JONATHAN ANAND, BOTH
INDIVIDUALLY AND DOING BUSINESS AS HOMELESS PENTHOUSE,
PENTHOUSE THEORY, HIDEOUT.NYC, INCOGNITO AND YOUNG NEON**

AARON RICHARD GOLUB, ESQUIRE, P.C.
Attorneys for Plaintiffs
24 East 64th Street, Fifth Floor
New York, New York 10065
ph: (212) 838-4811
fx: (212)838-4869

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.............................................................................1

FACTS.............................................................................................................1

ARGUMENT.....................................................................................................8

I.       Pursuant to FRCP 37(b)(2)(A)(iii) and (vi), Anand's Answer Should Be Stricken and a Default Judgment Should Be Rendered Against Anand...........................8

         A. Willfulness of Anand's Noncompliance.............................................9

         B. Notice to Anand.....................................................................15

         C. The Efficacy of Lesser Sanctions and Prejudice to Plaintiffs....................15

         D. The Duration of the Period of Noncompliance....................................18

II.      Anand Has Perpetrated a Fraud on the Court.........................................19

III.     Plaintiffs Are Entitled to an Award of Costs and Attorney's Fees Pursuant to FRCP 37(a)(5), FRCP 37(b)(2)(C) and the Court's Inherent Powers..............24

CONCLUSION..................................................................................................25

# TABLE OF AUTHORITIES

## Cases

Page(s)

Cases

Agiwal v. Mid Island Mortg. Corp.,
  555 F.3d 298 (2d Cir. 2009) ............................................................................................15
Angermeir v. Cohen,
  2015 WL 3766683 (S.D.N.Y. June 17, 2015) ..................................................................14
Bhagwanani v. Brown,
  665 Fed.Appx. 41 (2d Cir. 2016) .....................................................................................14
C=Holdings B.V. v Asiarim Corp.,
  992 F.Supp.2d 223 (S.D.N.Y. 2013) ...................................................................................2
Cerruti 1881 S.A. v. Cerruti, Inc.,
  169 F.R.D. 573 (S.D.N.Y. 1996) ....................................................................20, 22, 24, 25
Chanel, Inc. v RealReal, Inc.,
  449 F.Supp.3d 422 (S.D.N.Y. 2020) ...................................................................................2
El Greco Leather Prods. Co. v. Shoe World, Inc.,
  806 F.2d 392 (2d Cir. 1986) .................................................................................................2
Google LLC v. Starovikov,
  2022 WL 16948296 (S.D.N.Y. Nov. 15, 2022) ...................................................14, 16, 25
Guggenheim Capital, LLC v. Birnbaum,
  722 F.3d 444 (2d Cir. 2013) ..............................................................................................18
Miller v. Time-Warner Communications, Inc.,
  1999 WL 739528 (S.D.N.Y. Sept. 22, 1999) ..............................................................19, 20
Mirlis v. Greer,
  2023 WL 5597833 (2d Cir. Aug. 30, 2023) .........................................................14, 15, 16
Rezende v. Citigroup Global Markets, Inc.,
  2011 WL 1584603 (S.D.N.Y. Apr. 27, 2011) .........................................................19, 20, 24
Robinson v. De Niro,
  2022 WL 229593 (S.D.N.Y. Jan. 26, 2022) ......................................................................24
Rodriguez v. Quality Automotive Servs., Inc.,
  2023 WL 5621031 (E.D.N.Y. Aug. 31, 2023) .............................................8, 9, 13, 14, 16, 18
Romag Fasteners, Inc v Fossil, Inc.,
  140 S.Ct. 1492 (2020) ...........................................................................................................2
Rybner v. Cannon Design, Inc.,
  1996 WL 470668 (S.D.N.Y. Aug. 20, 1996) ...............................................................20, 25
Saratoga Vichy Spring Co. v Saratoga Carlsbad Corp.,
  45 F Supp. 260 (S.D.N.Y. 1942) ...........................................................................................2
Shangold v. Walt Disney Co.,
  2006 WL 71672 (S.D.N.Y. Jan. 12, 2006) .............................................19, 20, 22, 24, 25

Southern New England Telephone Co. v. Global NAPs Inc.,
    624 F.3d 123 (2d Cir. 2010).............................................................14, 15, 16, 17, 25

Rules

FRCP 26(a) ............................................................................................3, 4, 10, 18, 21
FRCP 34(b)(2)(C)..................................................................................................7
FRCP 37 ...............................................................................................1, 7, 8, 15, 24, 25
FRCP 55 ...................................................................................................................1
Local Civil Rule 37.2...............................................................................................6

## PRELIMINARY STATEMENT

Throughout this litigation, Defendant Jonathan Anand, both individually and doing business as Homeless Penthouse, Penthouse Theory, Hideout.NYC, Incognito and Young Neon ("Anand"), repeatedly and vexatiously has lied to this Court and stonewalled Plaintiffs Brian Donnelly aka KAWS and KAWS Inc. (collectively, "Plaintiffs") in discovery. In the more than 18 months since Anand appeared and sought to file a belated answer in this action, Anand has failed to produce a single document, a single substantive interrogatory response or the name of a single knowledgeable witness. Anand has blatantly lied to the Court and to Plaintiffs in sworn documents and has refused to produce discovery even after the Court cautioned Anand in its Order, dated July 21, 2023 (Ex. 19), as modified on July 25, 2023 (Ex. 20) (the "7/21/23 Order"), that Anand's noncompliance would result in **THE FULL RANGE OF** [FRCP 37] **SANCTIONS**" (Id.) (emphasis in original), including the possible sanctions of striking Anand's Answer, dated July 27, 2022 (the "Answer") (Ex. 7), and entering a default judgment against him. Not content with perpetrating a fraud on the Court and grinding these proceedings to a halt, Anand has progressed to violently threatening Plaintiffs on social media. Enough is enough. Anand must not be permitted to continue making a mockery of New York's judicial system. Should the Court grant Plaintiffs' subject motion, Plaintiffs will submit a Federal Rule of Civil Procedure ("FRCP") 55 default judgment motion against Anand.

## FACTS

### *Plaintiffs' Complaint*

On November 18, 2021, Plaintiffs filed their Complaint (the "Complaint") against, inter alia, Defendant Anand, alleging, inter alia, copyright and trademark infringement (Ex. 1).

### *3/28/22 Anand Aff.*

On March 22, 2022, Anand's counsel submitted a letter to the Court (Ex. 2), requesting an extension of time to file an answer or other pleading and ***falsely claiming*** that Plaintiffs had

1

not served Anand and had not filed an affidavit of service.

Plaintiffs' counsel submitted a response letter to the Court (Ex. 3), highlighting these misrepresentations, proving that Plaintiffs had served Anand and filed affidavits of service (Ex. 4) and notifying the Court that Anand's time to answer Plaintiffs' Complaint (Ex. 1) already had expired (a fact that Anand sought to conceal from the Court).

In its Order, dated March 22, 2022 (Ex. 5), the Court denied Anand's request for an extension of time and ordered Anand to submit an affidavit demonstrating that his default was not willful and that he had a potentially meritorious defense.

In his Affidavit, sworn to on March 28, 2022 ("3/28/22 Anand Aff.") (Ex. 6), Anand conceded:

> "In this regard it is respectfully submitted that all the alleged goods are routinely available on internet e-commerce website like *Alibaba* and *eBay* to name some. *I as a retail reseller ordered these products from whole sellers and sold on my website*" (Id., ¶11) (emphasis supplied).

Anand further admitted:

> "I further state that, even aforesaid sales of alleged items were *sold by me as a retailor* obtaining goods from a legitimate whole seller with proper invoice and consignment and sold like any other regular e-commerce website, *without even concerned or investigating Copyright or Trademark issue*" (Id., ¶13) (emphasis supplied).[1]

---

[1] Anand's claim that he is a purportedly innocent retailer who inadvertently violated Plaintiffs' copyrights and trademarks is factually and legally false. Anand ignored several warnings—in the form of Digital Millennium Copyright Act takedown notices—to cease his online sales of infringing, counterfeit KAWS Branded Products (Ex. 1, ¶¶31, 48, 55, 60, 65). In any event, a retailer's resale of an infringing product, while claiming not to know at the time of the resale that the product was infringing, is ***not*** a defense to a claim of copyright and/or trademark infringement. See Chanel, Inc. v RealReal, Inc., 449 F.Supp.3d 422, 438 (S.D.N.Y. 2020) ("…[W]rongful intent is not a prerequisite to an action for trademark infringement [under the Lanham Act]...and [] good faith is no defense…[A] retailer's direct sale of an infringing product is sufficient to create liability") (internal citation omitted); see also Saratoga Vichy Spring Co. v Saratoga Carlsbad Corp., 45 F Supp. 260, 261 (S.D.N.Y. 1942) ("If plaintiff is correct in its contention here as to the charges of infringement and unfair competition, it is no defense, that the defendants are merely sellers or wholesalers or distributors and not the original bottler or manufacturer") (internal citation omitted); El Greco Leather Prods. Co. v. Shoe World, Inc., 806 F.2d 392, 396 (2d Cir. 1986); C=Holdings B.V. v Asiarim Corp., 992 F.Supp.2d 223, 240 (S.D.N.Y. 2013); Romag Fasteners, Inc v Fossil, Inc., 140 S.Ct. 1492 (2020).

### *7/27/22 Anand Answer*

In ¶8 (Second Affirmative Defense) of his Answer (Ex. 7), Anand again conceded:

"It is stated that all the alleged goods are routinely available on internet e-commerce website like *Alibaba* and *eBay* to name some. ***Defendant as a retail reseller ordered these products from whole sellers and sold on his website***" (emphasis supplied).

The 3/28/22 Anand Aff. and the Answer conclusively prove, by Anand's own admission, that Anand was a retail reseller of infringing products, that he ordered infringing products from third parties, that he knowingly sold those infringing products online and that he never investigated whether any of those products were protected by copyrights or trademarks.

### *1/17/23 Case Management Conference*

During the January 17, 2023 case management conference, Anand's counsel again confirmed to the Court Anand's contention that he is a retail reseller who purchases KAWS Branded Products[2] online and then resells them online, as follows (Ex. 8):

"Our still the opinion and stand [sic] is that there is no violation of intellectual property involved in this case. ***It's only a case of the retail reseller***. I don't want to be a witness in the case, but I have seen on many websites these products are being sold at the wholesale and retail, and anybody can buy and sell these products as a reseller from very reputed internet marketing companies, like Alibaba and eBay" (emphasis supplied).

### *1/27/23 Anand FRCP 26(a) Disclosures*

In his FRCP 26(a) Disclosures, dated January 27, 2023 ("Anand's FRCP 26(a) Disclosures") (Ex. 9, p. 1), Anand did not list any witnesses likely to have relevant information (aside from himself) and did not identify any relevant documents. If Anand's FRCP 26(a) Disclosures are to be believed, Anand singlehandedly purchased, marketed, sold and shipped all

---

[2] "KAWS Branded Products" refers to any goods, products, works of art, sculptures, paintings, designs and/or vinyl collectible figurines ("toys") bearing any one or more of the authentic or counterfeit KAWS trademarks (or any variation thereof) and/or bearing the image of one or more infringing KAWS copyrights (or any variation thereof), including, inter alia, plush dolls, apparel, vinyl figures, ashtrays, skateboards, canvases, posters, sculptures, rugs accessories and neon lights.

of the infringing, counterfeit KAWS Branded Products. However, even if that were so, Anand's FRCP 26(a) Disclosures still would be deficient and untruthful on their face as Anand purchased the infringing, counterfeit KAWS Branded Products *from third parties* and sold the infringing, counterfeit KAWS Branded Products *to third parties*. Anand's refusal to identify any third parties is a glaring example of his contumacious, bad faith refusal to participate in discovery.

### *Anand's Defective Discovery Responses*

In accordance with the Civil Case Management Plan and Scheduling Order, So Ordered by Judge Castel on January 17, 2023 (Ex. 32), Plaintiff served Anand, on March 1, 2023, with Plaintiffs' First Set of Document Requests ("Plaintiffs' Document Requests") (Ex. 10) and Plaintiffs' First Set of Interrogatories ("Plaintiffs' Interrogatories") (Ex. 11) (collectively, "Plaintiffs' Discovery Requests").[3] On March 22, 2023, Anand's counsel emailed Plaintiffs' counsel (Ex. 30), claiming that he had not yet been able to provide Anand with Plaintiffs' Discovery Requests and requesting that Plaintiffs "extend the discovery period." Plaintiffs' counsel expressed disbelief that Anand's counsel had not been able to provide Anand with Plaintiffs' Discovery Requests more than three weeks after they were served on Anand's counsel, but nonetheless consented to a two-week extension. Id. Plaintiffs' counsel stated (Id.):

"With respect to Plaintiffs' First Set of Document Requests, Plaintiffs expect that Defendant Anand will produce all responsive documents by April 19, 2023 and not merely a Notice containing objections and form responses or reserving document production until a future date. By the same token, Plaintiffs expect that Defendant Anand will submit full and complete responses to Plaintiffs' First Set of Interrogatories...by April 19, 2023 and not merely a Notice containing objections and form responses or reserving such full and complete responses until a future date. Plaintiffs are unequivocally giving you notice *now* that Plaintiffs will deem unacceptable any such incomplete or dilatory stock responses or objections by Anand and/or you and Plaintiffs will promptly move the Court for all available relief, including, without limitation, sanctions and a default judgment."

On April 10, 2023, Anand served Plaintiffs with Defendants' [sic] Responses to

---

[3] Plaintiffs also served Anand with Plaintiffs' First Requests for Admission (Ex. 33).

Plaintiffs' First Set of Document Request [sic] ("Anand's Document Request Responses") (Ex. 12) and Defendants' [sic] Responses to Plaintiffs' First Set of Interrogatories ("Anand's Interrogatory Responses") (Ex. 13) (collectively, "Anand's Responses").[4]

On April 18, 2023, Plaintiffs' counsel emailed Anand's counsel (Ex. 15), requesting a telephonic meet-and-confer. On April 20, 2023, Plaintiffs' counsel and Anand's counsel participated in a lengthy telephonic meet-and-confer (the "Meet-and-Confer") in which Plaintiffs' counsel painstakingly explained—discovery request by discovery request—all of the ways in which Anand's Responses were legally insufficient. Anand's counsel agreed to email Plaintiffs' counsel, by April 27, 2023, amended and supplemental discovery responses addressing the myriad deficiencies highlighted by Plaintiffs' counsel.

Instead, on April 27, 2023, Anand's counsel emailed Plaintiffs' counsel a corrected e-mail address for Defendant Anand and a single mystifying sentence (Ex. 16):

"For document request [sic], the Defendants [sic] do not possess any such documents and will provide an affidavit for the same."

On April 28, 2023, Plaintiffs' counsel emailed Anand's counsel (Ex. 17), requesting confirmation that, contrary to Anand's counsel's representation during the Meet-and-Confer, Anand refuses to provide Plaintiffs with additional amended and supplemental discovery responses. Plaintiffs received no response.

### *6/13/23 Anand Aff.*

Following the Meet-and-Confer, Anand submitted a procedurally deficient "affidavit," sworn to on June 13, 2023 ("6/13/23 Anand Aff.") (Ex. 18),[5] blatantly ignoring his concessions

---

[4] Anand also served Plaintiffs with Defendants' [sic] Responses to Plaintiff's [sic] First Request [sic] for Admission (Ex. 34).

[5] As this Court held in the 7/21/23 Order (Ex. 19, p. 1), Anand's submission "is labeled an 'Affidavit' but…is neither an affidavit nor a declaration authorized for use by a person outside the United States."

in the 3/28/22 Anand Aff. (Ex. 6) and the Answer (Ex. 7) and contradictorily claiming:

     (i)     "I further state that I was not responsible for ordering and never a part of the day-to-day operations of the businesses in this matter. I did not manage and nor supervise the businesses. I only offered marketing services for some of these businesses" (Ex. 18, ¶11);

     (ii)     "I have clearly stated in my responses that I was not responsible for ordering products and nor involved in the day-to-day of these businesses" (Id., ¶15); and

     (iii)     "I further state that I have nothing more to provide as all the deliveries and other business aspects were not operated nor conducted by me" (Id., ¶16).

Once Plaintiffs sought documents and substantive interrogatory responses from Anand, he suddenly claimed—in direct opposition to his earlier submissions—that he did not manage or supervise any websites or businesses, that he was not a retail reseller, that he did not order products from third parties and sell them online and that he simply provided marketing services.

### *Plaintiffs' 6/27/23 Discovery Letter*

Pursuant to Paragraph 3(B) of the Court's Individual Practices in Civil Cases and Local Civil Rule 37.2, on June 27, 2023, Plaintiffs submitted a 34-page discovery letter to the Court ("Plaintiffs' Discovery Letter") (Ex. 14), in which Plaintiffs catalogued in detail exactly how Anand's Responses were egregiously deficient and a colossal waste of the Court's and Plaintiffs' time. With respect to 47 of Plaintiffs' 76 document requests, Anand simply responded "No" (Id., pp. 9-18). Anand's responses to 18 of Plaintiffs' 76 document requests were a mere "Not Applicable" (Id., pp. 18-22). The remainder of Anand's responses were incoherent, incomplete and unacceptable. Anand's interrogatory responses were just as derisible as Anand responded to 19 of Plaintiffs' 23 interrogatories with a derisory "Not Applicable" (Id., pp. 25-31). In the 7/21/23 Order (Ex. 19, p. 1), the Court noted "the many deficiencies in Jonathan Anand's responses to discovery requests" and that in the more than three weeks between Plaintiffs' submission of the Discovery Letter (Ex. 14) and the Court's filing of the 7/21/23 Order (Ex. 19), Anand failed to respond to the Discovery Letter (Ex. 14).

### *The Court's 7/21/23 Order*

In the 7/21/23 Order (Ex. 19), the Court held that the discovery "responses of Anand are ***grossly inadequate***" (Id., p. 1) (emphasis supplied). The Court further held that "***Anand's objections do not comply with Rule 34(b)(2)(C)***, Fed. R. Civ. P., because, among other things, they do not disclose whether any responsive documents are being withheld on the basis of any objection" (Id., p. 2) (emphasis supplied). The Court acknowledged the defective nature of the 6/13/23 Anand Aff. (Ex. 18), holding, "The assertions he makes are ***ambiguous and raise more questions than they answer***" (Ex. 19, p. 2) (emphasis supplied). The Court held that it "gathers that Anand does not wish to be a party to this action but ***the vehicles for defeating the claim do not include stonewalling the plaintiffs in discovery***" (Id., p. 3) (emphasis supplied).

The Court ordered Anand:

(i)     To produce all responsive documents to each category of Plaintiffs' Document Requests by August 14, 2023. To the extent that Anand claims that he does not have in his possession or control documents responsive to a particular request, Anand was required to submit an affidavit or declaration by August 14, 2023, "describing in detail the places and locations that he searched for responsive documents, including any efforts made to secure the documents from a third-party within his control (e.g. family member, friend, lawyer, advisor, accountant, tax preparer)." Id.; and

(ii)    To fully respond to Plaintiffs' Interrogatories ##13-21 by August 14, 2023. On July 25, 2023 (Ex. 20, p. 1), the Court modified the 7/21/23 Order to compel Anand to fully respond to ***Plaintiffs' Interrogatories ##3-21*** instead of ##13-21.

In the 7/21/23 Order (Ex. 19, p. 4), the Court clearly held in bold capital letters that Anand's failure to "fully comply" with the 7/21/23 Order **"WILL RESULT IN THE FULL RANGE OF SANCTIONS PERMITTED BY RULE 37, FED. R. CIV. P."** (emphasis in original). The Court further held in bold capital letters (Id.):

> **"IN PARTICULAR, THE COURT MAY IMPOSE THE SANCTION OF STRIKING HIS ANSWER AND ENTERING A DEFAULT JUDGMENT AGAINST HIM"** (emphasis in original).

The Court waived any pre-motion requirements with respect to any motion for sanctions to be

filed by Plaintiffs subsequent to August 14, 2023 (Id.).

### *8/14/23 Anand Aff.*

On August 14, 2023, Anand served incomplete, evasive and false supplemental

interrogatory responses (Ex. 21) ***to Plaintiffs' Interrogatories ##13-21 only (not ##3-21 as***

***ordered by the Court)***. Anand produced an affidavit, sworn to on August 14, 2023 (the "8/14/23

Anand Aff.") (Ex. 22), in which he contradicted his concessions in the 3/28/22 Anand Aff. (Ex.

6) and the Answer (Ex. 7). Whereas Anand swore to the Court in March and July 2022 (Exs. 6-

7) that he was a retail reseller and website owner, that he ordered KAWS Branded Products from

"whole sellers" and that he sold KAWS Branded Products online, Anand now claims:

> "I further state that I only offered marketing services for some of the Defendant
> businesses, and I do not own any interest or ownership in any of the entities named in this
> matter. I was not a part of the day-to-day operations of the Defendant businesses in this
> matter. I did not manage or supervise these businesses. I did not have any authority,
> control or possession of the documents requested by Plaintiff" (Ex. 22, ¶5).

### ARGUMENT

### I.     PURSUANT TO FRCP 37(b)(2)(A)(iii) AND (vi), ANAND'S ANSWER SHOULD BE STRICKEN AND A DEFAULT JUDGMENT SHOULD BE RENDERED AGAINST ANAND

Pursuant to FRCP 37(b)(2)(A)(vi), "If a party…fails to obey an order to provide or

permit discovery…the court where the action is pending may issue further just orders,"

including, inter alia, "rendering a default judgment against the disobedient party." "Discovery

sanctions under Federal Rule 37 are deterrents (specific and general) meant to punish a

recalcitrant or evasive party." Rodriguez v. Quality Automotive Servs., Inc., 2023 WL 5621031,

*2 (E.D.N.Y. Aug. 31, 2023) (internal citation omitted). "[D]istrict courts possess 'wide

discretion' in imposing sanctions under Rule 37." Id., *3 (internal citation omitted).

"In imposing Rule 37 sanctions, courts properly consider various factors, including (1)

the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of

lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-

compliant party had been warned of the consequences of noncompliance." Id. (internal citation omitted). "...[F]or more severe sanctions, such as dismissal, preclusion[,] or the imposition of an adverse inference, the court must also assess whether the requesting party suffered prejudice as a result of the loss or withholding of evidence." Id. (internal citation omitted). "No single factor controls, and *it is not an abuse of discretion for a district court to order a dispositive sanction even when not every factor weighs against the party to be sanctioned*." Id. (internal citation omitted) (emphasis supplied).

### A. Willfulness of Anand's Noncompliance

"Noncompliance with a court's discovery order is willful when the order is clear, the party understood the order, and the failure to comply is not due to factors beyond the party's control." Id. (internal citation omitted). It is indisputable that Anand intentionally refused to comply with the 7/21/23 Order (Ex. 19) and that there is no valid reason for such noncompliance. Without the benefit of a single document or substantive interrogatory response produced by Anand in discovery, Plaintiffs have more than enough evidence in the record to demonstrate the galling extent of Anand's bald-faced lies to this Court and to Plaintiffs in service of his illegal refusal to produce discovery required by Plaintiffs to prosecute this action.

Anand flouted the 7/21/23 Order (Ex. 19) as follows:

(i)     Anand "responded" to Plaintiffs' Interrogatories ##13-21 only, ignoring the Court's directive to respond to Plaintiffs' Interrogatories ##3-21 (Ex. 20);

(ii)    Anand failed to produce even a single document in response to Plaintiffs' 76 Document Requests;

(iii)   Anand failed to "describ[e] in detail the places and locations that he searched for responsive documents, including any efforts made to secure the documents from a third-party within his control (e.g. family member, friend, lawyer, advisor, accountant, tax preparer)" (Ex. 19, p. 3). Instead, Anand vaguely claimed:

> "I further state that I have made reasonable enquiries and efforts to find concerned people in China but to no avail. Therefore, as stated above, I have no possession of any documents requested by the Plaintiff [sic] in its document discovery" (Ex. 22, ¶9).

9

Anand did not identify a single place or location in which he searched for responsive documents or third-party individual or entity from which he sought responsive documents. Even after claiming in ¶4 of the 8/14/23 Anand Aff. (Id.) that "the manufacturing and day to day operations of the Defendant businesses were based out of China," Anand failed to identify such knowledgeable Chinese third parties—an especially egregious omission in light of the fact that in Anand's FRCP 26(a) Disclosures (Ex. 9, p. 1), Anand did not list any witnesses likely to have relevant information aside from himself;

(iv)    The 8/14/23 Anand Aff. (Ex. 22) contained the same insufficient language that the Court rejected in the 6/13/23 Anand Aff. (Ex. 18) as "ambiguous" and "rais[ing] more questions than they answer" (Ex. 19, p. 2). For instance, in ¶4 of the 8/14/23 Anand Aff. (Ex. 22) ("I further state that the manufacturing and day to day operations of the Defendant businesses were based out of China"), Anand did not state with specificity when the manufacturing and day to day operations of the businesses were based out of China, whether the manufacturing and day to day operations of the businesses still are based out of China, where exactly in the approximately four million square miles of China these operations are based, whether there are any other operations of the businesses that are not based out of China (and where they are based out of) and who specifically is involved with the manufacturing and day to day operations of the businesses; and

(v)    Anand's Interrogatory Responses were blatantly false and willfully deceptive, as discussed below.

In his Supplemental Responses to Interrogatories ##16 and 17 (Ex. 21), Anand claimed

that he does not use any social media platforms or any other marketing, sales and/or distribution

channels to, inter alia, advertise, market or sell KAWS Branded Products. In his Supplemental

Response to Interrogatory #21 (Id.), Anand claimed that he never, inter alia, advertised,

marketed, promoted or offered for sale online any KAWS Branded Products. Anand's social

media posts indisputably prove the falsity of these assertions, including, inter alia:

(i)    Anand's LinkedIn page links to videos, inter alia, of: (a) Glass doors that infringe on Plaintiffs' federally protected copyrights and trademarks; and (b) Infringing KAWS Branded Products with the following text: "A custom [BAPE] Couch that we made for a private client" (Ex. 23);

(ii)    As alleged in ¶50 of the Complaint (Ex. 1), in an Instagram video published on or about October 29, 2021, Anand displayed the image of an infringing, counterfeit KAWS Branded Product titled "4FT Las Vegas Sculpture" (offered for sale for $3,999.00) and claimed that Homeless Penthouse earned $130,983.32 from sales during the week of September 15-22, 2021;

(iii)    As alleged in ¶56 of the Complaint (Id.), in an Instagram video, Anand advertised

10

an infringing, counterfeit chain/pendant meant to mimic one designed by KAWS and described himself as "a hustler" who sells knockoff merchandise "to push [his] own agenda and pump out shit people want to buy;"

(iv)    In an April 27, 2022 Instagram story, Anand posted a screenshot of Homeless Penthouse's Shopify account, claiming $5,412.00 in total sales for that day (Ex. 24); and

(v)    In a May 12, 2022 Instagram story, Anand wrote, "Dm[6] me if u want something. All in stock in the China office" (Ex. 25).

In his Supplemental Response to Interrogatory #20 (Ex. 21), Anand "states that he did not sell any *counterfeit KAWS products*" (emphasis supplied). In addition to being disproven by Anand's concession on LinkedIn that he makes custom products for private clients (Ex. 23), Anand's Supplemental Response is deliberately deceptive. Plaintiffs' Interrogatory #20 (Ex. 11) requested the date on which Anand sold a counterfeit "*or infringing*" KAWS Branded Product.

In Interrogatory #19 (Ex. 11), Plaintiffs requested that Anand identify all current and/or past lawsuits against him and his business entities. In his Supplemental Response to Interrogatory #19 (Ex. 21), Anand bafflingly stated that "he does not have any present or past lawsuits against him which are relevant to this Interrogatory." It is tautological that any lawsuit against Anand is relevant to an interrogatory seeking information concerning any lawsuits against Anand. To the extent that Anand claims that no lawsuits have been filed against him, it is unclear how Anand could expect to get away with such a bold lie seeing as Plaintiffs identified in Document Request #51 (Ex. 10) two Federal actions commenced in the Southern District of New York against Anand, one of which alleged that Anand sold infringing products online.

The 7/21/23 Order (Ex. 19) was clear in all respects. Anand never informed the Court or Plaintiffs that he did not understand any portion thereof. Nonetheless Anand violated the Court's directives many times over. Anand has no one else to blame for his willful noncompliance. The

---

[6] To "DM" someone is to send them a direct message on social media.

willfulness of Anand's violations of the 7/21/23 Order (Ex. 19) set forth above is best exemplified by Anand's unrelenting campaign of directly and unabashedly lying to the Court. The 8/14/23 Anand Aff. (Ex. 22) contains numerous blatant lies that are directly contradicted by the 3/28/22 Anand Aff. (Ex. 6) and the Answer (Ex. 7), as well as by Anand's social media posts (Exs. 23-26). Though Anand claimed in the 8/14/23 Anand Aff. (Ex. 22, ¶4) that "the manufacturing and day to day operations of the businesses were based out of China," he already conceded in the 3/28/22 Anand Aff. (Ex. 6, ¶¶11, 13) and the Answer (Ex. 7, ¶8 (Second Affirmative Defense)) that he purchased the infringing KAWS Branded Products from websites such as Alibaba and eBay and resold them online (instead of arranging for the manufacture of KAWS Branded Products). Though Anand claimed in the 8/14/23 Anand Aff. (Ex. 22, ¶5) that he "only offered marketing services" and did not "manage or supervise" the online businesses or play a role in their "day-to-day operations," he already conceded in the 3/28/22 Anand Aff. (Ex. 6, ¶¶11, 13) and the Answer (Ex. 7, ¶8 (Second Affirmative Defense)) that he acted "as a retail reseller," that he ordered the infringing KAWS Branded Products from "whole sellers," that he sold the infringing KAWS Branded Products online and that he operated a website from which the infringing KAWS Branded Products were advertised and sold.

Anand's transparently false assertion that he merely is engaged in marketing services and plays no larger role in and has no specific knowledge or information whatsoever about the businesses he founded is risible. On his LinkedIn page (Ex. 26), Anand describes himself as "Managing Director at Homeless Penthouse" and states that he has held that position since October 2017. Anand claims that he "is a serial entrepreneur," "is an entrepreneur who has built businesses from the ground up" and "knows how to get things done--whether it be sourcing products or marketing campaigns" (Id.). Anand brags that his "social media channels are a glimpse into the life of an entrepreneur who runs multiple businesses, [and] documents every day as CEO through these posts that have more than one million followers across all platforms" (Id.).

Anand's insistence that he is a lowly marketer with no knowledge of his businesses' financial or operational details is belied by his social media posts in which he posts sales figures and other financial data, invites consumers to contact him to make purchases and describes himself as "a hustler" who sells knockoff merchandise "to push [his] own agenda and pump out shit people want to buy" (Exs. 23-26; Ex. 1, ¶¶50, 56).

The foregoing brazen social media posts by Anand (in which he brags about his illegal exploits) make clear that he is intimately engaged in the daily operations of the illegal businesses that he founded, that he plays a pivotal role in advertising and selling the infringing, counterfeit KAWS Branded Products and that he has access to critical financial documents. The *April 18, 2021* New York Weekly article by Victor Williams ("Williams"), titled "Homeless Penthouse Brand History" (Ex. 27)—*predating this action by seven months*—reinforces that Anand is the central figure in this tale of counterfeiting and copyright and trademark infringement, as follows:

> "With patience dwindling down quickly, it was Jonathan [Anand]'s idea to throw a hail mary play and totally *make a website* out of things that he always wanted but couldn't afford. Mainly hypebeast home decor and art. The website was every hypebeast's dream. *It had all the rarest items from* Supreme, *KAWS* and Murakami in addition to finely curated wall art, and custom designs. Satisfied with the way the site looked *Jonathan [Anand] proceeded to start advertising on social media*. It was an instant success. *The first night live their sales hit 7,000$ and with each day passing the numbers kept doubling and doubling*" (emphasis supplied).

Williams continued:

> "As expected the business grew exponentially so *Jon [Anand] decided to stay in China to focus on sourcing new items*. Living out of a Supreme suitcase purchased in a Shanghai market for a hundred bucks *Jonathan [Anand] proceeded to travel to different cities within China to find new factories and markets*. Back and forth from Shanghai to Hong Kong, Shenzhen, Guangzhou and back to Yiwu to *oversee the shipping and operations*" (Id.).

Anand's noncompliance with the 7/21/23 Order (Ex. 19) and his flagrant breaches of his FRCP discovery obligations, which are part and parcel of his wholesale fraud on the Court, were intentional and not due to factors beyond Anand's control. See Rodriguez, supra, *4 (holding that withholding documents, producing conflicting documents and possibly manipulating or

13

fabricating documents "support a finding that Defendants acted willfully in their noncompliance of court orders to produce responsive documents"); see also Southern New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 147-48 (2d Cir. 2010) (holding that defendants acted willfully and in bad faith by deleting and "willfully [lying] about the existence and whereabouts of certain documents" and failing "to provide a good-faith explanation for their neglect in producing financial documents that clearly were the subject of the court's discovery orders"); Google LLC v. Starovikov, 2022 WL 16948296, *11 (S.D.N.Y. Nov. 15, 2022) ("...[T]he Defendants' incomplete and dishonest disclosures constituted a willful violation of those orders. The Defendants' misconduct began almost as soon as they entered the case, when they misrepresented their ability or willingness to engage in the discovery process, and has continued since. At each stage, the Defendants have proffered new reasons for resisting [plaintiff's] discovery efforts, even when those reasons contradict previous representations").

The 8/14/23 Anand Aff. (Ex. 22) is similar to the declarations submitted in Angermeir v. Cohen, 2015 WL 3766683, *5 (S.D.N.Y. June 17, 2015), in which plaintiffs merely recited in conclusory fashion that they checked their records and produced all responsive documents in their possession, custody and/or control—even after being instructed by the court to produce declarations setting forth which documents were missing and why. The court concluded that such "conclusory statement[s] cannot relieve plaintiffs of their discovery obligations." Id; see also Bhagwanani v. Brown, 665 Fed.Appx. 41, 43 (2d Cir. 2016) (rejecting as deficient plaintiffs' sworn statements that they had "carefully checked" their records and produced all available documents because "the problem the district court identified with the statements was their 'boilerplate conclusory' nature, which failed to demonstrate the adequacy of the professed searches or to explain the absence of certain documents").

At no point has Anand demonstrated that he neither had access to, nor the practical ability to obtain, the documents sought by Plaintiffs. "'Control' does not require 'actual physical

14

possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents...'" Mirlis v. Greer, 2023 WL 5597833, *4 (2d Cir. Aug. 30, 2023) (internal citation omitted).

## *B. Notice to Anand*

"Terminating sanctions are appropriate where 'the court had previously warned [a party] that failure to produce documents would likely result in the imposition of a default judgment.'" Rodriguez, supra, *5 (internal citation omitted); see also Global NAPs, supra, 148 ("Finally, the defendants cannot seriously contend that they were not on notice of their discovery obligations or of the consequences of noncompliance in light of the fact, *inter alia,* that the district court's May 31, 2007, order was unmistakably clear as to the scope of defendants' production obligations and the district court had previously warned [defendants] that failure to produce documents would likely result in the imposition of a default judgment"); Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 303 (2d Cir. 2009).

The express language of the 7/21/23 Order (Ex. 19) could not have been any clearer with respect to the possibility of a default judgment in the event of Anand's noncompliance. The Court held in bold capital letters (Ex. 19):

(i)     That Anand's failure to "fully comply" with the 7/21/23 Order **WILL RESULT IN THE FULL RANGE OF SANCTIONS PERMITTED BY RULE 37, FED. R. CIV. P.**" (Id.) (emphasis in original); and

(ii)    **"IN PARTICULAR, THE COURT MAY IMPOSE THE SANCTION OF STRIKING HIS ANSWER AND ENTERING A DEFAULT JUDGMENT AGAINST HIM"** (Id.) (emphasis in original).

At the time he willfully and deliberately chose not to comply with the 7/21/23 Order (Ex. 19), Anand indisputably was on notice that such noncompliance would be sanctioned severely and that the Court might enter a default judgment against him.

## *C. The Efficacy of Lesser Sanctions and Prejudice to Plaintiffs*

"…[D]istrict courts are not required to exhaust possible lesser sanctions before imposing

15

dismissal or default if such a sanction is appropriate on the overall record." Global NAPs, supra,

148. "[E]ntering judgment against a defendant...may be appropriate in 'extreme situations,' as

'when a court finds willfulness, bad faith, or any fault on the part of the' noncompliant party."

Rodriguez, supra, *4 (internal citations omitted). "In those extreme circumstances...'[d]efault

procedures...provide a useful remedy when a litigant is confronted by an obstructionist

adversary. Under such circumstances those procedural rules play a constructive role in

maintaining the orderly and efficient administration of justice.'" Mirlis, supra, *3.

As Anand has produced no discovery whatsoever (not a single document, witness name

or substantive interrogatory response containing specific information), the imposition of lesser

sanctions on Anand would be ineffectual and would not provide Plaintiffs with the information

to which they are legally entitled and which they need to prosecute this action against Anand.

In Google, supra, *12, the Court held:

"Lesser sanctions would not be appropriate. The Defendants have produced almost no
discovery, and there is no indication that they would be willing or able to produce any
more. Lesser sanctions requiring an adverse inference as to facts about which the
Defendants resisted discovery would effectively vitiate the Defendants' entire case, as the
Defendants have resisted almost all discovery. An adverse inference would therefore
result in the functional equivalent of a judgment."

At bar, Anand has put Plaintiffs in an even more disadvantageous position than the plaintiff in

Google, supra, as Anand has produced *no discovery* even after the Court expressly ordered him

to do so. In fact, Anand's response to the Court's admonition in the 7/21/23 Order (Ex. 19, p. 3)

that "the vehicles for defeating [Plaintiffs'] claim do not include stonewalling the plaintiffs in

discovery" was to continue refusing to produce any discovery to Plaintiffs and to lie to the Court

about Anand's involvement and knowledge in contradiction of his prior sworn statements.

The prejudice to Plaintiffs as a direct result of Anand's noncompliance is staggering.

Almost two years after the filing of the Complaint (Ex. 1), Plaintiffs still have received no

discovery whatsoever from Anand and, based on Anand's thoroughly disproven contention that

16

he has no relevant documents or information and no means of obtaining such, Plaintiffs will not receive any discovery from Anand in the future—regardless of the sanctions imposed by this Court. In Global NAPs, supra, 148, the Court held that plaintiff suffered prejudice as a result of defendants' failure to produce evidence concerning plaintiff's alter ego allegations because, regardless of whether defendants destroyed or intentionally withheld relevant evidence, "even the simple failure to produce evidence in a timely manner in and of itself can support an inference that the evidence withheld would be unfavorable to the noncompliant party." At bar, Anand has deliberately withheld evidence concerning not just a single allegation or area of inquiry, but rather the entirety of Plaintiffs' case against Anand! This charade must be brought to a close and Plaintiffs must be permitted to proceed with a default judgment against Anand.

Not content with stonewalling Plaintiffs and withholding discoverable documents and information, Anand has progressed to threatening Plaintiffs on social media. On June 15, 2023, Anand posted a disturbingly violent story on his Instagram account (Ex. 28). The first screenshot shows Anand on his phone with the following text: "Me on a FaceTime telling Bearbrick[7] to finish the job." A gun is positioned so as to look like a Be@rbrick toy is holding it. A KAWS toy is positioned face down on the floor. The second screenshot shows what looks like a large blood-red stain next to the "dead" KAWS toy's head so as to look like blood with the following text: "Hit a stain faneto" (from the song Faneto by the rapper Chief Keef) and "The blicky in the chrome bag is a nice touch too I give him a solid 9.2 for that stain." "Blicky" is slang for "pistol"[8] and "hit a stain" is slang for "commit robbery."[9]

On or about July 10, 2023, Anand reposted on Threads a video originally posted by a

---

[7] Be@rbrick is a Japanese designer toy brand produced by MediCom Toy Incorporated.

[8] https://www.urbandictionary.com/define.php?term=blicky

[9] https://www.urbandictionary.com/define.php?term=hit%20a%20stain

Penthouse Theory social media account (Ex. 29) in which an unseen individual kicks an infringing, counterfeit KAWS statue into a pool with force and the camera lingers on the statue floating face down. These are not the only times Anand posted Instagram stories with violent imagery as, inter alia, on or about April 28 and June 28, 2023, Anand posted videos brandishing firearms (Exs. 31, 36). The longer this case continues with a spiteful Anand seething and refusing to comply with Court orders, the greater the danger Plaintiffs will find themselves in.[10]

### D. The Duration of the Period of Noncompliance

More than seven months have elapsed since Plaintiffs served their Discovery Requests (Exs. 10-11) on Anand and approximately three months have elapsed since the Court's 7/21/23 Order (Ex. 19). Nonetheless, Anand has not produced any discovery to Plaintiffs. "Courts have found noncompliance for a period of several months sufficient to warrant dismissal or default." Rodriguez, supra, *5; see also Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 451 (2d Cir. 2013) (affirming default judgment where defendant's "intransigence spanned months, and [] less serious sanctions would have been futile").

Anand's intransigence and deliberate pattern of stonewalling discovery and grinding this action to a halt began on day one and has continued for more than a year and a half:

    (i)    On **March 22, 2022**, Anand requested that the Court extend his time to file an answer (Ex. 2) without informing the Court that his time to answer Plaintiffs' Complaint (Ex. 1) already had expired and misrepresented to the Court that Plaintiffs had not served him or filed affidavits of service (Ex. 3);

    (ii)   In his **January 27, 2023** FRCP 26(a) Disclosures, Anand did not identify any witnesses or relevant documents (Ex. 9);

    (iii)  On **April 10, 2023**, Anand served Plaintiffs with egregiously deficient Discovery Responses as set forth in Plaintiffs' Discovery Letter (Ex. 14) (see p. 6, supra);

---

[10] On October 16, 2023, Anand posted a blog (Ex. 35) on a website that features the Homeless Penthouse name (https://hopemarket.co/blogs/news/the-decline-of-kaws-a-look-beyond-the-art), repeatedly ridiculing KAWS because of the artist's "grievance over copycats" and "[t]he sentiment that KAWS comes across as 'whiny' about copycats."

(iv)    On *April 27, 2023*, instead of providing Plaintiffs with supplemental discovery responses (as promised during the Meet-and-Confer), Anand merely claimed that he does not have any documents whatsoever (Ex. 16);

(v)     On *June 13, 2023*, Anand submitted an "affidavit" (Ex. 18)—in improper form— that contained blatant lies directly contradicting Anand's sworn statements in the 3/28/22 Anand Aff. (Ex. 6) and the Answer (Ex. 7); and

(vi)    Following the Court's 7/21/23 Order (Ex. 19), on *August 14, 2023*, Anand refused to produce any documents, served supplemental interrogatory responses (Ex. 21) to Plaintiffs' Interrogatories ##13-21 only (not ##3-21 as ordered by the Court) that are false and misleading and submitted the 8/14/23 Aff. (Ex. 22) in which Anand again contradicted his concessions in the 3/28/22 Anand Aff. (Ex. 6) and the Answer (Ex. 7).

The entirety of Anand's obstructionist conduct over the course of this litigation makes clear that his noncompliance and unwillingness to participate in this litigation began from the very start and continues unabated even in the face of the grave admonitions contained in the Court's 7/21/23 Order (Ex. 19).

## II.    ANAND HAS PERPETRATED A FRAUD ON THE COURT

"Truthful testimony is the bedrock on which our system of administering justice must rest." Miller v. Time-Warner Communications, Inc., 1999 WL 739528, *3 (S.D.N.Y. Sept. 22, 1999). District courts have "the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants." Shangold v. Walt Disney Co., 2006 WL 71672, *4 (S.D.N.Y. Jan. 12, 2006). "[T]ampering with the administration of justice...involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society." Id. (internal citation omitted). "A fraud on the court occurs where it is established by clear and convincing evidence that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by...unfairly hampering the presentation of the opposing party's claim or defense." Rezende v. Citigroup

19

Global Markets, Inc., 2011 WL 1584603, \*4 (S.D.N.Y. Apr. 27, 2011).

Anand's persistent, pervasive lies to the Court and to Plaintiffs and Anand's refusal to produce any discovery to Plaintiffs have rendered it impossible for Plaintiffs to conduct this litigation and have deprived Plaintiffs of critical information needed to pursue Anand's co-conspirators, i.e., the individuals and entities that manufacture counterfeit KAWS Branded Products. Such repeated misconduct that destroys Anand's credibility and affects the central issues of the litigation compels a finding of fraud on the Court. See Shangold, supra, \*5 (finding fraud on the court where plaintiffs suffused their pleadings with lies and plaintiffs' "egregious conduct was prolonged and calculated to advance their claims"); see also Miller, supra, \*3 (dismissing plaintiff's complaint where she unsuccessfully attempted to alter evidence, proffered hearing testimony that contradicted her prior deposition testimony and lied to the Court); Rezende, supra, \*4-5 (finding fraud on the court where plaintiff, inter alia, intended to mislead the Court, submitted a bogus affidavit to the Court and "made numerous statements under oath or under penalty of perjury that were knowingly false when made"); Rybner v. Cannon Design, Inc., 1996 WL 470668, \*4 (S.D.N.Y. Aug. 20, 1996) (finding fraud on the court where plaintiff "acted intentionally, wilfully [sic] and in bad faith in perjuring himself at his deposition and...in an attempt to hinder the fair and full adjudication of the case," but declining to dismiss plaintiff's pleadings because, unlike at bar, "the falsehoods at issue are not central to the claim" and plaintiff, without undue delay, corrected his misstatements); Cerruti 1881 S.A. v. Cerruti, Inc., 169 F.R.D. 573, 582-83 (S.D.N.Y. 1996) (finding fraud on the court where a central issue of the litigation was whether defendants abandoned certain trademarks, the proof adduced by defendants on this central issue was "permeated with fraud" and defendants' "misconduct goes to the heart of the case by making it apparent that defendants can rely only on fraudulent or defective records, and the unsubstantiated claims of a proven liar, to establish that they did not abandon the marks in question").

As discussed in Section I, supra, Anand has committed a fraud on the Court and rendered it impossible for the Court to adjudicate this action by cutting off Plaintiffs at the knees and withholding critical, material discovery needed to prosecute this action and to protect Plaintiffs' valuable copyrights and trademarks. Anand began lying to the Court on day one when Anand misrepresented to the Court that Plaintiffs had not served Anand or filed affidavits of service (Ex. 2) and failed to inform the Court that Anand's time to answer the Complaint (Ex. 1) already had expired. Anand continued perpetrating lies in his FRCP 26(a) Disclosures (Ex. 9), failing to list any knowledgeable witnesses despite having already conceded in the 3/28/22 Anand Aff. (Ex. 6) and the Answer (Ex. 7) that Anand had purchased KAWS Branded Products from third parties and resold KAWS Branded Products to third parties.

As discussed in detail on pp. 12-13, supra, Anand lied in the 6/13/23 Anand Aff. (Ex. 18) and the 8/14/23 Anand Aff. (Ex. 22)—misrepresenting that he "only offered marketing services," never ordered products, never involved himself in the day-to-day operations or management of the businesses selling infringing KAWS Branded Products and had no involvement whatsoever with the "business aspects" of the businesses selling infringing KAWS Branded Products— despite having already admitted in the 3/28/22 Anand Aff. (Ex. 6, ¶¶11, 13) and the Answer (Ex. 7, ¶8 (Second Affirmative Defense)) that he: (i) Acted "as a retail reseller;" (ii) Ordered the infringing KAWS Branded Products from "whole sellers;" (iii) Sold the infringing KAWS Branded Products online; and (iv) Operated a website from which the infringing KAWS Branded Products were advertised and sold. At the same time as Anand swears to the Court that he has no real connection to his online businesses (which are in the business of selling counterfeit, infringing knockoffs) and is a mere independent marketing agent, he is holding himself out to the world on LinkedIn as "Managing Director at Homeless Penthouse" (Ex. 26). Anand's social media posts and articles publicly available online (Exs. 23-27) irrefutably disprove Anand's feeble attempts to disclaim any knowledge or involvement in the subject matter of this copyright

21

and trademark infringement litigation and instead demonstrate that Anand is the central perpetrator and driving force behind the scheme of illegal counterfeiting and copyright and trademark violations. It is indisputable that Anand's business model (which he applies to several websites and social media accounts) is to willfully ignore and trample intellectual property protections while advertising and selling counterfeit, infringing products.

"Whether dismissal is appropriate as a sanction is within the discretion of the district court." Shangold, supra, *4. In assessing the sanctions to be imposed on a party found to have wrought a fraud on the court, courts consider:

"'(1) whether the misconduct was the product of intentional bad faith; (2) whether and to what extent the misconduct prejudiced the other party; (3) whether there is a pattern of misbehavior, rather than an isolated instance; (4) whether and when the misconduct was corrected; and (5) whether further misconduct is likely to continue in the future.'" Id. (internal citation omitted).

"[W]hen a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process, it can fairly be said that he has forfeited his right to have his claim decided on the merits." Id. (internal citation omitted); see also Cerruti, supra, 582-83 ("Beyond the powers conferred expressly by rule and statute, a federal court has inherent power to sanction a party for bad faith litigation conduct…Such sanctions may include…entry of judgment against the offending party").

As discussed in detail on pp. 9-15, supra, Anand's deceitful, obfuscating misconduct was willful and undertaken in intentional bad faith as it was done solely to bamboozle the Court and to deprive Plaintiffs of relevant documents and information needed to conduct this litigation.

As discussed in detail on pp. 16-18, supra, Anand's misconduct has greatly prejudiced Plaintiffs as Anand has failed to produce any discovery concerning any of the issues in this litigation. By refusing to identify any third parties, including Anand's customers, wholesalers and shippers and anyone else with whom Anand conspired in his counterfeit and infringing online businesses, Anand has rendered Plaintiffs unable to seek discovery from these third

22

parties. Simply put, there is no way forward in light of Anand's obstructive misconduct.

As discussed in detail on pp. 16-17, supra, Anand has not simply advanced a single lie or withheld a single document. Rather, Anand has failed to produce any documents concerning any issues in this litigation, has failed to substantively respond to any of Plaintiffs' interrogatories and has lied to the Court and Plaintiffs repeatedly about a host of issues that are absolutely critical to this litigation, i.e., whether Anand owns and operates online retail businesses; whether Anand purchases infringing KAWS Branded Products from wholesalers; whether Anand resells infringing KAWS Branded Products online; and whether Anand merely is a marketing agent for certain online businesses that sell infringing KAWS Branded Products.

Anand's misconduct has not been corrected. To date, Anand still has not produced any names of knowledgeable third parties, any documents or any substantive interrogatory responses—including supplemental responses to Plaintiffs' Interrogatories ##3-12 as directed by the Court in the 7/21/23 Order (Ex. 19). In fact, Anand's misconduct has increased in scope and severity as this action has progressed.

There is no doubt that Anand's misconduct will continue in the future. As discussed in detail on pp. 16-18, supra, Anand's misconduct has pervaded every inch of this case and has left Plaintiffs without any discovery whatsoever. Even after the Court admonished Anand that "the vehicles for defeating [Plaintiffs'] claim do not include stonewalling the plaintiffs in discovery" (Ex. 19, p. 3), Anand has continued to stonewall Plaintiffs. Anand's current position (that he does not have any relevant knowledge or documents because he barely has any connection to the subject matter of this litigation)—which is flatly disproven by the 3/28/22 Anand Aff. (Ex. 6) and the Answer (Ex. 7), as well as by Anand's social media posts and publicly available articles online (Exs. 23-27)—is a total bar to any meaningful progress in this case as Anand will respond to any further discovery requests or deposition questions with a feigned lack of knowledge or documents. Were there any likelihood of Anand changing his position and respecting the rule of

23

law, Anand would not be violently threatening Plaintiffs on social media (Exs. 28-29).

As Anand's fraud on the Court is egregious and concerns every single contested issue in this litigation, granting a default judgment against him is warranted and reasonable. See Cerruti, supra, 584 (entering judgment for plaintiffs as to all claims in their complaint); see also Shangold, supra, *5 ("Because [plaintiffs] have tainted evidence at the heart of their dispute with Defendants and then sought to conceal it, they have forfeited their right to litigate this case and no sanction short of dismissal will suffice to deter future misconduct"); cf. Rezende, supra, *6 ("Despite the existence of the evidence demonstrating that [plaintiff] perpetuated an ongoing fraud on the court, case dispositive sanctions are not appropriate because the fraud was not central to the substantive issues in the case…Case dispositive sanctions may be appropriate if [plaintiff's] ongoing fraud related to a matter more central to the dispute").

## III. PLAINTIFFS ARE ENTITLED TO AN AWARD OF COSTS AND ATTORNEY'S FEES PURSUANT TO FRCP 37(a)(5), FRCP 37(b)(2)(C) AND THE COURT'S INHERENT POWERS

As Anand's discovery violations, refusal to comply with the Court's 7/21/23 Order (Ex. 19) and perpetration of a fraud on the Court have been so all-encompassing and egregious, Plaintiffs are entitled to full reimbursement of all of their attorney's fees and costs incurred in submitting Plaintiffs' Discovery Letter (Ex. 14) and the subject sanctions motion.

Pursuant to FRCP 37(a)(5), once a motion to compel is granted, the Court must order the respondent and/or their attorney "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees;" see also Robinson v. De Niro, 2022 WL 229593, *2 (S.D.N.Y. Jan. 26, 2022). Anand cannot avail himself of any exception to this Rule as:

(i)  Plaintiffs filed their Discovery Letter (Ex. 14)—seeking to compel Anand to produce discovery—after participating in a meet-and-confer with Anand's counsel and attempting in good faith to obtain the discovery without court action;

(ii) Anand's failure to provide a single document or substantive interrogatory response was not substantially justified; and

24

(iii)     An award of expenses is patently just especially insofar as Anand has lied to this Court about his egregious pattern of illegal misconduct.

Courts routinely order, in connection with FRCP 37 sanctions, that the respondent pay the movant's attorney's fees and costs. See, e.g., Global NAPS, supra, 146; see also Google, supra, 12-13. Pursuant to FRCP 37(b)(2)(C), "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

After finding that a respondent has perpetrated a fraud on the court, courts routinely order the respondent to fully reimburse the movant for the attorney's fees and costs incurred in moving against the respondent. See Shangold, supra, *6; see also Cerruti, supra, 584; Rybner, supra, *6. "...[F]ederal courts have the 'inherent power' to award monetary sanctions against a party for that party's 'bad faith, vexatious, or wanton' misconduct." Google, supra, *12.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that Plaintiffs' motion be granted in its entirety, together with such other and further relief as to this Court seems just and proper.

Dated: New York, New York
October 24, 2023

Respectfully submitted,
AARON RICHARD GOLUB, ESQUIRE, P.C.
Attorneys for Plaintiffs

Russell Zwerin

BY:   Russell I. Zwerin
        24 East 64th Street, Fifth Floor
Of Counsel:                      New York, New York 10065
    Aaron Richard Golub          ph: (212) 838-4811
    Nehemiah S. Glanc            fx: (212) 838-4869
    Russell I. Zwerin            rzwerin@argolub.com

25